

1  Vijay K. Toke, Cal. Bar No. 215079
2  *vijay@hiaringsmith.com*
   Anne Hiaring Hocking, Cal. Bar No. 88639
3  *anne@hiaringsmith.com*
   Elizabeth J. Rest, Cal. Bar No. 244756
4  *elizabeth@hiaringsmith.com*

5  HIARING + SMITH, LLP
6  101 Lucas Valley Road, Suite 300
   San Rafael, CA 94903
7  Telephone: (415) 457-2040
   Facsimile: (415) 457-2822
8
9  Attorneys for Plaintiff
   AIRWAIR INTERNATIONAL LTD.
10

11  **IN THE UNITED STATES DISTRICT COURT**
    **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
12  **SAN FRANCISCO DIVISION**

13  AIRWAIR INTERNATIONAL LTD., a United    Case No.
    Kingdom corporation,
14
                                           **COMPLAINT FOR DAMAGES AND**
15          Plaintiff,                      **INJUNCTIVE RELIEF FOR:**

16      vs.
                                           (1)  **TRADEMARK**
17                                              **INFRINGEMENT**
    VANS, INC., a Delaware corporation; DOES 1-    **(Lanham Act Section 32, 15**
18  100, inclusive,                              **U.S.C. Section 1114)**

19          Defendants.                     (2)  **FALSE DESIGNATION OF**
                                                **ORIGIN (Lanham Act § 43(a),**
20                                              **15 U.S.C. § 1125 (a))**

21                                         (3)  **COMMON LAW TRADE**
                                                **DRESS INFRINGEMENT**
22
                                           (4)  **FEDERAL TRADEMARK**
23                                              **DILUTION (Lanham Act**
                                                **§43(c), 15 U.S.C. §1125(c))**
24
                                           (5)  **STATE LAW TRADEMARK**
25                                              **DILUTION (Cal. B&P Code §§**
                                                **14330, *et seq.*)**
26
                                           (6)  **UNFAIR COMPETITION (Cal.**
27                                              **B&P Code §§ 17200, *et seq.*)**

28                                         (7)  **COMMON LAW UNFAIR**
                                                **COMPETITION**

                                           **DEMAND FOR JURY TRIAL**

1       Plaintiff AIRWAIR INTERNATIONAL LTD. ("AIRWAIR" or "Plaintiff"), by and

2   through its attorneys, alleges the following based on personal knowledge or on information and

3   belief:

4       1.     Plaintiff AIRWAIR is a wholly-owned subsidiary of R. Griggs Group Ltd. and is

5   engaged in the design, manufacture, marketing, and sale of Dr. Martens® footwear (Airwair

6   International Ltd. and R. Griggs Group Ltd. are referred to collectively hereafter as

7   "AIRWAIR"). Airwair International Ltd. and its parent company, R. Griggs Group Ltd., are

8   companies organized under the laws of England and Wales, with a principal place of business

9   located in the United Kingdom.

10      2.     On information and belief, defendant VANS, INC. ("VANS" or "Defendant") is

11   a Delaware corporation with its principal place of business in Cypress, California. VANS

12   markets, distributes, and sells footwear and clothing throughout the United States and

13   worldwide. VANS distributed, marketed, and sold the footwear that is the subject matter of this

14   action directly, through, and/or in conjunction with its subsidiaries, affiliated companies, and/or

15   licensees, as further alleged herein.

16                **JURISDICTION AND VENUE**

17      3.     This Court has original subject matter jurisdiction under 28 U.S.C. §§ 1331 and

18   1338(a) and the Lanham Act (15 U.S.C. § 1121), in that this case arises under the trademark

19   laws of the United States. Jurisdiction also arises for the state law claims herein under 28

20   U.S.C. § 1367(a) pursuant to the principles of supplemental jurisdiction.

21      4.     This Court has personal jurisdiction over the Defendant, and venue is proper in

22   this District, by virtue of Defendant's transacting, doing, and soliciting business in this District,

23   because a substantial part of the relevant events occurred in California and in this District, and

24   because Defendant has infringed, directly or vicariously, has contributed to the infringement of,

25   and/or actively induced others to infringe Plaintiff's trademarks in this District, and/or has

26   actively participated in the acts and omissions described herein primarily in or directed towards

27   California and within this District, as alleged in this Complaint. Moreover, Defendant

28   continues to do so in this District.

**INTRADISTRICT ASSIGNMENT**

5.     Pursuant to Civil L.R.  3-2(c), because this is an intellectual property dispute, assignment of this matter District-wide is appropriate.

**FACTUAL ALLEGATIONS**

**AIRWAIR's History and Famous Trade Dress**

6.     Predecessors of AIRWAIR, and wholly-owned subsidiaries of R. Griggs Group Ltd., have manufactured and marketed footwear since the turn of the 20th Century. AIRWAIR is headquartered in the village of Wollaston, England. AIRWAIR, by and through its wholly-owned subsidiaries, has been manufacturing and marketing Dr. Martens® footwear since 1960. AIRWAIR has extensive connections to commerce in the United States.  Since as early as 1984, AIRWAIR has marketed and sold Dr. Martens® boots, shoes, and sandals throughout the United States using a distinctive trade dress that features yellow stitching in the welt area of the sole and a two-tone grooved sole edge. Dr. Martens® classic style boots also include a distinctive fabric heel tab.  AIRWAIR has also used a distinctive undersole design consisting of a unique horizontal grid pattern on its Dr. Martens® footwear.  These features will be referred to collectively hereafter as the "Trade Dress."

