Robert N. Phillips (SBN 120970)
Tiffany M. Bui (SBN 281339)
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA  94105-3659
Email: robphillips@reedsmith.com
Email: tbui@reedsmith.com

Telephone:   +1 415 543 8700
Facsimile:   +1 415 391 8269

Attorneys for Defendant Vans, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AIRWAIR INTERNATIONAL LTD., a United Kingdom corporation,<br><br>Plaintiff,<br><br>vs.<br><br>VANS, INC., a Delaware corporation; DOES 1-100, inclusive,<br><br>Defendants. | Case No. CV 12-05060-EJD<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Fed. R. Civ. Proc. 12(b)(1) and 12(b)(6)]<br><br>[Filed concurrently with (Proposed) Order]<br><br>Date:    March 29, 2013<br>Time:    9:00 a.m.<br>Place:   Courtroom 4<br><br>Compl. Filed:    September 28, 2012<br><br>Honorable Edward J. Davila |

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

US_ACTIVE-111420369.2

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 29, 2013 at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 4 of the United States District Court for the Northern District of California, San Jose Division, located at 280 South 1st Street, San Jose, California 95113, Defendant Vans, Inc. will and hereby does move this Court pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) for an order dismissing the Complaint of Plaintiff Airwair International Ltd., and each claim for relief alleged therein against Defendant on the grounds that the Court lacks subject matter jurisdiction over the asserted claims and the Complaint fails to state any claim upon which relief can be granted.

This Motion is based on this Notice of Motion, the Motion To Dismiss Plaintiff's Complaint with Memorandum of Points and Authorities attached thereto, the operative complaint and pleadings on file with the Court in this matter, all matters of which this Court may properly take judicial notice, and any other evidence or oral argument as the Court may consider in connection with this Motion.

DATED: December 17, 2012

                                       REED SMITH LLP

                                       By   *Robert N. Phillips*
                                                 Robert N. Phillips
                                                 Tiffany M. Bui
                                                 Attorneys for Defendant Vans, Inc.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. SUMMARY OF THE COMPLAINT ............................................................................. 2

III. LEGAL STANDARD ..................................................................................................... 5

IV. LEGAL ARGUMENT .................................................................................................... 6

    A. Airwair's Complaint Fails To Allege Facts Supporting Extraterritorial Application Of Federal And California Law. ................................................... 6

    B. Airwair's State Claims Should Be Dismissed Because California Has No Interest In Applying Its Laws Abroad. ............................................................ 11

        1. Alternatively, The Court Should Dismiss Airwair's Section 17200 Claim Because Airwair Cannot Plead All Alements Of The Claim. ............. 12

    C. Airwair's Complaint Fails to Allege a Basis to Hold Vans Liable For The Actions Of Its Licensee. ................................................................................... 13

V. CONCLUSION ............................................................................................................. 14

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

- i -

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

Page

## CASES

*Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*,
  988 F.2d 1157 (Fed. Cir. 1993) ................................................................................................ 5

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ............................................................................................ 5, 10, 12, 13

*Balistreri v. Pacifica Police Dept.*,
  901 F.2d 696 (9th Cir.1988) ..................................................................................................... 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................ 5, 10, 12, 13

*Churchill Village, L.L.C. v. GE*,
  169 F. Supp. 2d 1119 (N.D. Cal 2000) ................................................................................... 11

*Drexel v. Union Prescription Ctrs., Inc.*,
  582 F.2d 781 (3d Cir.1978) .................................................................................................... 13

*Dumas v. Kipp*,
  90 F.3d 386 (9th Cir. 1996) ................................................................................................. 5, 6

*Entrep'r. Media, Inc. v. Smith*,
  279 F.3d 1135 (9th Cir. 2002) ................................................................................................ 10

*Farmers Ins. Exch. v. Super. Ct.*,
  2 Cal. 4th 377 (1992) .............................................................................................................. 12

*Ileto v. Glock Inc.*,
  349 F.3d 1191 (9th Cir. 2003) .................................................................................................. 5

*Int'l Cafe, S.A.L. v. Hard Rock Cafe, Int'l (U.S.A.), Inc.*,
  252 F.3d 1274 (11th Cir. 2001) ................................................................................................ 6

*Khoury v. Maly's of Cal.*,
  14 Cal. App. 4th 612 (1993) ................................................................................................... 13

*L.A. Gear, Inc. v. E.S. Originals, Inc.*,
  859 F. Supp. 1294 (C.D. Cal. 1994) ................................................................................. 13, 14

*Lazar v. Hertz Corp.*,
  69 Cal. App. 4th 1494 (1999) ................................................................................................. 13

*Love v. Associated Newspapers, Ltd.*,
  611 F.3d 601 (9th Cir. 2010) .................................................................................................... 8

*Mini Maid Servs. Co. v. Maid Brigade Sys., Inc.*,
  967 F.2d 1516 (11th Cir.1992) ............................................................................................... 14

