Vijay K. Toke, Cal. Bar No. 215079
*vijay@hiaringsmith.com*
Anne Hiaring Hocking, Cal. Bar No. 88639
*anne@hiaringsmith.com*
Elizabeth J. Rest, Cal. Bar No. 244756
*elizabeth@hiaringsmith.com*
HIARING + SMITH, LLP
101 Lucas Valley Road, Suite 300
San Rafael, California 94903
Telephone:  (415) 457-2040
Facsimile:  (415) 457-2822

Kenneth E. Keller, Cal. Bar No. 71450
*kkeller@kksrr.com*
Tracy M. Clements, Cal. Bar No. 184150
*tclements@kksrr.com*
Anne E. Kearns, Cal. Bar No. 183336
*akearns@kksrr.com*
KRIEG, KELLER, SLOAN, ROMAN & HOLLAND LLP
555 Montgomery Street, 17th Floor
San Francisco, California 94111
Telephone:  (415) 249-8330
Facsimile:  (415) 249-8333

*Attorneys for Plaintiff*
*AIRWAIR INTERNATIONAL LTD.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| AIRWAIR INTERNATIONAL LTD., a United Kingdom corporation,<br><br>                   Plaintiff,<br><br>          vs.<br><br>VANS, INC., a Delaware corporation; DOES 1-100, inclusive,<br><br>                   Defendants. | Case No. 12-cv- 05060-EJD<br><br>**PLAINTIFF AIRWAIR INTERNATIONAL LTD.'S OPPOSITION TO DEFENDANT VANS, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>**Documents Filed Herewith:** [Proposed] Order<br><br>**Hearing Date:**     March 29, 2013<br>**Time:**              9:00 a.m. |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Courtroom:**          4

**Complaint Filed:** September 28, 2012
Honorable Edward J. Davila

(E-Filing)

# TABLE OF CONTENTS

I.     ISSUES PRESENTED ........................................................................................ 1

II.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................... 1

III.   FACTUAL BACKGROUND ............................................................................ 2

IV.   ARGUMENT .................................................................................................... 5

A. Legal Standard for Pleadings .................................................................... 5

B. Subject Matter Jurisdiction Exists Because The Lanham Act Provides a Broad ............
Jurisdictional Grant and Its Extraterritorial Application is Appropriate Here ................... 7

    1.    The Allegations of the Complaint Satisfy the *Timberlane* Test For
        Extraterritorial Application of the Lanham Act ........................................ 8

        a. The Complained of Conduct Had An Effect on American Commerce
           Substantially Great Enough to Present a Cognizable Injury to Plaintiff,
           Satisfying the First Two Prongs of the *Timberlane* Test ............................ 8

        b. The Interests of and Links to American Commerce Are Sufficiently
           Strong in Relation to Those of Other Nations to Justify Extraterritorial
           Application of the Lanham Act Under the Third *Timberlane* Factor ....... 12

              i)      Degree of Conflict with Foreign Law or Policy ............... 12

              ii)     The Nationality or Allegiance of the Parties and the
                      Locations or Principal Places of Business of Corporations ..
                      .......................................................................................... 12

              iii)    The Extent To Which Enforcement by Either State Can Be
                      Expected To Achieve Compliance .................................... 13

              iv)    The Relative Significance of Effects On the United States
                      as Compared With Those Elsewhere ............................... 14

              v)      The Extent To Which There Is Explicit Purpose To Harm
                      or Affect American Commerce and the Foreseeability Of
                      Such Effect … ………………………………………… .14

vi)     The Relative Importance To The Violations Charged Of
        Conduct Within The U.S. As Compared With Conduct
        Abroad ………………………………………………….. 15

        c. Defendant's Own Cited Precedent Established That Airwair's Complaint
            Satisfies the *Timberlane* Test……………………………………… …16

C. The Complaint Contains Facts Sufficient to Allege Defendant's Violations of
California State Law Claims…………………………………………………… ….20

        1.     The Complaint Pleads Conduct by Defendant that Occurred Within
               California and Sufficiently Alleges Defendant's Violations of
               California Business & Professions Code Section 17200, et seq. ……. 20

        2.     The Complaint Sufficiently Alleges Defendant's Violations of
               California Business & Professions Code Sections 14202 and 14247  .22

D. The Complaint Alleges Facts Sufficient to Hold Defendant Vans Liable for the
Actions of its Vans Licensee………………………………………………………… 23

V. CONCLUSION ..................................................................................... 24

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
Case No. 12-cv-05060-EJD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (U.S. 2009) ................................................................. 6

*Aurora World, Inc. v. TY Inc.*, 719 F. Supp. 2d 1115 (C.D. Cal. 2009) ..................................... 7, 8

*Barcamerica Int'l USA Trust v. Tyfield Imps., Inc.*, 289 F.3d 589 (9th Cir. Cal. 2002)..... 8, 23, 24

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (U.S. 2007) ................................................. 5, 6, 22

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336 (9th Cir. Cal. 1996) ...................................... 6, 20, 23

*Drexel v. Union Prescription Ctrs., Inc.*, 582 F.2d 781 (3d Cir. 1978) ................................. 23, 24

*FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509 (9th Cir. Cal. 2010) ...................... 9, 24

*Int'l Café v. Hard Rock Cafe Int'l*, 252 F.3d 1274 (11th Cir. Fla. 2001) ............................... 16, 17

*L.A. Gear v. E.S. Originals*, 859 F. Supp. 1294 (C.D. Cal. 1994) ....................................... 23, 24

*Lia Faalevao v. Timothy Davenport Mechem*, 2010 U.S. Dist. LEXIS 67019 (E.D. Cal. 2010)... 5

*Love v. Associated Newspapers, Ltd.*, 611 F.3d 601 (9th Cir. 2010) ........................................ 18

*Mattel, Inc. v. MCA Records, Inc.*, 28 F. Supp. 2d 1120 (C.D. Cal. 1998) .................... 11, 12, 18

*Miller v. Facebook, Inc.*, 2010 U.S. Dist. LEXIS 31534 (N.D. Cal. Mar. 31, 2010) .............. 6, 23

*Neighborhood Assistance Corp. of Am. v. First One Lending Corp.*,
   2012 U.S. Dist. LEXIS 67950 (C.D. Cal. May 15, 2012 ...................................................... 10

*New Name , Inc. v. Walt Disney Co.*, 2008 U.S. Dist. LEXIS 107204 (C.D. Cal. 2008)..... 7, 8, 11

*Norwest Mortgage, Inc. v. Superior Court*,
   72 Cal. App. 4th 214 (Cal. App. 4th Dist. 1999) ............................................................... 20, 21

*Ocean Garden, Inc. v. Marktrade Co.*, 953 F.2d 500 (9th Cir. Cal. 1991) ........................ 8, 12, 14

*Official Comm. of Unsecured Creditors of Schlotzsky's, Inc. v. Grant Thornton, L.L.P.*
   *(In re Schlotzsky's, Inc.)*, 351 B.R. 430 (Bankr. W.D. Tex. 2006) .......................................... 22

*Pareto v. F.D.I.C.*, 139 F.3d 696 (9th Cir. 1998) ................................................................ 6, 23

*Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480 (9th Cir. 1995) ........................................ 6

*Reebok Int'l v. Marnatech Enters.*, 970 F.2d 552 (9th Cir. Cal. 1992)  8, 12, 13, 14, 15, 16, 19, 20

*Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917 (Cal. App. 4th Dist. 2003) .................. 22

*Seed Servs., Inc. v. Winsor Grain, Inc.*, 868 F. Supp. 2d 998 (E.D. Cal. 2012) .......................... 10

*Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*,

    769 F.2d 1393 (9th Cir. Cal. 1985) ................................................................ 7, 8, 12, 17, 18, 19

*Steele v. Bulova Watch Co.*, 344 U.S. 280 (U.S. 1952) ............................. 1, 7, 12, 19, 20

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832 (9th Cir. Cal. 2001) .... 10, 11, 12