7.     Dr. Martens® footwear has a rich heritage as an English brand.  Today, Dr. Martens® footwear is widely recognized, extremely popular, and has become one of the world's most immediately recognizable brands. The distinctive Trade Dress of its iconic boots and shoes has been used by the company since 1960 and is world famous. Over the past nearly thirty years, *millions* of pairs of Dr. Martens® shoes, boots, and sandals with the distinctive Trade Dress have been sold in the United States.  AIRWAIR's subsidiary, Dr. Martens Airwair USA, LLC, a Delaware limited liability company, qualified to do business in several states, including California, has been distributing and selling high volumes of Dr. Martens® footwear in the United States since at least 1998.  Therefore, AIRWAIR has extensive sales and connections with the United States and American consumers.  AIRWAIR currently also sells Dr. Martens® shoes featuring its immediately recognizable Trade Dress in over 60 countries worldwide, including throughout various Asian countries, including, but not limited to, Japan, China,

1   Korea, and Taiwan. Its Dr. Martens® brand and distinctive Trade Dress are therefore well

2   known amongst Americans, as well as consumers the world over.

3       8.      AIRWAIR holds several U.S. registrations for its Trade Dress in the United

4   States Patent and Trademark Office, including: (1) "the combination of yellow stitching in the

5   welt area and a two-tone grooved sole edge" (Reg. No. 2,437,751, attached as Exhibit 1); (2) the

6   yellow "welt stitch located around the perimeter of footwear" (Reg. No. 2,437,750, attached as

7   Exhibit 2); (3) its DMS undersole design mark (Reg. No. 2,102,468, attached as Exhibit 3, the

8   "DMS Design Mark"); (4) "the design of a sole edge including longitudinal ribbing, and a dark

9   color band over a light color" (Reg. No. 2,104,349, attached as Exhibit 4); and (5) "longitudinal

10   ribbing and a dark color band over a light color on the outer sole edge, welt stitching, and a tab

11   at the top back heel of footwear" (Reg. No. 2,341,976, attached as Exhibit 5.)  AIRWAIR also

12   has a registration for the heel tab with stylized yellow lettering (Reg. No. 2,835,657, attached as

13   Exhibit 6).  All of the above trademarks (the "Trade Dress Marks") have been in continuous

14   use for 50 years, and have been used in the United States since at least as early as 1984.

15       9.      AIRWAIR has filed declarations of continued use under Sections 8 and 15 of the

16   Lanham Act and the trademark registrations referenced in Exhibits 1, 2, and 3 have become

17   incontestable.

18       10.     In 2010, AIRWAIR celebrated the 50th anniversary of its classic Dr. Martens®

19   footwear with its distinctive Trade Dress including yellow welt stitching, two-tone grooved sole

20   edge, and the DMS Design mark. Examples of classic Dr. Martens® footwear, including the

21   iconic 1460 boot, are attached as Exhibits 7, 8, and 9 hereto.

22       11.     The distinctive Dr. Martens® Trade Dress as described in the US Trademark

23   registrations attached as Exhibits 1-6, individually and taken together, is distinctive or has

24   acquired distinctiveness, and is non-functional. In addition to its iconic 1460 boot and classic

25   Dr. Martens® footwear models, AIRWAIR has developed new ranges of footwear

26   incorporating various elements of its distinctive Trade Dress.  One example is the "Eclectic"

27   line of shoes, which incorporates much of the Dr. Martens® Trade Dress, including the yellow

28   welt stitching and the black and yellow heel tab, but uses other materials like canvas uppers

1  rather than the traditional heavier duty leather of its iconic footwear. Photographs of genuine

2  Dr. Martens® "Eclectic" footwear are attached as Exhibit 10. AIRWAIR's "Eclectic" line of

3  shoes has been sold throughout the United States and worldwide since as early as August 2010.

### Defendant's Direct Competition with AIRWAIR

5      12.    Defendant VANS has been manufacturing, distributing, and selling footwear in

6  the United States under its VANS® trademark since the 1960s. It is the owner of several

7  trademark registrations in the U.S. and abroad for the VANS® trademark for various goods,

8  including footwear and clothing. VANS, like AIRWAIR, has a substantial presence in the

9  global footwear market. On information and belief, VANS and AIRWAIR share similar

10  demographic targets and customer bases. As competitors in the footwear market since at least

11  as early as 1984, Plaintiff AIRWAIR's Dr. Martens® footwear and Defendant's VANS®

12  footwear have competed for market share and customers in the United States and abroad.

### VANS Licenses Use of Its Registered VANS® Trademark to a Licensee

14      13.    In addition to directly manufacturing, distributing, and selling footwear and other

15  products, Defendant also licenses rights to third parties to manufacture, market, and sell

16  products under the VANS® trademark. Amongst Defendant's licensees is a Japan-based

17  company engaged largely in the business of selling shoes (the "VANS Licensee"). The VANS

18  Licensee sells its products in brick-and-mortar stores, as well as on the Internet. At some time

19  prior to the infringing activities complained of herein, the VANS Licensee licensed from VANS

20  the rights to design, manufacture, market, and sell products bearing the VANS® trademark

21  ("VANS License").

22      14.    On information and belief, AIRWAIR alleges that the VANS License:

23      a.   provides for VANS's right and/or obligation to maintain quality control over
products designed, manufactured, marketed, or sold by the VANS Licensee,
including without limitation the right and/or obligation to review and approve
such products prior to their sale (which control VANS did in fact exert);

26      b.   calls for the payment of license fees to VANS (which were received and
deposited by VANS in the United States); and

28      c.   is governed by the laws of and subject to venue in the United States.