*Navarro v. Block*,
  250 F. 3d 729 (9th Cir. 2001) ................................................................................................... 5

*Northwest Mortg., Inc. v. Sup. Ct.*,
  72 Cal. App. 4th 214 (1999) ................................................................................................... 11

*Oberlin v. Marlin Am. Corp.*,
  596 F.2d 1322 (7th Cir.1979) ................................................................................................. 14

*Penpower Tech. Ltd. v. S.P.C. Tech.*,
  627 F. Supp. 2d 1083 (N.D. Cal. 2008) .................................................................................. 12

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ................................................................................................................ 11

*R&B Auto Ctr., Inc. v. Farmers Grp., Inc.*,
  140 Cal. App. 4th 327 (2006) ................................................................................................. 12

*Reebok Int'l. Ltd. v. Marnatech Enters., Inc.*,
  970 F.2d 552 (9th Cir. 1992) ............................................................................................. 8, 10

*Scripps Clinic v. Super. Ct.*,
  108 Cal. App. 4th 917 (2003) ................................................................................................. 12

*Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*,
  769 F.2d 1393 (9th Cir. 1985) .................................................................................................. 6

*Steele v. Bulova Watch Co.*,
  344 U.S. 280 (1952) .................................................................................................................. 9

*Timberlane Lumber Co. v. Bank of America*,
  549 F.2d 597 (9th Cir. 1977) ......................................................................................... 6, 8, 11

*Torres v. Goodyear Tire & Rubber Co.*,
  867 F.2d 1234 (9th Cir.1989) ................................................................................................. 14

*Zenger-Miller, Inc. v. Training Team, GmbH*,
  757 F. Supp. 1062 (N.D. Cal. 1991) ............................................................................... 5, 8, 9

**STATUTES**

Bus. & Prof. Code § 17204 ............................................................................................................ 12

Cal. Bus. & Prof. Code § 14202 .................................................................................................... 12

Cal. Bus. & Prof. Code § 14247 .................................................................................................... 12

Cal. Bus. & Prof. Code § 14330 .................................................................................................... 12

Stats. 2007, c. 711 (A.B. 1484), § 1 ............................................................................................... 12

**RULES**

Fed. R. Civ. Proc. 12(b)(1) .............................................................................................................. 5

Fed. R. Civ. Proc. 12(b)(6) .............................................................................................................. 5

- iii -

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I.   INTRODUCTION

Plaintiff Airwair International, Ltd. ("Airwair") is a U.K. company that sells DR. MARTENS branded footwear. Defendant Vans, Inc. ("Vans") is a California corporation that sells VANS branded footwear. Both companies' brands are popular among consumers, and have expanded worldwide.

To support its international business, Vans enters into license agreements with third parties. The licensees are granted the right to design, manufacture, advertise, and sell footwear bearing the VANS trademark. One such group of licensees is ABC Mart, an affiliation of apparel manufacturers located in Japan, Korea, and Taiwan. In 2011, ABC Mart designed and manufactured a line of VANS branded shoes called the Gibson. The Gibson shoes prominently displayed the VANS trademark on the back of the shoe and on the heal tab. ABC's advertising of the Gibson shoes also clearly identified them as VANS shoes. ABC Mart distributed the shoes through various stores in Asia, located primarily in Japan, Korea and Taiwan. Neither ABC Mart nor Vans ever marketed or sold the shoes in the United States. Vans does not own or currently possess any Gibson shoes. The remaining inventory is entirely owned and controlled by ABC Mart in Asia. There is no evidence that any consumers ever purchased the Vans Gibson shoes under the mistaken belief that they are DR. MARTENS shoes.

Nevertheless, based on its U.S. product design trademark registrations, Airwair requests this Court to enter a sweeping injunction against Vans and its licensees preventing all future sales, and ordering the destruction of, any remaining Gibson shoes in Asia. The Lanham Act, however, does not have such a broad, extraterritorial reach. The entirety of the allegedly infringing activity took place overseas by non-parties to this law suit. There has never been any impact on Airwair's American foreign commerce as a result of the sales of the Gibson shoes. Even if there was some minimal impact on Airwair's American foreign commerce, the minimal interest of United States does not outweigh the foreign interests to warrant extraterritorial application of the Lanham Act. Moreover, the Gibson shoes are clearly branded as VANS shoes and are marketed to savvy Asian

– 1 –

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1  consumers under the VANS brand.  These are clearly not cross-border, counterfeit DR. MARTENS
2  shoes; nor were they made for the purpose of targeting or deceiving U.S. consumers.  There is
3  virtually zero risk of consumer confusion in the United States.
4       Rather than attempt to enforce its alleged rights under the relevant trademark laws in the
5  home countries of Vans' licensees, Airwair seeks to impute the actions of these non-party licensees
6  to Vans in the United States.  Based upon a complaint mired in speculation and conclusory
7  assertions regarding a supposed "substantial effect on U.S. commerce," Airwair asks this court to
8  conclude that Airwair, a U.K. company headquartered in England, has suffered a cognizable injury
9  in the United States and that the Lanham Act and California law should apply.  These claims are
10 wholly unsupported by the allegations in the Complaint and the relevant law.  This court should
11 therefore dismiss Airwair's Complaint in its entirety with prejudice.