*Timberlane Lumber Co. v. Bank of America, N.T. & S.A.*,

    549 F.2d 597 (9th Cir. Cal. 1976) ....................................... 7, 8, 12, 14, 15, 16, *passim*

*United States v. City of Redwood City*, 640 F.2d 963 (9th Cir. 1981). ............................................ 6

*Usher v. City of Los Angeles*, 828 F.2d 556 (9th Cir. 1987) .................................................... 6, 23

*Walling v. Beverly Enters.*, 476 F.2d 393 (9th Cir. 1973) ............................................................ 6

*Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406 (9th Cir. Nev. 1977) .................... 7

*Zenger-Miller, Inc. v. Training Team, GmbH*, 757 F. Supp. 1062 (N.D. Cal. 1991) ......... 8, 17, 18

**Statutes**

15 U.S.C. § 1125(a)(1) ............................................................................................................. 11

California Business & Professions Code § 14202 ...................................................................... 22

California Business & Professions Code § 14247 ...................................................................... 22

California Business and Professions Code § 14330 ................................................................... 22

California Business & Professions Code §17200, *et seq* ....................................................... 20, 21

Fed. R. Civ. Proc. 12(b)(1) ........................................................................................................ 1

Fed. R. Civ. Proc. 12(b)(6) ........................................................................................................ 1

Fed. R. Civ. Proc. 8(a)(2) ..................................................................................................... 5, 28

Plaintiff AIRWAIR INTERNATIONAL LTD., a United Kingdom corporation ("Plaintiff" or "Airwair"), by and through its attorneys Hiaring + Smith, LLP, submits the following Opposition to Defendant VANS INC.'s ("Defendant" or "Vans") Motion to Dismiss Plaintiff's Complaint ("Motion to Dismiss"):

## I.     ISSUES PRESENTED

1. Whether Plaintiff's Complaint alleges facts sufficient for this Court to exercise subject matter jurisdiction over the asserted claims (Fed. R. Civ. Proc. 12(b)(1)); and

2. Whether Plaintiff's Complaint alleges facts sufficient to state a claim upon which relief can be granted (Fed. R. Civ. Proc. 12(b)(6)).

## II.     INTRODUCTION AND SUMMARY OF ARGUMENT

With its Motion to Dismiss, Vans would prefer to bypass discovery, summary judgment, and trial, and have this Court render a decision without affording Airwair an opportunity to prove its case. Not only is this premature, it is improper. The Lanham Act, which governs Plaintiff's trademark-based claims for relief, has a broad jurisdictional grant. Its reach governs any commerce that Congress can regulate, even commerce consummated wholly outside of the United States, so long as it has an appreciable effect on U.S. commerce and harms the plaintiff. Such is the case here. The conduct alleged in the Complaint more than sufficiently allege such an appreciable effect on U.S. commerce, as well as harm to Plaintiff in the U.S.

Contrary to the contentions in its Motion to Dismiss, Vans should not be able to "evade the thrust of the laws of the United States in a privileged sanctuary beyond [U.S.] borders" simply by arguing that it had no control over its licensee in Japan, when the facts as pled in the Complaint clearly indicate otherwise. *Steele v. Bulova Watch Co*., 344 U.S. 280, 287 (U.S. 1952) ("*Steele*"). Indeed, Vans's Motion to Dismiss can only test the sufficiency of the Complaint, taking all of its factual allegations as true, and no more. Under that standard, the Complaint is more than sufficient, and all allegations within it—even those based on information and belief—are premised on sound inferences from facts known to Airwair.

The case law cited by Vans actually reveals the strength of Airwair's Complaint. Each of

those cases involved related, pending litigation in other countries that could have conflicted with the litigation in the U.S. or only minor factual threads connecting the complained of actions to U.S. commerce. Airwair's Complaint suffers no such shortcomings.

Vans is an American company who, through its actions with a foreign licensee, controlled and ratified conduct that infringed the registered trade dress of a well-established competitor in the United States. These orchestrated efforts included entering into a license agreement with the licensee in the U.S., reaping monetary rewards in the U.S., selling the Infringing Footwear through a website owned by Defendant in the U.S., and ratifying the continued sale of the Infringing Footwear for more than seven months over Plaintiff's protest. These sustained and continuous activities by Vans have had a substantial effect on U.S. commerce that cognizably harmed Plaintiff in the U.S. For example, the Infringing Footwear received notoriety from American journalists writing to an American audience, who highlighted the Infringing Footwear for its use of Plaintiff's registered Trade Dress and, with two of the articles, actually encouraged American consumers to purchase the shoes. This notoriety in the U.S., coupled with the fact that Airwair was itself able to procure the Infringing Footwear from the U.S. as late as July 2012, supports the reasonable allegation that an appreciable number of the Infringing Footwear was purchased by unwitting Americans consumers.

The same holds for Airwair's California law-based claims. Vans's conduct, as alleged in the Complaint, occurred within California. That the object of those actions and control falls outside California borders is of no moment. The Complaint alleges that Vans, a California-based company, has engaged in unfair business practices and other unlawful conduct against a party against whom it competes in California. This is sufficient to withstand a facial challenge.

Vans's Motion to Dismiss should be denied in its entirety.

### III.   FACTUAL BACKGROUND

Plaintiff is the manufacturer of the world famous Dr. Martens® footwear, and the owner of related trademarks and trade dress (the "Trade Dress"). Complaint ¶¶ 6, 8. Plaintiff, by and through its wholly-owned subsidiaries and affiliates, including Dr. Martens Airwair USA, LLC, a Delaware limited liability company (qualified to do business in California), has been

manufacturing and marketing Dr. Martens® footwear since 1960, and selling in the U.S. since at least 1984.  Complaint ¶¶ 6, 7, 12.  Dr. Martens Airwair USA, LLC distributes and sells high volumes of Dr. Martens® footwear in the U.S.  Complaint ¶ 7.  Dr. Martens® brand footwear is widely recognized and, due in part to its distinctive Trade Dress, has become one of the world's most immediately recognizable and famous brands. Complaint ¶ 7.

In addition to its iconic footwear models, Plaintiff has developed new ranges of footwear incorporating various elements of its distinctive Trade Dress.  Complaint ¶ 11.  One example is the line of shoes primarily at issue here, called the "Eclectic" line of shoes, which incorporates much of the Dr. Martens® Trade Dress.  Complaint ¶ 11; *see*, Exhibit 10 to Complaint.  Plaintiff's "Eclectic" line of shoes has been sold throughout the U.S. and worldwide since as early as August 2010.  Complaint ¶ 11.

Defendant, a Delaware corporation, is also a very well-known footwear company, with its corporate headquarters located in California.  Complaint ¶ 2, 12; Motion to Dismiss 1:5-6.  Plaintiff and Defendant share similar demographic targets and customer bases.  Complaint ¶ 12.  At some point in time, Defendant licensed the right to manufacture, market, and sell products under the VANS® trademark to ABC Mart, a Japan-based company engaged largely in the business of selling shoes (the "Vans Licensee").  Complaint ¶ 13; Motion to Dismiss 1:9-10.  Since Defendant is a U.S. corporation, the Vans Licensee necessarily had to enter into its trademark license with Defendant in the U.S.  Complaint ¶¶ 2, 14.  As with all valid trademark licenses in the U.S., the license between Defendant and its Vans Licensee must have contained the right and obligation to maintain quality control over products designed, manufactured, marketed, or sold by the Vans Licensee, including without limitation the right and/or obligation to review and approve such products prior to their sale.  Complaint ¶ 14.  Otherwise, the license would be nothing more than a naked license, divesting Vans of its trademark rights.

Pursuant to its license with Defendant, the Vans Licensee designed, manufactured, marketed, and sold a line of footwear called the "Gibson," which includes various shoe and boot models (the "Infringing Footwear").  Complaint ¶ 18.  The Infringing Footwear incorporates the Dr. Martens® Trade Dress.  Complaint ¶ 18.  In fact, the overall configuration and appearance

of the "Gibson" line of footwear is virtually identical to the Dr. Martens® "Eclectic" line of footwear, while other models of the Infringing Footwear are confusingly similar to more classic Dr. Martens® designs.  Complaint ¶ 18; *see*, Exhibit 11 to Complaint.  Defendant was fully aware of the Infringing Footwear  -- which it sold on its website, located at www.vansjapan.com. The website is owned by Defendant Vans, Inc., in the United States.  Complaint ¶¶ 22, 23.