15.     On information and belief, after entering into the VANS License, the VANS Licensee began designing, manufacturing, and selling various footwear under the VANS® trademark.

16.     As VANS's licensee, subject to quality control and approval rights by VANS, the VANS Licensee's actions relating to the creation, marketing, and sale of VANS-branded footwear—including infringement of third parties' trademarks such as AIRWAIR's—is imputed and attributable to VANS.

### Defendant's Infringement of AIRWAIR's Trade Dress Marks

17.     As alleged below, AIRWAIR is informed and believes that Defendant, directly, through, and/or in conjunction with its subsidiaries, affiliate companies, and/or its licensees (including without limitation the VANS' licensee), has in the past manufactured, marketed, distributed, and sold boots and shoes that are confusingly similar to and which unlawfully copy the distinctive Dr. Martens® Trade Dress, as well as the overall style and configuration of Dr. Martens® boots and shoes, in violation of AIRWAIR's rights in the registered Trade Dress Marks and continues to do so. Such copying represents a systematic, deliberate, and calculated attempt to trade upon the popularity and distinctive appearance and design of Dr. Martens® footwear.

18.     At some point after entering into the VANS License, the VANS Licensee designed, manufactured, marketed, and sold a line of footwear called the "Gibson," which includes various shoe and boot models (the "'Gibson' line of footwear" or "Infringing Footwear"). The "Gibson" line of footwear created and sold by the VANS Licensee unlawfully incorporates the Dr. Martens® Trade Dress, including the yellow contrasting welt stitching, grooved sole edge, and fabric heel tab. In fact, the overall configuration and appearance of the "Gibson" line of footwear is virtually identical to the Dr. Martens® "Eclectic" line of footwear, while other models of the Infringing Footwear are confusingly similar to more classic Dr. Martens® designs. Photographs of the "Gibson" line of Infringing Footwear available for sale online are attached as Exhibit 11. A receipt of a purchase of a pair of Infringing Footwear from //

1  a brick-and-mortar store in Japan, the identifying information from the box for the footwear,

2  and images of the shoes purchased, are attached as Exhibit 12.

3      19.    On information and belief, though it had approval rights over the Infringing

4  Footwear through the VANS License, VANS did not review the Infringing Footwear prior to

5  the manufacture, marketing, or sale by the VANS Licensee.  However, had VANS done so, it

6  would not have approved the Infringing Footwear.

7      20.    On information and belief, the VANS Licensee manufactured over 29,000 pairs

8  of the Infringing Footwear, which were sold in both brick-and-mortar stores in Japan as well as

9  on the Internet.  It also sold the Infringing Footwear in Korea and Taiwan at its stores, online,

10  through its affiliates or subsidiaries, and/or through other retail stores in Hong Kong or other

11  parts of Asia.  On information and belief, such retail presence on the Internet often leads to, and

12  here did lead to, international sales, including to the United States.

13      21.    In at least one instance, the VANS Licensee sold Infringing Footwear with

14  displays incorporating the Union Jack, the flag of the United Kingdom, to strengthen the

15  association between the Infringing Footwear and Dr. Martens®, which has long been known as

16  an English brand.  A true and correct photograph of such a display in a brick-and-mortar store is

17  attached as Exhibit 13.  This purposeful and intentional association likely caused consumers to

18  believe they had either purchased genuine Dr. Martens® footwear or that AIRWAIR had

19  sponsored or otherwise approved the Infringing Footwear when it in fact had not.

20      22.    VANS, through its subsidiary or affiliate company in Japan (Vans Japan), also

21  purchased Infringing Footwear from the VANS Licensee at wholesale for sale in VANS stores

22  in China and Hong Kong.  VANS sold an unknown quantity of Infringing Footwear through

23  those stores.  VANS also offered for sale and sold the Infringing Footwear on a website located

24  at www.vansjapan.com, which is owned by Defendant VANS, INC. in the United States.

25      23.    On information and belief, VANS, its subsidiaries, and/or its licensees also

26  disseminated an advertisement on its website www.vansjapan.com and elsewhere, featuring the

27  Infringing Footwear and a Union Jack in the background, further strengthening the intentional

28  //

association with the Dr. Martens® brand history and Trade Dress. A copy of the referenced advertisement is attached as Exhibit 14.

24.     Though the sales of the Infringing Footwear appear to have been largely in Asia, at least two sellers of footwear offered to sell and did sell Infringing Footwear to the United States: one called Kicks Crew, selling at the URL www.kicks-crew.com; and, Fat Chaigin selling on eBay.com. Attached as Exhibits 15 and 16, respectively, are true and correct copies of printouts from the Hong Kong retailer Kicks Crew's website, and the eBay U.S. website, indicating that they both ship to the US and/or worldwide. AIRWAIR was able to purchase Infringing Footwear in the United States in late June and early July, 2012 from these sellers. Attached as Exhibits 17 (Kicks Crew) and 18 (eBay/Fat Chaigin) are copies of receipts for AIRWAIR's purchase of the Infringing Footwear in the United States and photographs of the footwear that was purchased.