## II.    SUMMARY OF THE COMPLAINT

13      For purposes of this motion, the relevant allegations of the complaint are summarized as
14 follows.  Airwair manufactures and sells footwear under the DR. MARTENS trademark.  Compl. ¶
15 1.  Airwair and its parent company are incorporated under the laws of England and Wales, with their
16 principal places of business in the United Kingdom. *Id.*  Airwair sells DR. MARTENS branded
17 shoes worldwide, including in Japan, China, Korea, Taiwan and the United States.  Compl. ¶ 7.
18 Airwair's U.S. business is conducted through its subsidiary, Dr. Martens Airwair USA.  Compl. ¶ 7.
19 Airwair filed trademark registrations in the United States for certain aspects of the design of DR.
20 MARTENS branded shoes.  Compl. ¶ 8.  However, Airwair does not allege whether it holds any
21 similar trademark registrations in any of the foreign countries at issue in this case (i.e Japan, Korea,
22 Taiwan, and China).
23      Vans manufactures and sells footwear under the VANS trademark and is a competitor of
24 Airwair.  Compl. ¶ 12.  Vans has sold and distributed VANS branded shoes in the United States
25 since the 1960s.  *Id.*  As part of its world-wide business, Vans licenses rights to third parties to
26 manufacture, market, and sell products under the VANS brand.  Compl. ¶ 13.  Amongst Vans'
27 licensees is ABC Mart, a Japan-based company engaged in the business of selling shoes throughout

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 2 –

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Asia (the "Vans Licensee"). Compl. ¶ 13; Ex. 11. Vans receives license fees from the Vans Licensee. Compl. ¶ 14. The Vans Licensee designed, manufactured, marketed, and sold a line of VANS footwear called the "Gibson," which includes various shoe and boot models. Compl. ¶ 18. The Vans Licensee prominently displayed the VANS trademark on the Gibson shoes, as well as in its advertising for the Gibson shoes. Compl. Exs. 11-15. The shoes were not at any time sold or advertised under the DR. MARTENS trademark. *Id.* Airwair alleges on information and belief that Vans did not review the Gibson line, but had it done so, Vans would not have approved of the Vans Licensee's production of the Gibson line. Compl. ¶ 19.

The Vans Licensee manufactured approximately 29,000 pairs of shoes under the Gibson line. Compl. ¶ 20. The shoes were sold in brick-and-mortar stores in Japan, Korea, Taiwan, and Hong Kong. Compl. ¶ 20-22. The shoes were also offered for sale and sold on a website at www.vansjapan.com. *Id.* at ¶ 22. On two occasions in late June and early July 2012, Airwair was able to purchase Gibson shoes over the Internet and have them delivered to the United States. Compl. ¶ 24; Exs. 15-16. Both transactions were with Hong Kong based resellers—Kicks Crew and Fat Chaigin—and not with Vans or Vans' Licensee. Compl. ¶ 24. The shoes from Fat Chaigin through eBay contained a label indicating that they originated from a Vans retail store in Hong Kong. Compl. ¶ 25; Ex. 18. Airwair does not identify the orginal source of the Gibson shoes it purchased from Kicks Crew. Nor does Airwair indicate that either third-party reseller is affiliated with Vans in any way.

Nonetheless, Airwair contacted Vans and claimed that the VANS Gibson shoes infringed the DR. MARTENS trade dress. Compl. ¶ 29. Airwair demanded that Vans cease selling the Gibson line of shoes entirely. *Id.* Vans investigated the situation and—notwithstanding Airwair's failure to provide any evidence that it had product design trademark rights in the subject countries in Asia—Vans advised Airwair that it would stop selling the shoes in its Asia stores and on the www.vansjapan.com website as a courtesy. Compl. ¶ 30-33. Vans, however, advised Airwair that the Vans Licensee would not agree to destroy the remaining inventory of approximately 11,000 pairs of Gibson shoes. Compl. ¶ 34. Airwair does not allege that Vans is the owner of the Gibson shoes

– 3 –

1  or that Vans is in possession of any remaining inventory.

2  As for the alleged effects of the Gibson shoes on U.S. commerce, Airwair speculates that "a
3  significant portion" of U.S. consumers learned of the Vans Gibson shoes from various third-party
4  Internet sources (Kicks on Fire, Sneaker News, and Off The Wall), and that "at least some of these
5  readers" attempted or were successful in making purchases from resellers over the Internet in the
6  same manner as Airwair did in June and July 2012.  Compl. ¶ 38-40.  Airwair further speculates that
7  "because of the large population of people traveling between Japan, Korea, Taiwan, Hong Kong, and
8  China, . . . an unknown but substantial number of [the Vans Gibson line] has made its way into the
9  United States."  Compl. ¶ 42.   Airwair makes these conclusory assertions on "information and
10 belief" and offers no facts to support them.