On or about November 30, 2011, Plaintiff sent a cease and desist letter to Defendant demanding that it cease selling the Infringing Footwear and direct its Vans Licensee to do the same.  Complaint ¶ 29.  On or about January 13, 2012, Plaintiff informed Defendant that the Infringing Footwear was still being offered on Defendant's U.S.-owned www.vansjapan.com website, despite its cease and desist letter of November 30, 2011.  Complaint ¶ 31.

Finally, in late January 2012, Vans took down the Infringing Footwear from its website, www.vansjapan.com.  The Vans Licensee, on the other hand, ignored the demand, and chose instead to continue selling off its remaining inventory of the Infringing Footwear—some 11,000 pairs out of a total run of 29,000—to "family members" at a deep discount.  Complaint ¶¶ 20, 34.  Despite Airwair's protest, Vans did nothing to stop such continued sales, even though it had the power to do so as the licensor of its trademark. Complaint ¶34.  Vans, a US-based company, thus ratified the Vans Licensee's misconduct, making it equally liable.  Complaint ¶ 43.

The sales of the Infringing Footwear had significant effect on U.S. commerce. As a result of these sales (and presumably non-infringing footwear as well), Defendant has realized significant royalties in the U.S. from the Vans Licensee.  Complaint ¶ 36.  The Infringing Footwear also received press and other journalistic attention in the U.S., exposing many American consumers to the Infringing Footwear and amplifying the effect on U.S. commerce.  Complaint ¶¶ 38 – 41.  This media attention specifically noted the striking similarities of Airwair's Dr. Martens Trade Dress, representing an example of how Plaintiff has suffered a loss of complete control over the use and distribution of its registered Trade Dress in the U.S.  Complaint ¶¶ 38 – 40.  Moreover, at least two other sellers offered to sell, and did sell, Infringing Footwear to the U.S. several months after Airwair's cease and desist efforts, as

evidenced by Plaintiff's own purchase of two pairs of the footwear from San Rafael, California in July 2012.  Complaint ¶ 24; *see*, Exhibits 15 – 18 to the Complaint.

Given the press coverage the Infringing Footwear received in the U.S., and the fact that retailers were selling the Infringing Footwear in the U.S. at least as late as July 2012, more sales to the U.S. of Infringing Footwear, though in an unknown amount at this time, are certain, further amplifying the effect of the infringement in the United States.  Complaint ¶ 42. Defendant is thus liable for direct, vicarious, and/or contributory trademark infringement under the trademark laws of the U.S., and subject matter jurisdiction is proper in this action. Complaint ¶ 27.

American courts have a substantial interest in preventing Defendant's infringement as alleged in the Complaint.  Defendant's infringing activities, as pled, have had substantial effects on commerce in the U.S.  Defendant is an American company and has directly, vicariously, and/or contributorily infringed several U.S. trademark registrations of a competitor who also sells large volumes of footwear in the U.S. by engaging in, directing, authorizing, and/or inducing the infringing conduct alleged from the U.S.  Complaint ¶ 35.  These effects on U.S. commerce have harmed Plaintiff in the United States.  Complaint ¶¶ 35, 41, 43.

## IV.    ARGUMENT

A motion to dismiss tests only the sufficiency of the allegations in the complaint—no more, no less.  As Defendant's Motion admits, a complaint need only put forth allegations sufficient to outline a plausible claim against the defendant.  Motion to Dismiss 5:17-18. Airwair's Complaint easily meets this standard.

### A.    Legal Standard for Pleadings

The Federal Rules of Civil Procedure require only notice pleading, which means only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See*, Fed. R. Civ. Proc. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (U.S. 2007) ("*Twombly*").  A complaint does not need detailed factual allegations to avoid a motion to dismiss. *Twombly* at 555.  Even under the more stringent pleadings standards called for by

1    recent Supreme Court precedent, the factual allegations must merely be "enough to raise a right
2    to relief above the speculative level." *Id.*  The Complaint here easily meets that standard.

3          To survive a motion to dismiss, a complaint must contain sufficient factual matter,
4    accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556
5    U.S. 662, 678 (U.S. 2009).  On a motion to dismiss, the Court must accept as true all material
6    allegations in the complaint, as well as all reasonable inferences to be drawn from them. *Usher*
7    *v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987) ("*Usher*"); *Pareto v. F.D.I.C.*, 139
8    F.3d 696, 699 (9th Cir. 1998); *Miller v. Facebook, Inc.*, 2010 U.S. Dist. LEXIS 31534 at *5
9    (N.D. Cal. Mar. 31, 2010) (citing *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th. Cir.
10   1996)). The complaint must be read and construed in the light most favorable to the nonmoving
11   party. *Cahill v. Liberty Mut. Ins. Co*., 80 F.3d 336, 337-338 (9th Cir. Cal. 1996) ("*Cahill*");
12   *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Any existing
13   ambiguities must be resolved in favor of the pleading. *Walling v. Beverly Enters*., 476 F.2d 393,
14   396 (9th Cir. 1973).  "[O]nce a claim has been stated adequately, it may be supported by
15   showing any set of facts consistent with the allegations in the complaint." *Twombly* at 563.
16   Further, dismissal is disfavored, and should be granted only in "extraordinary" cases. *United*
17   *States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

18         The Complaint here alleges that since at least November 2011, when Plaintiff first sent
19   Defendant cease and desist correspondence demanding that Defendant and its Vans Licensee
20   cease their infringing activities, Defendant was put on notice that the Infringing Footwear
21   infringed on Plaintiff's Trade Dress.  Complaint ¶ 29.  Since that time, Defendant has had
22   specific knowledge of the infringing activity and has failed to stop it. Complaint ¶¶ 28 – 24.
23   Defendant's failure to do so prompted this action. Thus, the allegations of the Complaint give
24   Defendant more than "fair notice" of Plaintiff's claims. *See, Twombly* at 555.

25         Defendant's only defense seems to be to point beyond U.S. borders, shrug its shoulders,
26   and claim innocence from its alleged lack of involvement.  But this is a defense of proof, not
27   pleading.  Defendant would rather skip the litigation process by lobbying for an even higher
28   pleading standard, one that requires Plaintiff to provide all the requisite evidence to support its

case without the benefit of discovery—evidence that is largely within Defendant's exclusive control.  Neither case law nor the Federal Rules support such a heightened pleading standard.

Thus, presuming all the factual allegations of the Complaint as true, and drawing all inferences in favor of Plaintiff, Plaintiff has sufficiently pled claims for relief for violations of the Lanham Act, trademark infringement, trademark dilution, and unfair competition by Defendant. However, if for any reason the Court believes additional facts and/or evidence should be pled, Plaintiff requests that the Plaintiff be granted leave to amend its Complaint.

B.     <u>Subject Matter Jurisdiction Exists Because The Lanham Act Provides a Broad Jurisdictional Grant and Its Extraterritorial Application is Appropriate Here</u>

The Lanham Act provides a broad jurisdictional grant.  *Steele* at 286.  The U.S. Congress has the power to prevent unfair trade practices in foreign commerce by citizens of the United States, even where much of the offending conduct is done outside the United States. *Id.* Indeed, the Lanham Act extends to acts of trademark infringement and unfair competition in a foreign country by a citizen and resident of the U.S., such as Defendant.  *New Name, Inc. v. Walt Disney Co.*, 2008 U.S. Dist. LEXIS 107204 (C.D. Cal. July 25, 2008).