25.     The shoes from Fat Chaigin contained a label on the box, printed on July 1, 2012, indicating that the shoes came from VANS's store in Hong Kong. *See*, Exhibit 18. Attached as Exhibit 19 are photographs comparing the Infringing Footwear purchased from Kicks Crew (in leopard) and genuine Dr. Martens® "Eclectic" footwear (in white). Attached as Exhibit 20 are photographs comparing the Infringing Footwear purchased from eBay/Fat Chaigin (in leopard) and genuine Dr. Martens® "Eclectic" footwear (in white).

26.     As alleged above, the Infringing Footwear is virtually identical—and therefore confusingly similar—to styles that have been and are now offered for sale by AIRWAIR in the "Eclectic" line and classic Dr. Martens® footwear. The sale of the Infringing Footwear by VANS, directly, through, and/or in conjunction with its subsidiaries, affiliate companies, and/or licensees was not authorized by AIRWAIR, and was likely to cause and has caused consumer confusion between Dr. Martens® footwear and Defendant's Infringing Footwear.

27.     Defendant's conduct in copying AIRWAIR's registered Trade Dress, directly, through, and/or in conjunction with its subsidiaries, affiliate companies, and licensees, has been systematic and deliberate, duplicating the Trade Dress and overall style and configuration of Dr. Martens® shoes and boots as closely as possible in a willful, intentional, and calculated attempt

1    to trade upon the popularity, recognizability, and distinctive appearance and design of

2    AIRWAIR's Dr. Martens® footwear in violation of AIRWAIR's rights in the Trade Dress and

3    Trade Dress Marks. As a result of the acts and omissions complained of herein, VANS has

4    directly, vicariously, and/or contributorily infringed AIRWAIR's rights in its Dr. Martens®

5    Trade Dress Marks.

6                   **AIRWAIR's Cease and Desist Efforts Against VANS**

7          28.    In early to mid-November 2011, AIRWAIR learned of the sale of the Infringing

8    Footwear bearing the VANS® trademark.

9          29.    On or about November 30, 2011, AIRWAIR sent a cease and desist letter to

10   VANS demanding that it cease selling the Infringing Footwear, as well as demanding

11   disgorgement of profits and destruction of the Infringing Footwear.

12         30.    VANS responded on January 6, 2012, indicating that it would investigate the

13   situation.

14         31.    On or about January 13, 2012, AIRWAIR, through counsel, informed Defendant

15   that the Infringing Footwear was still being offered on the www.vansjapan.com website, despite

16   its cease and desist letter of November 30, 2011.

17         32.    On or about January 17, 2012, VANS responded to the cease and desist letter,

18   indicating that it had directed the VANS Licensee to stop selling the Infringing Footwear online

19   as well as in stores. VANS further indicated that it had pulled the Infringing Footwear from the

20   VANS stores in Asia and from the www.vansjapan.com website. VANS informed AIRWAIR

21   that over 11,000 pairs of Infringing Footwear remained in the inventory of the VANS Licensee

22   as of that date.

23         33.    On or about January 23, 2012, AIRWAIR reiterated its demand that all

24   remaining Infringing Footwear be destroyed. VANS indicated it would investigate whether the

25   Infringing Footwear had been or was going to be destroyed.

26         34.    On or about February 10, 2012, VANS informed AIRWAIR that the VANS

27   Licensee would not destroy the Infringing Footwear and would instead sell the remaining

28   11,000+ pairs of Infringing Footwear to "family members" of the business at a steep discount.

AIRWAIR responded on or about February 15, 2012, that this was unacceptable and that the Infringing Footwear had to be destroyed.  VANS failed to address this demand and authorized the VANS' licensee to continue to sell the Infringing Footwear, despite knowledge that it infringed AIRWAIR's registered trade dress rights and that AIRWAIR had directly demanded that VANS not do so.

**The Substantial Effects of the Defendant's Infringing Activities on U.S. Commerce**

35.    Defendant's infringing activities complained of herein have had substantial effects on commerce in the United States. VANS is an American company and has directly, vicariously, and/or contributorily infringed several U.S. trademark registrations of a competitor who also sells large volumes of footwear in the United States by engaging in, directing, authorizing, and/or inducing the infringing conduct described herein from the United States.

36.    Further, on information and belief, VANS entered into the VANS License in the United States, and the license is governed by the laws of the United States and subject to venue in the United States for disputes over its interpretation or enforcement.  Likewise, as a result of the sale of Infringing Footwear (and presumably non-infringing footwear as well) VANS has realized significant licensing fees in the United States from the VANS Licensee.

37.    VANS also sold Infringing Footwear at the URL www.vansjapan.com, which is a URL owned by VANS in the United States.  On information and belief, the proceeds from sales at this URL were realized by VANS in the United States. VANS also sold and, on information and belief, continues to sell Infringing Footwear at its stores in Asia, including its store in Hong Kong which was the source of the Infringing Footwear AIRWAIR purchased via the Internet in July 2012.

38.    The Infringing Footwear has also received press and other journalistic attention in the United States.  For instance, on or about December 1, 2011, Kicks On Fire, a US-based website dedicated to news and information about sneakers and sneaker culture (located at www.kicksonfire.com) published an article about the Infringing Footwear.  The article immediately connected the Infringing Footwear to AIRWAIR's iconic Dr. Martens'® Trade Dress, specifically mentioning that the Infringing Footwear "almost looks like an homage to Dr.