11 Finally, Airwair makes the conclusory assertion that because Airwair and Vans both sell
12 footwear in the United States, "Airwair has been injured in the United States by the alleged
13 infringing activities."  Compl. ¶ 43.  Without any supporting facts, Airwair asserts that it "has
14 suffered, and will continue to suffer, damage to its business, reputation, and goodwill, and the loss of
15 sales and profits [it] would have realized" but for the sales of the Gibson line.  Compl. ¶ 45.
16 Notably, Airwair does not identify any instances where a U.S. consumer actually purchased VANS
17 Gibson shoes over the Internet mistaking them for DR. MARTENS shoes.  Nor does Airwair
18 demonstrate that it experienced any reduction in the sales of DR. MARTENS shoes in the United
19 States as a result of the allegedly infringing activity in Asia.

20 Notwithstanding Airwair's conclusory and purely speculative assertions regarding the
21 "substantial effects" on U.S. commerce, and the lack of any allegations demonstrating actual sales in
22 the United States (other than Airwair's own two self-serving purchases), and the complete silence
23 regarding Airwair's product design trademark registrations, or lack thereof, in the relevant countries
24 in Asia, Airwair requests this Court to enter a sweeping world-wide injunction against Vans, the
25 non-party Vans Licensee, and their retailers barring the sale of the Vans Gibson line, mandating the
26 destruction of the remaining inventory and related marketing and advertising materials, and
27 compelling a full accounting of all sales and profits.  Compl., Prayer for Relief.

28

– 4 –

### III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F. 3d 729, 732 (9th Cir. 2001). In evaluating a motion to dismiss under Rule 12(b)(6), the court must consider whether the complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal under Rule 12(b)(6) is proper when a complaint has either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988). The purpose of a Rule 12(b)(6) motion to dismiss is "to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus spare litigants the burdens of unnecessary pretrial and trial activity." *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993).

While all material allegations must be taken as true, "conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003). Indeed, the Supreme Court recently confirmed the requirement that pleadings must contain more than labels and unsupported conclusions and emphasized that conclusory allegations are not entitled to be assumed true. *See Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949-52 (2009), *citing Bell Atl. Corp.*, 550 U.S. at 570 (2007). Instead, a complaint must set forth facts which constitute a "plausible claim for relief." *Ashcroft*, 129 S. Ct. at 1950. To determine whether a claim is plausible, a court must "draw on its judicial experience and common sense." *Id.* When it would be futile to amend the Complaint's deficiencies, dismissal may be ordered with prejudice. *Dumas v. Kipp,* 90 F.3d 386, 393 (9th Cir. 1996). To the extent that the Complaint fails to allege facts sufficient to warrant extraterritorial application of the Lanham Act, it fails under both 12(b)(6) and 12(b)(1) for lack of subject matter jurisdiction. *Zenger-Miller, Inc. v. Training Team, GmbH*, 757 F. Supp. 1062, 1070-72 (N.D. Cal. 1991) (dismissing claims after determining the challenged foreign activities did not support extraterritorial application of the Lanham Act).

## IV. LEGAL ARGUMENT

### A. Airwair's Complaint Fails To Allege Facts Supporting Extraterritorial Application Of Federal And California Law.

Airwair's Complaint seeks damages from, and an injunction against, the advertising and sale of the Gibson line of shoes in Asia. Compl., Prayer for Relief. Airwair seeks to enjoin not only Vans, but any non-party licensee in possession of the Gibson line of shoes. *Id.* Airwair alleges that the Gibson line of shoes were manufactured by a Vans' licensee in Asia and sold in "brick and mortar" stores in Japan, Taiwan, Korea and Hong Kong, and offered over the Internet by Vans in Japan, and two Hong Kong based resellers (Fat Chaigin and Kicks Crew). Compl. ¶¶ 20-24. Airwair claims that the Vans Gibson line of shoes manufactured and offered for sale in Asia are confusingly similar in appearance to Airwair's DR. MARTENS line of shoes, and therefore allegedly infringe certain product design trademark registrations filed by Airwair in the United States. Compl. ¶ 25. Airwair asks the court to extend the reach of the Lanham Act to direct a foreign licensee to dispose of shoes designed, manufactured, stored, and sold entirely abroad. Compl., Prayer for Relief.