The Ninth Circuit has articulated a three-part test to analyze when such extraterritorial application of the Lanham Act is appropriate: (1) there must be some effect, actual or intended, on American foreign commerce; (2) the effect must be sufficiently great to present a cognizable injury to plaintiffs under the federal statute; and (3) the interests of and links to American foreign commerce must be sufficiently strong in relation to those of other nations to justify an assertion of extraterritorial authority. *Timberlane Lumber Co. v. Bank of America, N.T. & S.A.*, 549 F.2d 597, 613 (9th Cir. Cal. 1976), *overruled by statute on other grounds* ("*Timberlane*").[1] Plaintiff's Complaint alleges facts sufficient to meet the *Timberlane* test.

///

---

[1]  Although *Timberlane* was overruled regarding extraterritorial application of the antitrust law, the three-part test remains valid for assessing the extraterritorial reach of the Lanham Act.  *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 427 (9th Cir. Nev. 1977); *Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 769 F.2d 1393, 1395 (9th Cir. Cal. 1985); *Aurora World, Inc. v. TY Inc.*, 719 F. Supp. 2d 1115, 1142 (C.D. Cal. 2009).

1         1.     **The Allegations of the Complaint Satisfy the *Timberlane* Test For Extraterritorial Application of the Lanham Act**

2

3         a.     <u>The Complained of Conduct Had An Effect on American Commerce Substantially Great Enough to Present a Cognizable Injury to Plaintiff, Satisfying the First Two Prongs of the *Timberlane* Te</u>st

4

5

6         The facts as alleged in the Complaint easily satisfy the first two prongs of the

7    *Timberlane* test.  Courts have repeatedly held that the sale of infringing goods, though wholly in

8    a foreign country, may have a sufficient effect on commerce to invoke Lanham Act jurisdiction.

9    *Ocean Garden, Inc. v. Marktrade Co*., 953 F.2d 500, 503 (9th Cir. Cal. 1991) ("*Ocean*

10   *Garden*"); *Reebok Int'l v. Marnatech Enters*., 970 F.2d 552, 554 (9th Cir. Cal. 1992)

11   ("*Reebok*"); *New Name , Inc. v. Walt Disney Co*., 2008 U.S. Dist. LEXIS 107204 (C.D. Cal.

12   July 25, 2008); *Aurora World, Inc. v. TY Inc.*, 719 F. Supp. 2d 1115, 1142 (C.D. Cal. 2009).  In

13   fact, even cases cited by Defendant to support its Motion held that the first two *Timberlane*

14   factors can be satisfied by wholly foreign commercial activities. *Star-Kist Foods, Inc. v. P.J.*

15   *Rhodes & Co*., 769 F.2d 1393, 1395 (9th Cir. Cal. 1985) ("*Star-Kist*"); *Zenger-Miller, Inc. v.*

16   *Training Team, GmbH*, 757 F. Supp. 1062, 1070 (N.D. Cal. 1991) ("*Zenger*").  Here, the

17   Complaint alleges sales both abroad and in the United States, and Plaintiff has also alleged facts

18   that support the reasonable conclusion that an appreciable number of sales of the Infringing

19   Footwear were made to American consumers.   Moreover, Defendant's ratification of its Vans

20   Licensee's conduct (*i.e*., failing to stop the continued sales of the Infringing Footwear, despite

21   having the power to do so), over Airwair's protest, constitutes conduct in the U.S., not in a

22   foreign country.  Thus, on this basis alone, the Complaint contains sufficient facts to meet the

23   first two prongs of the *Timberlane* test.

24        Furthermore, unless the Defendant (a U.S. corporation) concedes that it entered into a

25   naked license with the Vans Licensee (and therefore has abandoned its trademark), it is a

26   certainty that Defendant retained extensive control over the use of its trademark per the terms of

27   the license agreement. *See Star-Kist* at 1396 (one who licenses a trademark must retain control

28   over the quality of goods sold by the licensee under the trademark); *Barcamerica Int'l USA*

1 | *Trust v. Tyfield Imps., Inc.*, 289 F.3d 589, 595-596 (9th Cir. Cal. 2002) (while a trademark

2 | owner may grant a license to others regarding the use of its mark, uncontrolled or "naked"

3 | licensing may result in the trademark ceasing to function as a symbol of quality and controlled

4 | source); *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 512 n.1 (9th Cir. Cal. 2010)

5 | (naked licensing occurs when a licensor does not exercise adequate quality control over its

6 | licensee's use of a licensed trademark). That means that Defendant had the power to control the

7 | manufacturing, distribution, and sale of the Infringing Footwear.  That license agreement, which

8 | originated from the United States, touches upon the very core of the infringing activities –

9 | namely the design, manufacture, distribution, and sale of the Infringing Footwear – some of

10 | which occurred abroad and some of which occurred in the United States.  By its simplest terms,

11 | that affects U.S. commerce.

12 | Because Defendant had the right and obligation to control the quality of the goods sold

13 | by its Vans Licensee, Defendant necessarily approved of the manufacture and sale of the

14 | Infringing Footwear—and that approval came from the United States.  Indeed, Plaintiff alleges

15 | that Defendant did more than just passively allow its licensee to develop and sell Vans-branded

16 | products.  In this instance, Plaintiff alleges that Defendant actually ratified and further

17 | authorized the infringement of Plaintiff's Trade Dress by allowing the Vans Licensee to

18 | continue to sell the Infringing Footwear after receiving AirWair's cease and desist letter.

19 | Complaint ¶ 43.  Such ratification is tantamount to direct infringement emanating from the U.S.

20 | Moreover, the advertising and sale of the Infringing Footwear at the URL

21 | www.vansjapan.com, in and of itself implicates U.S. commerce.  Complaint ¶¶ 22, 23, 37.

22 | Even if the majority of these sales were in Japan, which we do not know at this early juncture in

23 | the litigation, the fact that this URL is owned by Vans in the United States supports the

24 | allegation that it controlled the sales of the Infringing Footwear at some level.  This, too,

25 | affected U.S. commerce.  At the very least, Plaintiff should be afforded the opportunity to

26 | conduct discovery to understand Vans's role with the website, its control over sales from it, and

27 | the profits and licensing it gained from sales through the website.

28 | ///

1    Moreover, the Infringing Footwear received press and other journalistic attention in the

2    U.S.  Complaint ¶¶ 38 – 41.  The articles and blog posts referenced in the Complaint, all

3    targeted to American audiences, have exposed many U.S.-based consumers to the Infringing

4    Footwear, amplifying the effect on U.S. commerce of the infringing conduct.   Complaint ¶ 42.

5    One of the articles encourages American consumers to find an online source or reseller to

6    purchase the Infringing Footwear, while another actually identifies where American purchasers

7    can buy the Infringing Footwear online.  Complaint Exhibits 22 and 23.  It is reasonable to

8    conclude that at least some readers of the various blogs and websites discussing and advertising

9    the Infringing Footwear heeded this advice and attempted to or were successful in purchasing

10   the Infringing Footwear in the U.S., just as Plaintiff was successful in so doing.  Complaint ¶

11   42.  Indeed, Plaintiff was able to procure in the U.S. two pairs of Infringing Footwear from two

12   different sources via the Internet in July 2012, months after Plaintiff's last demand that Vans

13   cease sales of the Infringing Footwear.  Complaint ¶ 42.  A reasonable inference can be made

14   that based on Plaintiff's own purchases of the Infringing Footwear, and the journalistic attention

15   the Infringing Footwear received in the U.S., a substantial amount of sales of Infringing

16   Footwear were made to American purchasers.

17   Moreover, the blogs and articles highlighted the Infringing Footwear's obvious use of

18   Plaintiff's Trade Dress, providing an example of how Plaintiff has lost exclusive control over

19   the presentation and distribution of its Trade Dress in the U.S. due to Defendant's

20   misappropriation of Plaintiff's Trade Dress, a cognizable injury under the Lanham Act.

21   Complaint ¶¶ 38 – 40; *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co*., 240 F.3d 832, 841 (9th

22   Cir. Cal. 2001) (threatened loss of prospective customers or goodwill is a cognizable injury

23   under the Lanham Act); *Neighborhood Assistance Corp. of Am. v. First One Lending Corp*.,

24   2012 U.S. Dist. LEXIS 67950 (C.D. Cal. May 15, 2012) (the loss of the ability to control one's

25   own reputation is a cognizable harm under the Lanham Act); *Seed Servs., Inc. v. Winsor Grain,*

26   *Inc.*, 868 F. Supp. 2d 998, 1005 (E.D. Cal. 2012) (in trademark cases, courts have found

27   irreparable harm in the loss of control of a business's reputation).