Marten's classic style...."  With editors in New York and California, Kicks On Fire has a readership of 150,000 sneaker aficionados—who they call "sneakerheads"—and supports 20 million page views per month. On information and belief, a significant portion of Kicks On Fire's readership is located in the United States and learned of the Infringing Footwear through the referenced article.  On information and belief, at least some of these readers attempted to or were successful in purchasing the Infringing Footwear in the United States, just as AIRWAIR was successful in purchasing Infringing Footwear in the United States via the Internet or in Asia.  Attached as Exhibit 21 are true and correct copies of web pages from the www.kicksonfire.com website, including the referenced article and the "About" page from the site.

39.     Another website called Sneaker News, located at www.sneakernews.com, publishes a daily report on the culture of sneakers.  Sneaker News published an article about the Infringing Footwear on or about December 4, 2011.  The article concluded that the Infringing Footwear was "obviously modeled after" Dr. Martens® footwear.  The URL www.sneakernews.com is owned by an individual residing in New York, New York, and Sneaker News has editors in New York and California.  Attached as Exhibit 22 are true and correct copies of web pages from the www.sneakernews.com website, including the referenced article and the "About" page from the site. On information and belief, a large percentage of readers of Sneaker News are located in the United States, and some percentage of these readers attempted to or did purchase Infringing Footwear in the United States via the Internet or in Asia.

40.     Additionally, on or about January 6, 2012, OTWS, a blog dedicated to VANS-related news and information located at the URL www.offthewallsite.net, published a post about the Infringing Footwear, characterizing them as "Dr. Marten" inspired.  The blog post states that while the Infringing Footwear was only available in Japan, it encourages readers to enlist a friend or a proxy service to purchase a pair of the Infringing Footwear.  On information and belief, OTWS is located in the United States, as is the majority of its readership.  Attached as Exhibit 23 are true and correct copies of webpages from the www.offthewallsite.net relating to the Infringing Footwear and the purpose of the OTWS blog. On information and belief, some

1    percentage of OTWS readers attempted to or did purchase Infringing Footwear in the United

2    States via the Internet or in Asia.

3          41.    The referenced articles and blog posts, all located in the United States, have

4    exposed many U.S.-based consumers to the Infringing Footwear, amplifying the effect on U.S.

5    commerce of the infringing conduct complained of herein.

6          42.    On information and belief, because of the large population of people traveling

7    between Japan, Korea, Taiwan, Hong Kong, and China—in addition to the various articles and

8    blog posts described herein—an unknown but substantial number of Infringing Footwear has

9    made its way into the United States, further exacerbating the effect of the infringement in the

10   United States. As an example, Exhibits 17 and 18 represent purchases of the Infringing

11   Footwear in the United States by AIRWAIR. On information and belief, based on the fact that

12   they were available through various Internet channels and AIRWAIR was able to purchase them

13   in the United States from such channels, Infringing Footwear has been offered for sale and has

14   been sold to numerous other consumers in the United States. This shipping of the Infringing

15   Footwear into the United States was foreseeable.

16         43.    Additionally, VANS ratified and further authorized the infringement complained

17   of herein by allowing the VANS Licensee to continue to sell the Infringing Footwear, despite

18   knowledge of AIRWAIR's Trade Dress rights and in contravention of AIRWAIR's explicit

19   demand that the Infringing Footwear be immediately destroyed rather than sold.  Such

20   ratification is tantamount to directing infringing activities from the United States, for which

21   VANS is liable.  Because AIRWAIR is a direct competitor of VANS in the United States and

22   enjoys substantial sales of Dr. Martens® footwear in the United States, AIRWAIR has been

23   injured in the United States by the infringing activities complained of herein.

24         44.    The U.S. courts have a substantial interest in preventing VANS's infringement

25   alleged herein under the Lanham Act.  Accordingly, VANS's acts and omissions complained of

26   herein had, and continue to have, a significant effect on U.S. commerce and are subject to the

27   reach of the Lanham Act.

28   //

## ALLEGATION OF IRREPARABLE HARM

45.     By reason of Defendant's acts, AIRWAIR has suffered, and will continue to suffer, damage to its business, reputation, and goodwill, and the loss of sales and profits AIRWAIR would have realized but for Defendant's and/or its subsidiaries', affiliate companies', and/or Licensees' acts.  Unless restrained and enjoined, Defendant will continue to engage in the acts complained of and irreparably damage AIRWAIR.  AIRWAIR's remedy at law is not adequate to compensate AIRWAIR for all the resulting injuries arising from the acts and omissions alleged herein.

## FIRST CLAIM FOR RELIEF

### (Federal Trademark Infringement in Violation of Lanham Act Section 32, 15 U.S.C. § 1114)

46.     AIRWAIR realleges and incorporates by reference the previous paragraphs of this Complaint as if fully set forth herein.

47.     Defendant, directly, through, and/or in conjunction with its subsidiaries, affiliate companies, and/or its licensees as alleged herein, has used in commerce subject to regulation by the U.S. Congress on or in connection with footwear products a reproduction, counterfeit, copy, or colorable imitation of AIRWAIR's registered Trade Dress Marks in connection with the sale, offering for sale, distribution, and/or advertising of goods and services, which use is likely to cause consumer confusion, or to cause mistake or to deceive.

48.     Defendant, directly, through, and/or in conjunction with its subsidiaries, affiliate companies, and/or its licensees as alleged herein, has on or in connection with footwear products, reproduced, counterfeited, copied, and/or imitated AIRWAIR's registered Trade Dress Marks and has applied such reproduction, counterfeit, copy, and/or colorable imitations to signs, displays, advertisements, promotional materials, packaging, website content, and other materials used in commerce in connection with the sale, offering for sale, distribution, or advertising of goods and services, which use is likely to cause consumer confusion, or to cause mistake or to deceive.