It is well-settled, however, that the Lanham Act only applies to allegedly infringing extraterritorial activity when: (1) the alleged violations create some effect on American foreign commerce; (2) the effect is sufficiently great to present a cognizable injury to the plaintiff under the Lanham Act; and (3) the interests of and links to American foreign commerce are sufficiently strong in relation to those of other nations to justify an assertion of extraterritorial authority. *Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 769 F.2d 1393, 1395 (9th Cir. 1985) (*citing Timberlane Lumber Co. v. Bank of America*, 549 F.2d 597 (9th Cir. 1977)). Clearly, this test focuses on the extent to which the foreign activity affects the plaintiff or its customers in the United States. Royalties or revenues received by a defendant in the United States do not warrant application of the Lanham Act to foreign activities. *Int'l Cafe, S.A.L. v. Hard Rock Cafe, Int'l (U.S.A.), Inc.*, 252 F.3d 1274, 1278-79 (11th Cir. 2001). Similarly, lost revenues incurred by a foreign plaintiff in other countries is irrelevant to the test. *Star-Kist Foods, Inc.*, *supra (*district court properly declined to enjoin sales

– 6 –

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

activity resulting in lost revenues to plaintiff overseas).

Airwair's complaint totally fails to state a basis for application of the Lanham Act to the Gibson line of shoes manufactured for sale in Asia. Other than its conclusory, formulaic recitations of harm, Airwair fails to allege specific facts demonstrating that the manufacture and sale of the Gibson shoes in Asia had any actual effect on American foreign commerce or caused any cognizable injury to Airwair in the United States. Airwair, a UK company, makes no showing that the Gibson shoes sold by the Vans Licensee in Asia affected Airwair's sales anywhere. There are no facts demonstrating that the manufacture and offer for sale of Gibson shoes in Asia interrupted Airwair's American foreign commerce. Airwair does not allege how these sales in Asia impacted the sale of Airwair's shoes from the United States to Asia, or from Asia to the United States. Nor does the Complaint contain any facts demonstrating an impact on Airwair in the United States, without regard to foreign commerce. At most, Airwair only makes conclusory allegations of harm based upon Airwair's self-serving purchases of two pairs of Gibson shoes over the Internet, and Airwair's pure speculation that additional purchases were made by "some percentage" of United States consumers via the Internet.[1] Airwair, however, alleges no facts to support the conclusion that such third party purchases were in fact made in the United States, or were substantial enough to have any effect on Airwair in the United States.

Likewise, Airwair does not allege, and cannot plausibly allege, that any of these unknown third-party purchasers were deceived into believing that they were purchasing Airwair's DR. MARTENS shoes when they ordered the Vans Gibson shoes. The subject reseller's Internet sites clearly identified the shoes as VANS Gibson shoes, not DR. MARTENS shoes, and thus any alleged brand confusion would be highly unlikely. Compl. Exs. 15-18. Nor does Airwair indicate how any of the Internet resellers are affiliated with Vans, beyond a receipt showing that the shoes sold by Fat Chaigin were originally from a Vans store in Hong Kong. Compl. ¶ 25.

Finally, Airwair does not allege any facts demonstrating that such unknown third-party

---

[1] Airwair also asserts that Vans received royalties in the United States from its licensee's sale of the Vans Gibson line of shoes in Asia. As noted above, defendant's receipt of royalties in the United States does not constitute a basis for extraterritorial application of the Lanham Act.

– 7 –

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

purchasers would have bought Airwair's shoes had they not purchased the Gibson shoes. In sum, Airwair does not, and cannot, allege facts to show that the alleged violations abroad have any effect on American foreign commerce, let alone an effect that is sufficiently great to present a cognizable injury to the plaintiff under the Lanham Act. Airwair's conclusory allegations are clearly insufficient as a matter of law to warrant the extraterritorial application of the Lanham Act under the first two *Timberlane* factors. *See Love v. Associated Newspapers, Ltd.*, 611 F.3d 601 (9th Cir. 2010) (district court properly declined to apply the Lanham Act to activities that occurred abroad where there was an insufficient showing of effect on U.S. commerce noting it was "too great of a stretch" to believe that any confusion overseas resulted in the decreased sales in the United States).

With regard to the third *Timerberlane* factor, the Ninth Circuit employs a seven-part analysis[2] to examine whether the interests of and links to American foreign commerce are sufficiently strong in relation to those of other nations to justify an assertion of extraterritorial authority. *Reebok Int'l. Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 555 (9th Cir. 1992) (*citing Timberlane*, 549 F.2d at 516). On very similar facts, this Court has granted a motion to dismiss after it analyzed the third *Timberlane* factor, concluding the facts did not support extraterritorial application of the Lanham Act. In *Zenger-Miller, Inc. v. Training Team, GmbH*, 757 F. Supp. 1062, 1070-72 (N.D. Cal. 1991), virtually all of the alleged infringing activities occurred in Germany, and therefore it was German purchasers of plaintiff's products who would be affected by defendants' activities. *Id.* at 1071. Moreover, adjudication of defendant's rights "would involve the production of German documents, the testimony of German nationals, and the testimony of employees at plaintiff's German office." *Id.* Any effect on plaintiff would be primarily felt in its European business. The court concluded that "the effect on United States commerce from the alleged infringing activities is relatively minimal compared to the effect on German commerce." *Id.*

---

[2] The seven factors are: (1) the degree of conflict with foreign law or policy, (2) the nationality or allegiance of the parties and the locations or principal places of business of corporations, (3) the extent to which enforcement by either state can be expected to achieve compliance, (4) the relative significance of effects on the United States as compared with those elsewhere, (5) the extent to which there is explicit purpose to harm or affect American commerce, (6) the foreseeability of such effect, and (7) the relative importance to the violations charged of conduct within the United States as compared with conduct abroad.