28   ///

1   Defendant, by contrast, argues that there has been no impact on Plaintiff's "American

2   foreign commerce as a result of the sales of the" Infringing Footwear and thus there is "zero risk

3   of consumer confusion in the U.S."  Motion to Dismiss 1:23-24; 2:2-3.  Such bare statements

4   are completely unsubstantiated. Defendant has absolutely no way of knowing either of the

5   foregoing factual statements, especially at this early stage in the litigation.  Instead, these

6   statements exemplify Defendant's wish to skip the discovery process and move straight to

7   dismissal.  That is inappropriate.  First, Plaintiff *has* alleged facts sufficient to show that

8   Defendant's infringing activities have had an impact on Plaintiff's American commerce.

9   Complaint ¶ 35 – 44.  Those allegations must be taken as true, and all related inferences must be

10  drawn in Plaintiff's favor.  Second, Plaintiff need not show actual injury to present a cognizable

11  injury under the Lanham Act, as likelihood of confusion is enough.  *New Name, Inc. v. Walt*

12  *Disney Co*., 2008 U.S. Dist. LEXIS 107204 (C.D. Cal. July 25, 2008); *also see* 15 U.S.C. §

13  1125(a)(1).  At this early stage, it is simply premature to expect Plaintiff to plead anything more

14  than likelihood of confusion.  The Complaint  does so.  Complaint ¶¶ 26, 47 – 50, 53, 54.

15  Indeed, as long as there is monetary or equitable injury recognized by the Lanham Act to

16  a plaintiff in the U.S., there is a cognizable claim under the Lanham Act.  *Mattel, Inc. v. MCA*

17  *Records, Inc*., 28 F. Supp. 2d 1120, 1130 (C.D. Cal. 1998) ("*Mattel*") (internal citation omitted);

18  *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co*., 240 F.3d 832, 841 (9th Cir. Cal. 2001)

19  (threatened loss of prospective customers or goodwill is a cognizable injury under the Lanham

20  Act).  Plaintiff has alleged in its Complaint that it has suffered monetary injury in the United

21  States, and the referenced blogs and articles demonstrate the equitable injury to Plaintiff from

22  Defendant's conduct.  Complaint ¶¶ 28-40, 43, 45, 51, 55, 59, 64, 75, *passim*.  Therefore,

23  applying the standard for reviewing motions to dismiss, the Complaint sets forth facts sufficient

24  to show that the effect of Defendant's activities caused cognizable injury to Plaintiff.  The

25  Lanham Act therefore applies extraterritorially here, and Plaintiff should be afforded the

26  opportunity to conduct discovery to determine the extent of its injury in the U.S.

27  ///

28  ///

1
2
3
4

      b.    <u>The Interests of and Links to American Commerce Are Sufficiently Strong in Relation to Those of Other Nations to Justify Extraterritorial Application of the Lanham Act Under the Third *Timberlane* Factor</u>

5
6
7
8
9
10
11
12

The third element of the *Timberlane* test involves the balancing of seven relevant factors: (1) the degree of conflict with foreign law or policy; (2) the nationality or allegiance of the parties and the locations or principal places of business of corporations; (3) the extent to which enforcement by either state can be expected to achieve compliance; (4) the relative significance of effects on the United States as compared with those elsewhere; (5) the extent to which there is explicit purpose to harm or affect American commerce; (6) the foreseeability of such effect; and (7) the relative importance to the violations charged of conduct within the United States as compared with conduct abroad.  *Reebok* at 555.

13

      i)   <u>Degree of Conflict with Foreign Law or Policy</u>

14
15
16
17
18

The existence of a conflict with a foreign trademark registration weighs against extraterritorial application of the Lanham Act.  *Star-Kist* at 1396; *Steele* at 285, 289.  The Ninth Circuit has noted, however, that if "there are no pending proceedings" abroad, then it would not "be an affront to the foreign" country's sovereignty or law.  *Mattel* at 1130 (quoting *Ocean Garden* at 503).

19
20
21
22
23
24

Here, there are no pending proceedings relating to this dispute or to registrations of the Trade Dress at issue in any other jurisdiction or foreign country.  Thus, it would not be an affront to any foreign country's sovereignty or law for this Court to exercise jurisdiction in this case.  *See, Ocean Garden* at 503-504; *see also*, *Reebok* at 555-556; *cf. Star-Kist* at 1395 (refusing extraterritorial application of Lanham Act because of pending foreign litigation over the trademarks at issue between the parties).  This factor favors Plaintiff.

25
26

      ii)  <u>The Nationality or Allegiance of the Parties and the Locations or Principal Places of Business of Corporations</u>

27
28

Plaintiff, owner of the Trade Dress, is an English company with substantial contacts with the U.S., like the Plaintiff in *Reebok*.  *See, Reebok* at 556.  Plaintiff's U.S. marketing and

sales are conducted through Plaintiff's wholly-owned subsidiary, Dr. Martens Airwair, USA, which is located in the U.S. and a number of Plaintiff's relevant officers and employees are in the U.S. for business with some regularity and may, depending on timing, be available for deposition in the U.S.[2]  Defendant is a Delaware corporation, with headquarters in California, which is also presumably where the business records of the Defendant are kept.  Complaint ¶ 2.  This is, once again, like the facts of *Reebok*. S*ee Reebok* at 556-557.  Thus, all of Defendant's witnesses (and presumably its documents) are located in the U.S.  The journalists and bloggers who wrote about the Infringing Footwear are also in the U.S.  Thus, while admittedly some of the relevant witnesses and documents are located outside the United States—such as the Vans Licensee's witnesses, some of the relevant Asian retailers, and some of Plaintiff's personnel—the majority of relevant witnesses are in the U.S.  Thus, the second factor also favors Plaintiff.

        iii) <u>The Extent To Which Enforcement by Either State Can Be Expected To Achieve Compliance</u>

      Although it is possible that other foreign countries could enforce their own or U.S. trademark laws, the U.S. has the superior ability to perform these functions in this case.  *Reebok* at 557.  Defendant entered into a license agreement governed by U.S. law.  Complaint ¶ 18.  Since Defendant is a U.S. company, the Vans Licensee necessarily had to enter into its trademark license with Defendant in the U.S.  Complaint ¶¶ 2, 14.  Defendant maintained the right and obligation to control the quality of products designed, manufactured, marketed, or sold by the Vans Licensee, including, without limitation, the right and/or obligation to review and approve such products prior to their sale.  Complaint ¶ 14.  The Defendant, its principal place of business, and the vast majority of its assets are located in the United States.  Complaint ¶ 2; *see, Reebok* at 557.  Any injunction or judgment in this action would be effective against Defendant because it is a U.S. corporation that orchestrated its licensee's infringing activities from the

---

[2] Because Plaintiff is the registered owner of the Trade Dress at issue in this action, it was named as the only Plaintiff in the Complaint.  Plaintiff did not believe it necessary to add Plaintiff's U.S. subsidiary as a party because it is wholly-owned and controlled by Plaintiff.  However, if discovery shows that Dr. Martens Airwair USA should be added as a named plaintiff in this action, Plaintiff will seek leave to amend its Complaint accordingly.