//

49.     Defendant, directly, through, or in conjunction with its subsidiaries, affiliate companies, and/or its licensees as alleged herein, is acting and has acted with knowledge that its unlawful copying and use of AIRWAIR's registered Trade Dress Marks are counterfeit and such imitation is intended to cause consumer confusion, or to cause mistake or to deceive.

50.     Defendant's acts, directly, through, and/or in conjunction with its subsidiaries, affiliate companies, and/or its licensees as alleged herein, are in violation of 15 U.S.C. § 1114, and AIRWAIR has been and is likely to be damaged by these acts.  Thus, Defendant is liable for the acts alleged herein directly, vicariously, and/or contributorily.  Because the infringement alleged herein was intentional, willful, malicious, and done with full knowledge of AIRWAIR's Dr. Martens® Trade Dress Marks, and with the intent to trade on the goodwill therein and cause consumer confusion and deception, this action constitutes an exceptional case within the meaning of 15 U.S.C. § 1117.  Accordingly, AIRWAIR is entitled to exemplary damages, attorneys' fees, costs, and pre-judgment interest as authorized by the Lanham Act.

51.     As a result of Defendant's acts alleged herein, AIRWAIR has incurred damages in an amount to be proven at trial consisting of, among other things, the diminution in the value and goodwill associated with its Dr. Martens® Trade Dress, lost sales, and Defendant's profits attributable to the infringement.

WHEREFORE, AIRWAIR prays for relief and judgment in its favor as set forth below.

## SECOND CLAIM FOR RELIEF

### (Federal Unfair Competition and False Designation of Origin in Violation of Lanham Act Section 43(a), 15 U.S.C. § 1125 (a))

52.     AIRWAIR realleges and incorporates herein by reference the previous paragraphs of this Complaint as if fully set forth herein.

53.     Defendant's unlawful copying, directly, through, and/or in conjunction with its subsidiaries, affiliated companies, and/or licensees as alleged herein, and use of AIRWAIR's registered Trade Dress Marks in connection with its footwear products is a false and misleading designation of origin and a false and misleading representation of facts, which:

//

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Case No.

a.   is likely to cause consumer confusion, or to cause mistake or to deceive as to the affiliation, connection, or association of Defendant with AIRWAIR, or as to the origin, sponsorship, or approval of Defendant's goods or commercial activities by AIRWAIR; and/or

b.   in commercial advertising or promotion, misrepresent the nature, characteristics, or qualities of Defendant's goods, services, or commercial activities.

54.   Defendant's acts, directly, through, and/or in conjunction with its subsidiaries, affiliate companies, and/or its licensees as alleged herein, are in violation of 15 U.S.C. § 1125(a), and AIRWAIR is likely to be damaged and has been, by these acts.  Thus Defendant is liable for false designation of origin directly, vicariously, and/or contributorily.  Because the infringement alleged herein was intentional, willful, malicious, and done with full knowledge of AIRWAIR's Dr. Martens® Trade Dress Marks and with the intent to trade on the goodwill therein and cause consumer confusion and deception, this action constitutes an exceptional case within the meaning of 15 U.S.C. § 1117.  Accordingly, AIRWAIR is entitled to exemplary damages, attorneys' fees, costs, and pre-judgment interest as authorized by the Lanham Act.

55.   As a result of Defendant's acts alleged herein, AIRWAIR has incurred damages in an amount to be proven at trial consisting of, among other things, the diminution in the value and goodwill associated with its Dr. Martens® Trade Dress, lost sales, and Defendant's profits attributable to the infringement.

WHEREFORE, AIRWAIR prays for relief and judgment in its favor as set forth below.

### THIRD CLAIM FOR RELIEF

#### (Common Law Trade Dress Infringement)

56.   AIRWAIR realleges and incorporates herein by reference the previous paragraphs of this Complaint as if fully set forth herein.

57.   Defendant's acts alleged herein, directly, through, and/or in conjunction with Defendant's subsidiaries, affiliate companies, and/or its licensees, and specifically (without limitation) its unauthorized use of the Dr. Martens® Trade Dress, infringe AIRWAIR's

//

1   exclusive trademark rights in the Trade Dress, in violation of the common law. Thus, Defendant

2   is liable for common law trademark infringement directly, vicariously, and/or contributorily.

3        58.     Defendant's common law infringement of AIRWAIR's Dr. Martens® Trade

4   Dress has caused, and will continue to cause if not enjoined, irreparable and continuing harm to

5   AIRWAIR, its business, reputation, and goodwill, for which AIRWAIR has no adequate

6   remedy at law.

7        59.     As a result of Defendant's acts alleged herein, AIRWAIR has incurred damages

8   in an amount to be proven at trial consisting of, among other things, the diminution in the value

9   and goodwill associated with its Dr. Martens® Trade Dress, lost sales, and Defendant's profits

10   attributable to the infringement.

11        WHEREFORE, AIRWAIR prays for relief and judgment in its favor as set forth below.

12                        **FOURTH CLAIM FOR RELIEF**

13        **(Federal Trademark Dilution in Violation of Lanham Act Section 43(c)**

14                          **15 U.S.C. § 1125(c))**

15        60.     AIRWAIR realleges and incorporates herein by reference the previous

16   paragraphs of this Complaint as if fully set forth herein.