– 8 –

Moreover, "an injunction issued by a German court would be more effective than one issued by this court, since a German court would be able to exercise its supervisory power with respect to conduct within its geographical reach." *Id.*

The same is true here. Airwair's Complaint centers on wholly-foreign commerce occurring between Japan, Hong Kong, China, Taiwan, and Korea. If this has any effect on Airwair's business (which is extremely doubtful), that effect would have been primarily felt by Airwair's Asian business. Adjudication of whether the Gibson shoes infringe any of Airwair's alleged product design rights will require production of documents and testimony from ABC Mart in Asia, the party responsible for the design, manufacture and sale of the accused shoes. Clearly, the effect on U.S. commerce from this wholly-foreign exchange is de minimus compared to the effect on commerce of the relevant Asian countries. Moreover, Airwair does not allege that the design of the Gibson shoes violate any trademark laws in Japan, Korea, Taiwan, or Hong Kong, where they were sold. If the manufacture and sale of the Gibson shoes is lawful in those countries, the United States certainly does not have an interest in interfering with those sales based simply upon the possibility of reselling activity over the Internet by third parties to individuals residing in the United States. Conversely, if the Gibson shoes violate any foreign country laws, Airwair fails to allege any facts demonstrating that it would be unable to obtain relief in the courts of those jurisdictions or that the Northern District of California is in a better position to enforce such rights. Consequently, the third *Timberlane* factor warrants the denial of extraterritorial application of the Lanham Act.

This case is entirely different from *Steele v. Bulova Watch Co.*, 344 U.S. 280 (1952) and *Reebok*, 970 F.2d, where there were strong public policy factors to warrant extraterritorial application of the Lanham Act. In *Steele*, the defendant manufactured components in the United States, which were assembled in Mexico and sold to Americans in Mexican border towns. *Steele*, 344 U.S. at 286-87. There, the products were falsely designated as the plaintiff's brand, and there were numerous accounts of consumers bringing the counterfeit products to plaintiff's retail stores for maintenance. *Id.* Similarly, in *Reebok*, the defendant, located in the United States, directed the sales of counterfeit shoes in Mexican border towns despite knowing such shoes entered the United States

– 9 –

1 with regular frequency. *Reebok*, 970 F.2d at 554-55.  These counterfeit sales detracted from the
2 sales of genuine Reebok shoes in the United States. *Id.* at 555.  In both *Steele* and *Reebok*, plaintiffs
3 demonstrated that there was a serious risk of consumers purchasing the infringing products under the
4 false assumption they were genuine products.  Because of the counterfeit nature of the products, the
5 plaintiffs established a substantial effect in U.S. commerce and monetary injury felt in the United
6 States.  Moreover, both courts placed importance on the defendants' actions targeting U.S.
7 consumers and the resultant consumer confusion.

8       Here, however, there is no illegal counterfeiting.  Indeed, Airwair's own exhibits indicate the
9 Gibson shoes clearly and prominently have a VANS label. *See, e.g.,* Compl. Exs. 12, 16-18.
10 Airwair's Complaint and exhibits also lack any showing of U.S.-targeted activity by Vans.  Airwair
11 complains of the actions of third-party resellers, third-party fan websites, and its own purchases of
12 two pairs of Gibson shoes.  Compl. ¶¶ 24-25, 38-40.  Airwair states only that non-party Vans
13 Licensee has sold and, on information and belief, continues to sell the Gibson shoes in Asia.  Compl.
14 ¶ 37.

15       Moreover, Airwar offers no evidence of purchases by any number of consumers believing
16 they were purchasing DR. MARTENS, let alone a substantial amount.  It is well settled that, in order
17 to constitue trademark infringement, "use of a mark must be likely to confuse an *appreciable*
18 number of people as to the source of the product." *Entrep'r Media, Inc. v. Smith*, 279 F.3d 1135,
19 1151 (9th Cir. 2002) (emph. orig.) (citations omitted).  Rather than offer any factual allegations of
20 consumer confusion, Airwair relies on pure speculation that an *appreciable* number of American
21 consumers reviewed third-party websites that identify the Gibson shoes as VANS, researched and
22 found Asian-based resellers that identified the Gibon shoes as VANS, and then completed Internet
23 purchases of the VANS Gison shoes from these resellers all under the mistaken belief that they were
24 buying DR. MARTENS shoes.  As noted by the Ninth Circuit in *Love,* these allegations are "too far
25 of a stretch" to support any plausible claim for relief as required under the pleading standards set by
26 *Iqbal/Twombly*.