United States.  *Ocean Garden* at 504; *Reebok* at 1520.  By contrast, it is far less likely that a foreign country could enjoin Defendant or order other appropriate remedies against Defendant with the same efficacy. Thus, this factor supports the exercise of extraterritorial jurisdiction.

iv)  <u>The Relative Significance of Effects On The United States as Compared With Those Elsewhere</u>

Plaintiff is the manufacturer of the well-known Dr. Martens® footwear, and the owner of the trademarks and Trade Dress related thereto.  Complaint ¶¶ 6, 8.   Plaintiff has been manufacturing and marketing Dr. Martens® footwear since 1960, selling its footwear in the United States since at least 1984 through its wholly-owned, U.S.-based subsidiary, and has extensive sales and connections with the U.S. and American consumers. Complaint ¶¶ 6, 7, 12. Defendants' activities were orchestrated from the United States.  Moreover, Plaintiff and Defendant are direct competitors in the U.S.  Acts engaged and orchestrated by the Defendant in the United States that affect Plaintiff's Trade Dress, especially given that at least some of those sales were alleged to have been made to American consumers, affect American commerce.  The loss of control over its registered Trade Dress in the U.S. exemplified by the American press over the Infringing Footwear (and any resulting purchases by Americans) also occurred in the U.S. Therefore, the injuries alleged affect Plaintiff's sales and Trade Dress in the United States. This factor weighs in favor of the Court's exercise of extraterritorial jurisdiction.

v)  <u>The Extent To Which There Is Explicit Purpose To Harm or Affect American Commerce and The Foreseeability Of Such Effect</u>

Factors five and six of the *Timberlane* test are examined herein together.  Defendant unpersuasively argues that because the Infringing Footwear was primarily marketed to "savvy Asian consumers," this indicates that there was no intent to deceive U.S. consumers.  Motion to Dismiss 1:27 – 2:3.  First, there are no facts that indicate the potential consumers of the Infringing Footwear were "savvy" or otherwise and there is no indication of a lack of intent to deceive U.S. customers.  Defendant advertised and sold the Infringing Footwear at the URL www.vansjapan.com, a URL it owns in the U.S.  Complaint ¶¶ 22, 23.   Proceeds and licensing

14

royalties from sales of the Infringing Footwear were realized by Defendant in the U.S. Complaint ¶ 36.   The Infringing Footwear has also received press and other journalistic attention in the U.S., which exposed many U.S.-based consumers to the Infringing Footwear, amplifying the effect of the alleged infringing conduct on U.S. commerce.  Complaint ¶ 42.  At least some readers of the various blogs and Internet website discussing and advertising the Infringing Footwear attempted to or were successful in purchasing the Infringing Footwear in the United States, just as Plaintiff was successful in doing.  Complaint ¶ 42.

Thus, even if Defendant did not *intend* for its Infringing Footwear to travel to the United States, in this 21st Century of ubiquitous and regular global Internet commerce, it was certainly foreseeable that the Infringing Footwear would travel to the U.S.  *See, Reebok* at 557.  The fifth and sixth factors of the *Timberlane* test provide further support for exterritorial jurisdiction.

> vi)  <u>The Relative Importance To The Violations Charged Of Conduct Within The U.S. As Compared With Conduct Abroad</u>

The licensing of the right to manufacture and sell the Infringing Footwear emanated from Defendant in the U.S.  *See*, Complaint ¶ 2.  Because Defendant had the right and obligation to control the quality of the goods sold by its Vans Licensee, Defendant necessarily approved of the manufacture and sale of the Infringing Footwear from the U.S. Complaint ¶ 14. Additionally, Defendant ratified and further authorized the infringement of Plaintiff's Trade Dress by allowing the Vans Licensee to continue to sell the Infringing Footwear, despite actual knowledge of Plaintiff's rights, and in contravention of Plaintiff's explicit demands that sales of the Infringing Footwear cease.  Complaint ¶ 43.  Such ratification is tantamount to directing infringing activities from the U.S.  Further, it is clear that at least some sales of the Infringing Footwear occurred in the U.S.  Complaint ¶ 42.  Thus, Plaintiff's claims are based both on actions that occurred in the United States, and in other countries.

In such situations, though, "it is difficult to say that actions in either nation were manifestly more significant to [Plaintiff's] claim than the actions in the other[,]…it is irrelevant: the vast majority of the other factors of the *Timberlane* test clearly weigh in favor of the

1    exercise of extraterritorial jurisdiction and are more than sufficient to outweigh any possible

2    counterbalancing factors which might be found…." *Reebok* at 557.  Therefore, the third

3    *Timberlane* prong supports this Court's exercise of jurisdiction in this matter, and Plaintiff has

4    stated a claim for relief in the United States under the Lanham Act.[3]

5                    c.    Defendant's Own Cited Precedent Establishes That Airwair's
6                          Complaint Satisfies the *Timberlane* Test

7            Though Defendant contends that Plaintiff's Complaint fails to set forth a cognizable

8    effect on U.S. commerce, the case law it cites does not support that contention.  Quite the

9    contrary, each of the cases cited by Defendant lacks facts as broad as here, underscoring

10   precisely why the allegations in Plaintiff's Complaint do meet the *Timberlane* test.  For

11   example, Defendant cites to *Int'l Café v. Hard Rock Cafe Int'l*, 252 F.3d 1274, 1278-1279 (11th

12   Cir. Fla. 2001) ("*Int'l Café*") to support its overly-broad proposition that "royalties or revenues

13   received by a defendant in the United States do not warrant application of the Lanham Act to

14   foreign activities."  Motion to Dismiss 6:23-26.  *Int'l Cafe* is inapposite because its facts bear no

15   resemblance to this case.

16           *Int'l Café* involved a foreign plaintiff doing absolutely <u>no</u> business in the U.S.  *Int'l Cafe*

17   at 1279.  In fact, the plaintiff there was not even using the trademark he was trying to enforce in

18   the U.S.  *Id.*  Nor was he even competing with the defendant in the U.S.  *Id.*  Instead, he merely

19   asserted that the defendant there, a U.S. Company, was infringing his rights to his trademark

20   granted by a foreign country in that foreign country.  *Id.*  Further, the <u>only</u> effect on U.S.

21   commerce alleged by the plaintiff in that case was that the defendant had received royalties,

22   which the Eleventh Circuit determined could not, by itself, establish the "substantial effects"

23   required under the *Timberlane* test.  *Int'l Cafe* at 1278-1279.  Moreover, a key fact the *Int'l*

24

25   [3] Defendant argues that Plaintiff's two common law trade dress infringement and unfair
26   competition claims are rooted directly to Plaintiff's Lanham Act claims, and therefore those
     claims fail along with Plaintiff's Lanham Act claims.  Motion to Dismiss 11:5-7.  Because
27   Plaintiff has shown that its Complaint alleges sufficient facts to support the exercise of
     extraterritorial application of the Lanham Act, Plaintiff's common law claims (the Third and
28   Seventh Claims for Relief) survive as well.  Thus, Defendant's Motion to Dismiss should be
     denied as to those claims as well.

1    *Café* court considered was that there were pending proceedings in a foreign country related to

2    the trademark at issue that could conflict with an American court's ruling on the case.  Thus, the

3    sole basis for U.S. jurisdiction—the royalties earned by the defendant in the U.S. did not

4    support extraterritorial application of the Lanham Act.  *Int'l Cafe* at 1279.

5         This case is completely different.  Although Defendant received proceeds and licensing

6    royalties in the U.S. from sales of the Infringing Footwear (Complaint ¶¶ 14, 36), that is not the

7    only basis for subject matter jurisdiction alleged in Plaintiff's Complaint.  Unlike the plaintiff in

8    *Int'l Cafe,* the Complaint here alleges that Plaintiff, though a UK company, does use its Trade

9    Dress extensively in the U.S. (through its US-based subsidiary and licensee) and does compete

10   directly with Defendant in the U.S.  Complaint ¶ 7.   Plaintiff has also alleged significant effect

11   on U.S. commerce in its Complaint, such as Defendant's ownership and control over the

12   www.vansjapan.com website, through which Infringing Footwear was sold, as well as the

13   allegations of appreciable sales made to unwitting American customers.  Further, there are no

14   pending applications, proceedings, or lawsuits between the parties in any foreign country that

15   could conflict with this Court's decisions in this case, as there were in *Int'l Café.*

16        Defendant also relies on *Zenger*, an equally inapposite case.  Defendant argues that

17   *Zenger* has "very similar facts" to the case at hand.  Motion to Dismiss 8:14.  Nothing could be

18   further from the truth.