17        61.     AIRWAIR's Trade Dress is highly distinctive and famous throughout the United

18   States and was so long prior to the time that the infringing activities complained of herein took

19   place.  Defendant used and is using trade dress on the Infringing Footwear that is substantially

20   indistinguishable from AIRWAIR's registered Trade Dress Marks, after AIRWAIR's marks

21   became famous.

22        62.     On information and belief, AIRWAIR alleges that Defendant acted with

23   knowledge of the fame and reputation of the Dr. Martens® Trade Dress Marks with the purpose

24   of usurping such rights and to willfully and intentionally confuse, mislead, and deceive

25   members of the public.

26        63.     Defendant's actions, directly, through, and/or in conjunction with its

27   subsidiaries, affiliate companies, and/or licensees as alleged herein, are likely to dilute, blur, and

28   //

1    tarnish the distinctive quality of the Trade Dress Marks, and lessen the capacity of AIRWAIR's

2    marks to identify and distinguish the company's products and have done so.

3        64.    Defendant's acts are in violation of 15 U.S.C. § 1125(c), and AIRWAIR has

4    been and is likely to continue to be damaged by these acts.  Thus, Defendant is liable for federal

5    trademark dilution directly, vicariously, and/or contributorily.  Unless Defendant is restrained,

6    AIRWAIR will continue to suffer damages and injury to its reputation and goodwill.

7        65.    Because Defendant acted willfully and intentionally to trade on AIRWAIR's

8    reputation and/or cause dilution of AIRWAIR's famous Trade Dress, AIRWAIR is entitled to

9    damages, exemplary damages, fees and costs pursuant to 15 U.S.C. § 1125(c)(2).

10       WHEREFORE, AIRWAIR prays for relief and judgment in its favor as set forth below.

11                          **FIFTH CLAIM FOR RELIEF**

12   **(Dilution in Violation of California Business & Professions Code Section 14330, *et seq*.)**

13       66.    AIRWAIR realleges and incorporates herein by reference the previous

14   paragraphs of this Complaint as if fully set forth herein.

15       67.    Defendant has in connection with the Infringing Footwear products, directly,

16   through, and/or in conjunction with its subsidiaries, affiliated companies, and/or licensees as

17   alleged herein, used a trade dress that is substantially identical to AIRWAIR's registered Trade

18   Dress Marks and has caused dilution of the distinctive quality of AIRWAIR's footwear

19   products and its Trade Dress Marks and the goodwill represented thereby.

20       68.    AIRWAIR's Trade Dress Marks have become famous, and, as alleged, after

21   AIRWAIR's marks became famous, Defendant used and continues to use a trade dress that is

22   substantially identical to AIRWAIR's Trade Dress Marks.

23       69.    Defendant's actions, directly, through, and/or in conjunction with its

24   subsidiaries, affiliated companies, and/or licensees as alleged herein, have diluted, blurred, and

25   tarnished the strong and positive associations represented by AIRWAIR's Trade Dress Marks,

26   by lessening the capacity of AIRWAIR's marks to identify and distinguish AIRWAIR's

27   products, and by causing AIRWAIR's products and marks to be associated with footwear not

28   made, sponsored, or approved by AIRWAIR.  Defendant's acts are in violation of California

1 | Business & Professions Code sections 14330, *et seq.*, and AIRWAIR is likely to be, and has
2 | been, damaged by these acts. Thus, Defendant is directly, vicariously, and/or contributorily
3 | liable for trademark dilution under California law.

4 | 70. Defendant's acts complained of herein were willful, malicious, and fraudulent,
5 | and AIRWAIR is likely to be, and has been, damaged by these acts. As a result of Defendant's
6 | acts alleged herein, AIRWAIR has incurred damages in an amount to be proven at trial
7 | consisting of, among other things, the diminution in the value and goodwill associated with its
8 | Dr. Martens® Trade Dress, lost sales, and Defendant's profits attributable to the infringement.

9 | WHEREFORE, AIRWAIR prays for relief and judgment in its favor as set forth below.

10 | ### SIXTH CLAIM FOR RELIEF

11 | **(Unfair Competition in Violation of California Business**
12 | **& Professions Code Section 17200, *et seq.*)**

13 | 71. AIRWAIR realleges and incorporates herein by reference the previous
14 | paragraphs of this Complaint as if fully set forth herein.

15 | 72. Plaintiff has widely advertised and marketed Plaintiff's products in California,
16 | creating consumer demand for such products in California, elsewhere in the United States, and
17 | in other countries. Consequently, these products have become widely known and accepted by
18 | the consuming public in the United States.

19 | 73. Defendant's acts, directly, through, and/or in conjunction with its subsidiaries,
20 | affiliate companies, and/or licensees as alleged herein, including the unlawful use and imitation
21 | of AIRWAIR's registered Trade Dress Marks in connection with the manufacture, distribution,
22 | and sale of footwear products constitutes an unlawful, unfair, or fraudulent business act or
23 | practice and unfair, deceptive, untrue, or misleading advertising, in violation of California
24 | Business and Professions Code §§ 17200, *et seq.*

25 | 74. Defendant's pattern and practice of imitating AIRWAIR's registered Trade
26 | Dress Marks in connection with its footwear, and of trading upon AIRWAIR's goodwill and
27 | reputation, constitutes an unfair business practice in violation of California Business and
28 | Professions Code §§ 17200, *et seq.*

75.     Defendant's acts alleged herein have caused monetary damage to AIRWAIR in an amount to be proven at trial, and have caused, and will continue to cause, irreparable injury to AIRWAIR and its business, reputation, trademarks, Trade Dress, and goodwill unless and until Defendant is permanently enjoined from engaging in the acts alleged herein.