27       In sum, the lack of any allegations demonstrating a "sufficiently great" effect on American

– 10 –

foreign commerce under the first two *Timberlane* factors, the comparatively insignificant impact on U.S. commerce compared to the impact on foreign commerce under the third Timberlane factor, and the highly unlikely risk of consumer confusion while purchasing shoes clearly identified as Vans Gibson shoes, all mandate the conclusion that Airwair has failed to state any claim for relief in the United States. To the extent Airwair's two common law trade dress infringement and unfair competition claims are rooted directly to their Lanham Act claims, these claims also fail for the same reasons.

**B.     Airwair's State Claims Should Be Dismissed Because California Has No Interest In Applying Its Laws Abroad.**

The statutes and law of California will not normally be interpreted to "have force or operation beyond the boundaries of the state." *Northwest Mortg., Inc. v. Sup. Ct.*, 72 Cal. App. 4th 214, 222 (1999); *Churchill Village, L.L.C. v. GE*, 169 F. Supp. 2d 1119, 1126-1127 (N.D. Cal 2000) (holding that "California law embodies a presumption against the extraterritorial application of its statutes."). For the same reasons courts are reticent to apply the Lanham Act abroad without sufficient ties to American activity, California law should not apply to foreign activity.

With respect to the UCL specifically, section 17200 does not support claims by non-California residents where none of the alleged misconduct or injuries occurred in California. *Northwest Mortg.*, 72 Cal. App. 4th at 222. Indeed, beyond California's presumption against the extraterritorial application of its laws, a California court's adjudication of non-residents' claims that lack a nexus with California "raises significant due process problems." *Id.* at 225 (*citing Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810-11 (1985)).

Airwair admits it is a foreign corporation in its complaint. Compl. ¶ 1. Although Airwair identifies Dr. Martens Airwair USA, LLC ("Airwair USA") as a Delaware company qualified to do business in California, Airwair USA is not a named party in this case. Compl. ¶ 7. Moreover, Airwair does not allege that Airwair USA actually conducts any business in California. *Id.* As Airwair is not a resident of California, it can only allege violations of section 17200 for harm that occurs in California. However, Airwair fails to identify any harm in California beyond a conclusory

– 11 –

1 statement that "[d]efendant's acts . . . have caused monetary damage to Airwair in an amount to be
2 proven at trial".  Compl. ¶ 75.  Such conclusory allegations are not sufficient to withstand a 12(b)(6)
3 motion to dismiss.  *Ashcroft,* 129 S. Ct. at 1949-52, *citing Bell Atl. Corp.*, 550 U.S. at 570.

4       Indeed, California has no interest in having its law apply in this case involving an out-of-state
5 plaintiff, allegedly infringing activities that occurred in Asia by Asian companies, and distribution
6 that occurred overwhelmingly in Asia.  As a matter of law, Airwair, a United Kingdom resident, may
7 not assert a violation of section 17200 for purported harm that did not occur in California.

8       With respect to the California state dilution claim, Airwair brings claims under California
9 Business and Professions Code § 14330, *et seq.*, which has been repealed.  *See* Stats. 2007, c. 711
10 (A.B. 1484), § 1.  Thus, Airwair has no right to recover and can state no claim under this repealed
11 statute.  *See, e.g., Penpower Tech. Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083, 1090 (N.D. Cal. 2008)
12 ("Plaintiffs' fifth cause of action alleges dilution and injury to business reputation in violation of
13 California Business and Professions Code § 14330. . . . "'The repeal of a statute creating a penalty .
14 . . extinguishes the right to recover the penalty.'" (citations omitted)).  To the extent Airwair is
15 attempting to bring a claim under California Business and Professions Code §§ 14202 and 14247—
16 the current California anti-dilution statutes—California has no interest in applying its trademark laws
17 for the same reasons outlined above.

18       As a result, Airwair has failed to state any claim for relief under California law.

19     **1.**    **Alternatively, The Court Should Dismiss Airwair's Section 17200 Claim Because**
20         **Airwair Cannot Plead All Alements Of The Claim.**

21       To have standing to pursue a UCL claim, a private plaintiff must allege that he "has suffered
22 *injury in fact and has lost money or property*" as a result of the alleged unfair practices.  *See* Bus. &
23 Prof. Code § 17204 (emph. added); *see R&B Auto Ctr., Inc. v. Farmers Grp., Inc.*, 140 Cal. App. 4th
24 327, 360 (2006).  The UCL "borrows" violations of other laws and authorizes a separate action
25 pursuant to the UCL.  *See Farmers Ins. Exch. v. Super. Ct.*, 2 Cal. 4th 377, 383 (1992).  "Unfair"
26 conduct must be violative of a public policy "tethered to specific constitutional, statutory, or
27 regulatory provisions."  *Scripps Clinic v. Super. Ct.*, 108 Cal. App. 4th 917, 940 (2003).  "A plaintiff
28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 12 –

1 alleging unfair business practices . . . must state with reasonable particularity the facts supporting the
2 statutory elements of the violation." *Khoury v. Maly's of Cal.*, 14 Cal. App. 4th 612, 619 (1993).
3 However, where a substantive claim fails, any UCL claim predicated on the failed claim fails as
4 well. *Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1505 (1999) (The UCL requires a violation of the
5 underlying law; a defense to the predicate claim is a defense to the UCL claim).