19        In *Zenger,* the defendant was a German corporation that conducted <u>no</u> business in the

20   U.S., such that the Court found that the effect on U.S. commerce would be minimal.  *Zenger* at

21   1070 - 1071.  Also, it was undisputed in *Zenger* that <u>all</u> of the alleged infringing activities

22   occurred in Germany, and that none occurred in the United States.  *Zenger* at 1071.  Notably,

23   despite these facts, the *Zenger* court found based on *Star-Kist* at 1395 (also cited by Defendant)

24   that the first two *Timberlane* prongs were still satisfied because the complained of acts could

25   have plausibly caused a significant effect on U.S. commerce that could harm the plaintiff.

26   *Zenger* at 1070.  However, based solely on the third *Timberlane* factor, the Court refused

27   extraterritorial application of the Lanham Act.  As explained in Section V.B.1.b.(i) – (vi), there

28   are no such similar concerns here, as the facts alleged in the Complaint pose no similar conflicts

with foreign country's sovereignty or law, and the third *Timberlane* factor is also satisfied by the facts alleged here.

In stark contrast, here, Defendant Vans is a United States corporation whose principal place of business is in California.  Complaint ¶ 2.  Further, unlike in *Zenger*, this case does not involve wholly foreign commerce.   Plaintiff has pled facts to show that <u>not</u> all of the infringing activities occurred in another country.  Rather, Plaintiff alleges that Defendant, as the trademark owner and licensor, among other things, directed the manufacture and sale of the Infringing Footwear from the U.S.  *E.g.*, Complaint ¶¶ 16, 43; *see, Mattel* at 1130 (holding that the defendants participated in activities resulting in sales of a pop song in the U.S. that allegedly infringed a trademark, and thus subject matter jurisdiction was appropriate).

Defendant further ratified those infringing sales by allowing its licensee to continue selling the Infringing Footwear after learning of Plaintiff's Trade Dress rights and Plaintiff's explicit demand that such sales cease.  And based on the American press the Infringing Footwear received and the purchases the Plaintiff was able to make from the U.S., it is reasonable to allege that an appreciable number of such sales occurred, and that Plaintiff lost some control over its mark, in the U.S.  Defendant also sold the Infringing Footwear through its www.vansjapan.com website, which it owns in the U.S.  The facts of *Zenger* are therefore in no way similar to the facts here, and its holding does not apply.

Defendant also erroneously claims support from *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601 (9th Cir. 2010), a case very similar to *Zenger*.  As in *Zenger*, *Love* involved <u>undisputed</u> facts that the defendants were foreign entities with no American ties whatsoever and whose complained-of activities took place <u>entirely</u> outside the U.S.  *Love* at 613.  Once again, the facts here are readily distinguishable, and, for the sake of brevity, do not bear repeating.  Thus, like *Zenger*, *Love* does not support Defendant's position.

Defendant also relies on *Star-Kist* for the proposition that lost revenues incurred by a foreign plaintiff in other countries are irrelevant to the test.  Motion to Dismiss 6:26-27; 7:1.  This conclusion mischaracterizes the holding in *Star-Kist*, and the facts and holding of *Star-Kist* are readily distinguishable.  *Star-Kist* involved a trademark dispute regarding goods *wholly* and

entirely sold in the Philippines.  *Star-Kist* at 1394.  Despite this fact, the court in *Star-Kist* held that the first two *Timberlane* factors were met because wholly foreign commerce could have had a sufficient effect on U.S. commerce to harm the plaintiff.  *Star-Kist* at 1395.  Here, because the allegations establish <u>not</u> just wholly foreign commerce—without even considering all the other effects on U.S. commerce delineated in the Complaint—under *Star-Kist*, the first two *Timberlane* factors are unquestionably met.

Defendant's Motion also attempts, but fails, to distinguish both *Steele* and *Reebok*.  Motion to Dismiss 9:20 – 10:14.  Both those cases hold that a U.S.-based defendant who controls or directs foreign commerce that has a cognizable effect on U.S. commerce and harms the plaintiff may be held liable under the Lanham Act. *Steele* at 285 – 286; *Reebok* at 554 – 557.  Defendant argues that the cases are inapposite because they involved counterfeit goods sold in Mexico which, it was understood, would make their way to the neighboring United States.  Defendant  argues that because the Infringing Footwear was clearly branded with the VANS trademark, and sold in Asia, this case falls outside of the holdings of *Steele* and *Reebok*.  Defendant's arguments have no merit.

First, *Steele* and *Reebok* date back several decades (1952 and 1992, respectively), where neighboring borders were important for the sale of counterfeit goods before the advent of Internet commerce.  As the Complaint alleges, with the global economy growing each year and the strong trade ties between Asia and the United States, travel between Asian countries and the U.S. is commonplace. Moreover, with Internet commerce growing so quickly, it is easily foreseeable that an appreciable number of the Infringing Footwear would make their way to American shores, especially given that American journalists and bloggers—writing to American audiences—featured articles on the Infringing Footwear identifying Internet vendors who were selling the Infringing Footwear to the U.S.

Further, to claim, as Vans does, that the Infringing Footwear was clearly branded with the VANS mark only tells half the story.  Even the American journalists covering the Infringing Footwear named them an "homage to Dr. Marten's classic style" and "obviously modeled after" or "inspired by" Dr. Martens® footwear.  Complaint ¶¶ 38 – 40.  Thus, to claim that there were

not elements of copying of Plaintiff's Trade Dress that could confuse American consumers is erroneous and disingenuous.  Rather, as alleged in the Complaint, like the defendants in *Steele* and *Reebok*, Defendant ratified activities from the United States that involved foreign commerce but that also had a substantial effect on U.S. commerce.  Those effects caused harm to a fellow competitor in the U.S. with trade dress rights registered in the United States.

In sum, under the cases cited by Defendant and construing the Complaint in the light most favorable to Plaintiff, there can be little doubt that the allegations in the Complaint satisfy the first two *Timberlane* factors.  *Cahill* at 337-338; *Reebok* at 555.

C.    The Complaint Contains Facts Sufficient to Allege Defendant's Violation of California State Law Claims

Defendant argues in its Motion to Dismiss that Plaintiff's state law claims for relief (Fifth and Sixth Claims for Relief) should be dismissed because California has no interest in applying its laws abroad.  Motion to Dismiss 11:8-9.  Defendant further asserts that the Complaint fails to adequately plead all of the elements of its claim under California Business & Professions Code Section 17200, *et seq.*  Neither contention has merit.  Plaintiff's Complaint does not seek to have this Court apply its laws abroad.  Further, the Complaint sufficiently alleges all elements required to state a claim for relief under California Business & Professions Code Section 17200, *et seq.*

1.    **The Complaint Pleads Conduct by Defendant that Occurred Within California and Sufficiently Alleges Defendant's Violation of California Business & Professions Code Section 17200, *et seq*.**

The Complaint alleges a claim for relief for Defendant's violation of California Business & Professions Code Section 17200, *et seq*. Complaint, Sixth Claim for Relief.  While Section 17200 was not designed or intended to regulate claims of nonresidents arising from conduct occurring entirely outside of California, *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222 (Cal. App. 4th Dist. 1999) (emphasis added), the Complaint alleges Vans is located in California and that the conduct at issue, occurred, in part, in California.  Plaintiff alleges that it has widely advertised and marketed Plaintiff's products in California, creating consumer

demand for such products in California.  Complaint ¶ 72.  Moreover, Defendant entered into a license agreement with its Vans Licensee in California.  Complaint ¶¶ 2, 13.  Vans exercised that control over the Vans Licensee under that license from California.  Complaint ¶ 14.

Additionally, Vans sold Infringing Footwear through its www.vansjapan.com website, which is registered to Defendant at its California address: Domain Manager, Vans, Inc., 6550 Katella Avenue, Cypress California 90630.  Complaint ¶ 22.  Thus, Plaintiff has alleged facts that demonstrate that the conduct at issue in this case did not occur "entirely outside of California."  *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222 (Cal. App. 4th Dist. 1999).  The Complaint therefore sets forth facts sufficient for Plaintiff to bring a claim for relief under California Business & Professions Code Section 17200, *et seq.*

Defendant further argues that Plaintiff does not have standing to bring a claim under Section 17200 because it has not alleged that it "has suffered injury in fact and has lost money or property as a result of the alleged unfair practices."  Motion to Dismiss 12:21-22.  Not so.

Plaintiff alleges that Defendant used trade dress that is confusingly similar to Plaintiff's registered Trade Dress and has caused dilution of the distinctive quality of Plaintiff's footwear products and its Trade Dress and the goodwill represented thereby.  Complaint ¶ 67.  As a result of such actions, Plaintiff alleges that Defendant's actions have diluted, blurred, and tarnished the strong and positive associations represented by Plaintiff's Trade Dress by lessening the capacity of Plaintiff's marks to identify and distinguish Plaintiff's products.  Complaint ¶ 69.  Plaintiff further alleges that it has been damaged by Defendant's acts and has incurred damages of, among other things, the diminution in the value and goodwill associated with its Dr. Martens® Trade Dress, lost sales, and Defendant's profits attributable to the infringement.  Complaint ¶ 70.  The press coverage of the Infringing Footwear, which all note Defendant's similarity to Plaintiff's Trade Dress, also illustrates the loss of control over the presentation of its Trade Dress suffered by Plaintiff, another injury recognized by the Lanham Act.

Moreover, to the extent that Plaintiff's state unfair competition claims must be "tethered" to a specific constitutional, statutory, or regulatory provision, Plaintiff has demonstrated herein that its unfair competition claim is securely "tethered" to its valid Lanham

1    Act claims. *Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917, 940 (Cal. App. 4th Dist.

2    2003). Plaintiff has more than met the standing requirement, and Defendant's Motion to

3    Dismiss Plaintiff's Sixth Claim for Relief should be denied.

4                    **2.      The Complaint Sufficiently Alleges Defendant's Violation of**
5                            **California Business & Professions Code Sections 14202 and 14247**

6            Defendant correctly points out that Plaintiff inadvertently cited to the incorrect

7    California statute in its claim for violation of California's state dilution laws (the Fifth Claim for

8    Relief).  Plaintiff inadvertently referred to the now repealed statute, California Business and

9    Professions Code § 14330, when it intended to cite to California Business and Professions Code

10   §§ 14202 and 14247. However, a claim will not be dismissed for failure to state a claim simply

11   because the plaintiff misnames the claim. *E.g., Official Comm. of Unsecured Creditors of*

12   *Schlotzsky's, Inc. v. Grant Thornton, L.L.P. (In re Schlotzsky's, Inc.)*, 351 B.R. 430, 439 (Bankr.

13   W.D. Tex. 2006).

14           Rather, the Federal Rules only require that the plaintiff provide a short and plain

15   statement of the claim giving the defendant fair notice of what the plaintiff's claim is and the

16   grounds upon which it rests. Fed. R. Civ. Proc. 8(a)(2); *Twombly* at 555.  There can be no doubt

17   here that Defendant understood the statute to which Plaintiff intended to refer and was given fair

18   notice of the Plaintiff's state dilution claims against Defendant.  Motion to Dismiss 12:14-17.

19   Indeed, the language of the new statute is identical to the statute cited by Plaintiff.

20           In support of its request that the Court dismiss Plaintiff's Fifth Claim for Relief,

21   Defendant simply states that California has no interest in applying its trademark laws for the

22   same reasons as set forth in its argument against Plaintiff's Sixth Claim for Relief.  Motion to

23   Dismiss 12:16-17.  As discussed above, Plaintiff has alleged facts that show the conduct at issue

24   occurred in California and, therefore the Complaint sets forth facts sufficient to plead a claim

25   for relief under California Business & Professions Code §§ 14202 and 14247.  The Vans's

26   Motion to Dismiss Plaintiff's Fifth Claim for Relief should be denied.

27   ///

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

D.    The Complaint Alleges Facts Sufficient to Hold Defendant Vans Liable for the
      Actions of its Vans Licensee

Relying on *L.A. Gear v. E.S. Originals*, 859 F. Supp. 1294 (C.D. Cal. 1994 ("*L.A.
Gear*"), Defendant asserts that Plaintiff has not alleged facts sufficient to hold Defendant liable
for the actions of its Vans Licensee.  Motion to Dismiss 13:18-25.  In the *L.A. Gear* case, the
Court held that a licensor can be held vicariously liable for the infringing acts of its licensee if it
appears that, through the licensing agreement, the licensor exercised "sufficient control" over
the licensee.  *L.A. Gear* at  1299 (*citing Drexel v. Union Prescription Ctrs., Inc*., 582 F.2d 781,
784 (3d Cir. 1978)).

First, both the *L.A. Gear* and *Drexel* cases relied upon by Defendant were appeals from
motions for summary judgment.  As much as it appears Defendant would like it to be, this is not
a motion for summary judgment. This case has only just begun and Plaintiff has not yet begun
its discovery.  Plaintiff expects that once its discovery commences, it will uncover additional
data and information relating to the extent of Defendant's involvement in the infringing
activities.  However, at this point, that information is solely in the possession of Defendant.  At
this early point in the litigation, Plaintiff is not required to prove that Defendant is liable for
actions of its Vans Licensee.  Rather, on a motion to dismiss such as the one at issue herein, the
Court must accept as true all material allegations in the complaint, as well as all reasonable
inferences to be drawn from them. *Usher* at 561; *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir.
1998); *Miller v. Facebook, Inc*., 2010 U.S. Dist. LEXIS 31534 at *5 (N.D. Cal. Mar. 31, 2010)
(citing *Cahill* at 337-338). Based on the allegations in Plaintiff's Complaint, it is reasonable to
infer at this pleading stage that Defendant had and exercised sufficient control over its Vans
Licensee to render it liable for its licensee's actions.  *See*, *id*.

Second, it is well-settled that while a trademark owner may grant a license to others
regarding the use of its mark, uncontrolled or "naked" licensing may result in the trademark
ceasing to function as a symbol of quality and controlled source.  *Barcamerica Int'l USA Trust
v. Tyfield Imps., Inc*., 289 F.3d 589, 595-596 (9th Cir. Cal. 2002).  Naked licensing occurs when
a licensor does not exercise adequate quality control over its licensee's use of a licensed

trademark.  *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 512 n.1 (9th Cir. Cal. 2010).  Where the licensor fails to exercise adequate quality control over the licensee, a court may find that the trademark owner has abandoned the trademark.  *Barcamerica Int'l USA Trust v. Tyfield Imps., Inc*., 289 F.3d 589, 596 (9th Cir. Cal. 2002).  It is undisputed that a license agreement exists between Defendant and its Vans Licensee.  Complaint ¶ 18; Motion to Dismiss 13:21-22.  In order to constitute a valid trademark license, Defendant necessarily must have had "sufficient control" over the Vans Licensee.  *See*, *L.A. Gear* at 1299 (*citing Drexel v. Union Prescription Ctrs., Inc*., 582 F.2d 781, 784 (3d Cir. 1978)).  The Complaint also sets forth facts illustrating how Vans exercised that control.  Therefore, the Complaint sets forth facts sufficient at this early pleading stage to hold Defendant liable for the actions of its Vans Licensee.  If the Court concludes, however, that the Complaint as pled is deficient, Airwair requests it be granted leave to amend, as it has additional facts, learned after the filing of the Complaint, that bolster its allegations.

## V.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be denied.  However, if the Court believes additional facts and/or evidence should be pled, or that Dr. Martens Airwair USA should be added as a named plaintiff in this action, Plaintiff requests that it be granted leave to amend its Complaint accordingly.

HIARING + SMITH, LLP

Dated: February 8, 2013          By:     /Vijay K. Toke/
                                         Vijay K. Toke
                                         *vijay@hiaringsmith.com*
                                         101 Lucas Valley Road, Suite 300
                                         San Rafael, California 94903
                                         Telephone:  (415) 457-2040
                                         Facsimile:  (415) 457-2822

                                         *Attorneys for Plaintiff*
                                         *AIRWAIR INTERNATIONAL LTD.*