76.     Defendant's conduct alleged herein was willful, malicious, and fraudulent, and AIRWAIR is likely to be, and has been, damaged by these acts. Such willful acts of misrepresentation, fraud, and deceit have unjustly enriched Defendant and violated AIRWAIR's rights.

WHEREFORE, AIRWAIR prays for relief and judgment in its favor as set forth below.

## SEVENTH CLAIM FOR RELIEF

### (Common Law Unfair Competition)

77.     AIRWAIR realleges and incorporates herein by reference the previous paragraphs of this Complaint as if fully set forth herein.

78.     As alleged above, Defendant, directly, through, and/or in conjunction with its subsidiaries, affiliate companies, and/or licensees as alleged herein, has unlawfully distributed and sold the Infringing Footwear bearing confusingly similar trade dress to Plaintiff's famous Dr. Martens® Trade Dress as alleged herein, thereby passing them off as products authorized or distributed by Plaintiff. Accordingly, Defendant has engaged in, and continues to engage in, unfair competition with the intention of interfering with and trading on the business reputation and goodwill associated with Plaintiff's Dr. Martens® Trade Dress, which was gained through decades of hard work, innovation, customer service, and marketing.

79.     Defendant's unlawful conduct alleged herein has caused, and will continue to cause if not enjoined, irreparable and continuing harm to Plaintiff, its business, reputation, and goodwill, for which Plaintiff has no adequate remedy at law.

WHEREFORE, AIRWAIR prays for relief and judgment in its favor as set forth below.

//

//

//

**PRAYER FOR RELIEF**

WHEREFORE, AIRWAIR prays for judgment in its favor and against Defendant:

A.     A preliminary and permanent injunction enjoining Defendant, its officers, shareholders, agents, servants, employees, attorneys, successors and assigns, subsidiaries, affiliated companies, suppliers, manufacturers, distributors, retailers, licensees, and those in privity with them, and those persons in active concert or participation with any of them who receive actual notice of the judgment by personal service or otherwise, from manufacturing, marketing, distributing, or selling the Infringing Footwear or any other footwear products that use, imitate, or copy any of AIRWAIR's Trade Dress, registered Trade Dress Marks (as illustrated in Exhibits 1-6), or any combination of them.

B.     An Order directing Defendant to file with this Court and serve on Plaintiff's counsel within 30 days after service of an injunction, a report under oath setting forth in detail the manner and form in which Defendant has complied with the injunction.

C.     An Order that (1) all remaining inventory of the Infringing Footwear, point-of-sale materials, labels, signs, boxes, prints, catalogs, line sheets, marketing materials, internet web pages, metatags, packages, papers, other trade dress, and advertisements in the possession or control of Defendant, its subsidiaries, affiliated companies, and/or licensees bearing the Trade Dress, Dr. Martens® mark, or images, illustrations, or representations of the enjoined footwear, and undersole patterns, and all plates, molds, matrixes, and other means of making the same, be delivered to AIRWAIR's counsel or destroyed at AIRWAIR's option and (2) that Defendant disclose the identities of the vendors and manufacturers of the Infringing Footwear, sole molds, and undersole.

D.     An accounting of Defendant's profits (and that of any of its subsidiaries, affiliated companies, and/or licensees) arising from Defendant's unfair competition and trademark infringement and an award of Defendant's profits to Plaintiff, including disclosure of the number of pairs of Infringing Footwear sold in the United States and internationally, an accounting of the gross revenue derived from sale of the Infringing Footwear, and an accounting of all licensing fees received by Defendant from the sale of the Infringing Footwear.

1      E.      An award of damages sustained by Plaintiff.

2      F.      In the alternative to actual damages and profits, an award of statutory damages in

3  an amount of not more than $1,000,000 per counterfeit mark per type of services and/or goods

4  sold or offered for sale by Defendant, its subsidiaries, affiliated companies, and its licensees.

5      G.      An award of treble the actual damages awarded.

6      H.      Pre-judgment and post-judgment interest on the above damage awards.

7      I.      An award of costs and reasonable attorney's fees and expenses incurred by

8  AIRWAIR in connection with this action.

9      J.      Such other and further relief that this Court may deem just.

10

11  Dated: September 27, 2012

12                            Vijay K. Toke
                          *vijay@hiaringsmith.com*

13                            Anne Hiaring Hocking
                          *anne@hiaringsmith.com*

14                            Elizabeth J. Rest

15                            *elizabeth@hiaringsmith.com*
                          HIARING + SMITH, LLP

16                            101 Lucas Valley Road, Suite 300

17                            San Rafael, CA 94903
                          Telephone:  (415) 457-2040

18                            Facsimile:  (415) 457-2822

19

20                            *Attorneys for Plaintiff*
                          *AIRWAIR INTERNATIONAL LTD.*

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Case No.

# DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all claims for relief herein on all issues that are properly triable to a jury.

Dated: September 27, 2012

Vijay K. Toke
vijay@hiaringsmith.com
Anne Hiaring Hocking
anne@hiaringsmith.com
Elizabeth J. Rest
elizabeth@hiaringsmith.com
HIARING + SMITH, LLP
101 Lucas Valley Road, Suite 300
San Rafael, CA 94903
Telephone:  (415) 457-2040
Facsimile:  (415) 457-2822

*Attorneys for Plaintiff*
*AIRWAIR INTERNATIONAL LTD.*