6       Here, Airwairs fail to establish injury in fact.  Airwair pleads no facts showing any injury in
7 fact or a loss of money or property.  Although it alleges "[d]efendant's acts . . . have caused
8 monetary damage", Airwair does not allege any facts beyond the conclusory allegation, much less
9 any allegations regarding a loss or harm suffered in California.  Such conclusory allegations need not
10 be accepted as true. *Ashcroft,* 129 S. Ct. at 1949-52, *citing Bell Atl. Corp.*, 550 U.S. at 570.

11       Further, Airwair's unfair competition claims—both statutory and common law—are
12 predicated on the failed legal theories of trademark infringement.  As explained above, Airwair has
13 failed to identify any action that constitutes extraterritorial application of the U.S. trademark laws.
14 Airwair cannot tether its unfair competition claims to any underlying violation.  Airwair has thus
15 failed to state any claim for plausible relief.

16 **C.**  **Airwair's Complaint Fails to Allege a Basis to Hold Vans Liable For The Actions Of Its**
17     **Licensee.**

18       Airwair challenges actions by the Vans Licensee that occured exclusively abroad.  Airwair
19 does not, however, allege that Vans itself designed, manufactured, sold, or advertised the shoes.  Nor
20 does Airwair allege that Vans is the current owner of the Gibson shoes or even in possession of any
21 of the Gibson shoes.  Nonetheless, Airwair attempts to hold Vans liable for the actions of its
22 licensee.  It is well settled that a licensor can only be held vicariously liable for the infringing acts of
23 a licensee if it appears that, through the licensing agreement, the licensor exercised "sufficient
24 control" over the licensee.  *See L.A. Gear, Inc. v. E.S. Originals, Inc.*, 859 F. Supp. 1294, 1299-1300
25 (C.D. Cal. 1994) (*citing Drexel v. Union Prescription Ctrs., Inc.*, 582 F.2d 781, 784 (3d Cir.1978)).

26       Other than the license agreement, however, Airwair makes no other allegatations in support
27 of its theory of holding Vans liable for the actions of its licensee.  Airwair does not allege that Vans
28

– 13 –

1 exerted any control over the Vans Licensee's design, marketing, sales, or advertisement of the
2 Gibson shoes. Airwair alleges the license agreement allowed Vans to perform quality control over
3 its licensee. However, trademark license agreements do not in and of themselves create an agency
4 relationship to support licensor liability. *See Oberlin v. Marlin Am. Corp.*, 596 F.2d 1322, 1327 (7th
5 Cir.1979); *accord Mini Maid Servs. Co. v. Maid Brigade Sys., Inc.*, 967 F.2d 1516, 1519-21 (11th
6 Cir.1992); *Torres v. Goodyear Tire & Rubber Co.*, 867 F.2d 1234, 1236-39 (9th Cir.1989).

7 Airwair has not alleged Vans had any ownership or control over the Gibson shoes. Airwair
8 has not shown that Vans had any knowledge of alleged infringement at the time the the Vans
9 Licensee approved the Gibson design. Indeed, Airwair concedes that Vans did not review or
10 approve the Gibson shoes. This alone is fatal to Airwair's attempt to impose liability on Vans for
11 the actions of its licensee. *L.A. Gear, Inc.*, 859 F. Supp. at 1300 (finding the exercise of minimal
12 control over trademark licencee's activities to be unsupported and speculative allegations, thus
13 unavailing of vicarious liability). Airwair has not, and cannot, allege any facts to support holding
14 Vans liable for the actions of its licensee.

## V. CONCLUSION

16 Airwair completely fails to state any plausible claim for relief. Airwair is unable to stretch
17 the Lanham Act to apply to the exclusively extraterritorial actions of the non-party Vans Licensee.
18 Airwair likewise fails to allege a basis to hold Vans liable for the actions of third party resellers or
19 advertisers. Airwar also fails to state a basis or application of California law to the activity that
20 occurred in Asia. At most, Airwair states only that it was able to make two self-serving purchases of
21 the Gibson shoe—shoes initially sold by a Vans licensee—through third-party resellers. Airwair's
22 purposeful avoidance of foreign jurisdictions, and attempt to hold Vans responsible in the United
23 States for the actions of foreign actors, does not hold water. The Complaint should be dismissed
24 with prejudice.

DATED: December 17, 2012             REED SMITH LLP

By  *Robert N. Phillips*
    Robert N. Phillips
    Tiffany M. Bui
    Attorneys for Defendant Vans, Inc.

– 15 –
DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF