Robert N. Phillips (SBN 120970)
*robphillips@reedsmith.com*
Tiffany M. Bui (SBN 281339)
*tbui@reedsmith.com*
REED SMITH LLP
101 Second Street
Suite 1800
San Francisco, CA 94105-3659
Telephone: (415) 543-8700
Facsimile: (415) 391-8269

Attorneys for Defendant
VANS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AIRWAIR INTERNATIONAL LTD, a United Kingdom corporation,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>VANS, INC., a Delaware corporation; DOES 1-100, inclusive,<br><br>　　　　　Defendants. | No.: C 12-5060 EJD<br><br>**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:  March 29, 2013<br>Time:  9:00 a.m.<br>Place: Courtroom No. 4<br><br>[*Filed concurrently with Declaration of Robert N. Phillips and Request for Judicial Notice*]<br><br>Hon. Edward J. Davila |

**Table of Contents**

Page

I. INTRODUCTION ..................................................................................................................1

II. LEGAL ARGUMENT............................................................................................................2

    A. Airwair's Complaint Fails To Allege Sufficient Facts To Support Subject Matter Jurisdiction. ................................................................................2

    B. Airwair's Complaint Fails To Allege Facts Demonstrating That It Suffered Monetary Harm In The United States.................................................4

    C. Airwair's Complaint Fails To Make A Plausible Showing Of Likelihood Of Confusion In The United States.................................................7

    D. The U.S. Courts Do Not Have An Interest In Blocking Lawful Commerce in Asia. ....................................................................................................9

    E. Airwair's State Law Claims Likewise Fail.........................................................11

    F. Vans' Right to Control The Quality Of The Licensed Goods Is A Red Herring............................................................................................................12

    G. Vans' Motion to Dismiss Should Be Granted Without Leave To Amend Because Amendment Would Be Futile...................................................12

III. CONCLUSION....................................................................................................................14

# Table of Authorities

**Page**

**Cases**

*Architectural Mailboxes, LLC v. Epoch Design, LLC,*
   2011 WL 1630809 (S.D. Cal. Apr. 28, 2011) (dismissing ...................................................... 9, 10

*Aurora World, Inc. v. Ty Inc.,*
   719 F. Supp. 2d 1115 (C.D. Cal. 2009) ............................................................................... 3, 4, 5

*Carrico v. City & Cnty. Of San Francisco,*
   656 F.3d 1002 (9th Cir. 2011) ..................................................................................................... 15

*Churchill Village, L.L.C. v. GE,*
   169 F. Supp. 2d 1119 (N.D. Cal. 2000) ................................................................................. 14, 15

*Gushi Brothers Co. v. Bank of Guam,*
   28 F.3d 1535 n.13 (9th Cir. 1994) ................................................................................................. 3

*Hensley Mfg. v. Propride Inc.,*
   579 F.3d 603 (6th Cir. 2009) .................................................................................................. 9, 10

*Herman Family Revocable Trust v. Teddy Bear,*
   254 F.3d 802 (9th Cir. 2001) ....................................................................................................... 14

*ITC Ltd. v. Punchgini, Inc.,*
   482 F.3d 135 (2d Cir. 2007) ......................................................................................................... 12

*Krainski v. State of Nev. Ex rel. Bd. Of Regents of Nev. Sys. of Higher Ed.,*
   616 F.3d 963 (9th Cir. 2010) ....................................................................................................... 16

*L.A. Gear, Inc. v. Thom McAn Shoe Co.,*
   988 F.2d 1117 (Fed. Cir. 1993) ............................................................................................. 10, 11

*Love v. Associated Newspapers, Ltd,,*
   611 F.3d 601 (9th Cir. 2010) ................................................................................................ 4, 5, 6

*Mattel v. MCA Records, Inc.,*
   28 F. Supp. 2d 1120 (C.D. Cal. 1998) ...................................................................................... 7, 8

*Miller v. Glenn Miller Prods., Inc.,*
   454 F.3d 975 (9th Cir. 2006) .......................................................................................................... 8

*Neighborhood Assistance Corp. of Am. v. First One Lending Corp.,,*
   2012 U.S. Dist. LEXIS 67950 (C.D. Cal. May 15, 2012) .............................................................. 7

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.,*
   638 F.3d 1137 (9th Cir. 2011) ....................................................................................................... 9

*New Name, Inc. v. Walt Disney Co.,,*
   2008 U.S. Dist. LEXIS 107204 (C.D. Cal. 2008) ............................................................. 6, 8, 15

*Ocean Garden, Inc. v. Marktrade Co.,*
   953 F.2d 500 (9th Cir. 1992) ..................................................................................................... 5, 6

*Person's Co. v. Christman,*
   900 F.2d 1565 (Fed. Cir. 1990) .................................................................................................. 11

*Reebok Int'l v. Marnatech Enters.,*
   970 F.2d 552, 554-55 (9th Cir. 1992) ............................................................................. 4, 5, 6, 13

*Scott v. Pasadena Unified School Dist.,*
   306 F.3d 646 ................................................................................................................................ 13

*Seed Servs., Inc. v. Winsor Grain, Inc.,*
   868 F. Supp. 2d 998 (E.D. Cal. 2012) .......................................................................................... 7

*Software v. Madacy Entm't, Co.,*
   421 F.3d 1073 (9th Cir. 2005) ...................................................................................................... 9

*Star-Kist Foods, Inc. v. P.J. Rhodes & Co.,*
   769 F.2d 1393 (9th Cir. 1985) ...................................................................................................... 5

*Stuhlbarg Int'l Sales Co. Inc. v. John D. Brush and Co., Inc.,*
   240 F.3d 832 (9th Cir. 2001) ........................................................................................................ 7

*Topps Co., Inc. v. Cadbury Stani S.A.I.C.*,
   526 F.3d 63, 86 U.S.P.Q.2d 1821 (2d Cir. 2008) .......................................................................... 12

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*,
   556 F.2d 406 (9th Cir. 1977) .......................................................................................................... 5

**Statutes**

28 U.S.C. § 1367(a) .............................................................................................................................. 11

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# I. INTRODUCTION

In its opposition brief, Airwair offers no new facts, and acknowledges that it is only aware of *two* pairs of Vans Gibson shoes shipped to the United States. Both of these purchases were made by Airwair's litigation counsel Hiaring & Smith in the Summer of 2012 from Hong Kong based resellers over the Internet, presumably for the sole purpose of attempting to create jurisdiction in this United States District Court.[1] Airwair also concedes that it does not own any trademark registrations for the alleged trade dress designs in any of the Asian countries where the Vans Gibson shoes were designed, manufactured and lawfully sold by Vans' licensee ABC Mart (e.g. Japan, Korea, Taiwan and China). Finally, Airwair fails to advance any specific facts demonstrating there is a likelihood of confusion among an appreciable number of U.S. consumers that the Vans Gibson shoes are Dr. Martens shoes (which is the applicable standard for trademark infringement claims), or that Airwair suffered any monetary harm in the United States (a prerequisite for subject matter jurisdiction).

In short, Airwair is asking this Court to accept a wholly speculative and conclusory complaint, and allow this case to proceed based upon Airwair's assertion that there are "sound inferences" of harm, when the alleged facts overwhelmingly support the conclusion that the Vans Gibson shoes (1) did not infringe any trademark rights in the foreign countries where they were marketed and sold, (2) did not have a substantial effect on commerce in the United States, and (3) have not caused any confusion to consumers or monetary harm to Airwair in the United States. In other words, Airwair would have this Court eviscerate the territorial nature of trademark laws, and become a world-wide sheriff of inconsequential activity in the Internet resale marketplace. That is certainly not the scope or purpose of the Lanham Act, and would invite a flood of unmeritorious trademark cases in the U.S.

In sum, and as discussed in further detail below, Airwair has not alleged sufficient facts to warrant extraterritorial application of the Lanham Act, and the complaint should therefore be dismissed under the higher, gate-keeping pleading standards of *Iqbal* and *Twombly*. Airwair's

---

[1] Indeed, we know from Exhibit 12 that at the time Airwair's counsel made its internet purchases in the Summer of 2012, Airwair and/or its counsel already had a sample of the Vans Gibson shoe from a purchase it previously made directly from an ABC Mart store in Japan in November 2011. Thus, the subsequent two purchases from Hong Kong based resellers over the Internet were likely made solely to try to secure subject matter jurisdiction here.

DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1  request for leave to amend should also be denied because Airwair's Opposition Brief and recently
2  served discovery responses confirm that it is unable to cure the deficiencies in its Complaint and
3  therefore such an amendment would be futile.

## II.  LEGAL ARGUMENT

### A.  Airwair's Complaint Fails To Allege Sufficient Facts To Support Subject Matter Jurisdiction.

Rather than proffer any additional facts, Airwair's Opposition Brief doubled down on the minimal factual threads in its complaint.  Airwair does not, and cannot, present any allegation of direct sales by Vans or ABC Mart of the Vans Gibson shoe to the United States, because such activity never occurred.[2]  Airwair also concedes that it is not aware of anyone in the United States (other than its counsel) who made purchases of the Vans Gibson shoe from third party resellers over the Internet.  Airwair also does not present any showing of monetary injury suffered in the United States, such as lost sales or lost opportunity to license its brand.  Finally, and most significantly, Airwair admits that it does not own any trademark rights in the foreign countries where the Vans Gibson shoes are sold – instead, Airwair is attempting to rely solely on its U.S. registrations to prevent lawful commerce in Asia.[3]

Airwair concedes that "minor factual threads connecting the complained of actions to U.S. commerce" are insufficient to maintain an action in the United States.  Opp. 2:2-3.  Vans respectfully submits that the US threads in this case are indeed minor and inconsequential.  The only U.S. connections presented by this case are that Vans is a Delaware corporation with its corporate headquarters in California [Compl. ¶¶ 2, 12], entered into a VANS trademark license agreement with a company in Japan [Compl. ¶¶ 13-14], received royalty payments from the licensee's sale of product in Asia [Compl. ¶ 36], and owns the URL www.vansjapan.com [Compl. ¶ 22] that connects

---

[2] As shown in the Request for Judicial Notice submitted herewith, the www.vansjapan.com website linked consumers to the ABC Mart website, which only shipped product within Japan.  Airwair's Exhibit 23 also confirms that ABC's sale of Vans Gibson shoes over the Internet was only within Japan ("if you have a friend in Japan, or are willing to pay a proxy service to purchase these for you, then direct them over to ABC Mart to pick these up for you").

[3] This admission is made by Airwair's silence on the issue in its Opposition Brief, and in its recently served responses to Vans' Requests for Admissions.  *See* Declaration of Robert N. Phillips ("Phillips Decl."), Ex. C at 5:25-27 ("Neither [Airwair] or its affiliates have any pending applications or trademark registrations that claim any design element . . . of the DR. MARTENS marks in Japan, Korea, or China (including Taiwan and Hong Kong).").

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

to its licensee's website and is directed solely to Japanese consumers.  The only other connections to the U.S. were Airwair's counsel's two purchases online (which don't count), and three short Internet reviews of the Vans Gibson shoe by bloggers.  Notably, **none** of the allegedly infringing activity—the design, manufacture, marketing, and sale of the Vans Gibson shoes—occurred in the United States.  All of these activities occurred in Asia.  Compl. ¶¶ 18, 20-24; Opp. 3:15-17, 25-27.

Despite these threadbare allegations, Airwair argues that the Complaint sufficiently supports a "sound inference" of substantial effects on U.S. commerce.  However, under very similar facts, the Court in *Aurora World, Inc. v. Ty Inc.*, 719 F. Supp. 2d 1115 (C.D. Cal. 2009) (cited by Airwair in its opposition) rejected this argument in the context of denying a motion for preliminary injunction.  The plaintiff in *Aurora* could only point to purchases of the accused product over the internet by its employee and a brochure found in a New Mexico store with photos of the accused product.  *Id.* at 1143.  The court noted the plaintiff had "adduced no evidence that it has lost sales in the United States" and that the self-serving purchase did "not support a finding that . . . [foreign sales had] a significant effect on American foreign commerce."  *Id.*  Indeed, "[a] single retailer's Internet sale . . . does not show a significant effect on American foreign commerce, particularly when there is no evidence that the retailer is located in the United States."  *Id.*  Moreover, the purchase did not evidence actual confusion because the individual who purchased the accused product was associated with the plaintiff and therefore could not confuse the products.  *Id.*  The court concluded that even if it found the single internet purchase showed "*some* effect on American foreign commerce, it would be unable to conclude . . . that 'the effect was sufficiently large' to satisfy the second factor" of the *Timberlane* test.  *Id.* at 1143-44 (emph. orig.) (*citing Gushi Brothers Co. v. Bank of Guam*, 28 F.3d 1535, 1544 n.13 (9th Cir. 1994)).  The *Aurora* court also distinguished *Reebok*, much like Vans did in its opening brief, because the defendant in *Reebok* organized and directed the manufacture of **counterfeit** goods, which led to actual substantial decreased sales and monetary harm in the United States.  *Id.* at 1142 (citing *Reebok*, 970 F.2d at 554-55).  In contrast, the *Aurora* plaintiff's "two pieces of evidence . . . that purportedly support a finding [of] significant effect on American commerce" were insufficient.  *Id.* at 1143.

The Ninth Circuit came to a similar conclusion in *Love v. Associated Newspapers, Ltd*, 611

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

F.3d 601, 613 (9th Cir. 2010). In that case, all of the accused sales occurred overseas, and the only accused product that entered the United States was obtained by plaintiff's counsel. This was insufficient to establish a substantial effect on US commerce. *Id.*

It is undisputed here that all of the challenged transactions—the design, manufacture, advertising, and sale of the Vans Gibson shoe—occurred abroad, and largely through the actions of ABC Mart. Opp. 3:25-27; Compl. ¶¶ 18, 20-23. Airwair's only factual allegations of purchases in the United States occurred at the direction of its own attorneys. These self-serving purchases from two Hong Kong based Internet resellers are not sufficient to support the extraterritorial application of the Lanham Act because Airwair's attorneys obviously did not confuse the Vans Gibson shoe for a Dr. Martens shoe, and the products did not enter the U.S. stream of commerce. The thin factual threads connecting the Vans Gibson shoe to U.S. commerce do not to justify extraterritorial application of the Lanham Act. Moreover, even if the Court did find that the two self-serving purchases from third-party foreign resellers had *some* effect on American foreign commerce, it cannot conclude that such effect is sufficiently large to satisfy the second *Timberlane* factor.

**B.     Airwair's Complaint Fails To Allege Facts Demonstrating That It Suffered Monetary Harm In The United States.**

Although the Lanham Act covers all commerce that Congress can regulate (Opp. 7:10-15; *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 426 (9th Cir. 1977)), the *extraterritorial* reach of the Lanham Act is limited only to activities that Congress can regulate. *Reebok Int'l v. Marnatech Enters.*, 970 F.2d 552, 554-55 (9th Cir. 1992) (citing *Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 769 F.2d 1393, 1395 (9th Cir. 1985)). Under Ninth Circuit law, a plaintiff must allege monetary injury in the United States where all of the challenged transactions occurred abroad, and where injury would seem to be limited to the deception of customers' abroad. *Love*, 611 F.3d at 613 (citing *Ocean Garden, Inc. v. Marktrade Co.*, 953 F.2d 500, 503 (9th Cir. 1992)). This is because without allegations of monetary injury in the United States, foreign transactions are not subject to the Commerce Clause.

Beyond its formulaic, conclusory allegations, which are not permitted under *Iqbal* and *Twombly*, Airwair provides no facts to support a "sound inference" that it suffered monetary injury

– 4 –

1 in the United States.  First, it strains reasons to conclude that the sale of Vans Gibson shoes in Asia, 2 or that the three postings by bloggers in the U.S. regarding the design of the Vans Gibson shoes, 3 caused Airwair to suffer any monetary injury in the United States.  This is simply not plausible, and 4 Airwair has been unable to point to any evidence of actual monetary harm.  *See, e.g., Aurora World,* 5 719 F. Supp. 2d at 1143 (finding insufficient effect on American foreign commerce because plaintiff 6 "adduced no evidence that it has lost sales in the United States"); *New Name, Inc. v. Walt Disney* 7 *Co.*, 2008 U.S. Dist. LEXIS 107204 at *21 (C.D. Cal. 2008) (noting the loss of sales of $100,000 in 8 the United States); *Ocean Garden*, 953 F.2d at 503 (accepting as evidence that the first and second 9 factors for exercise of extraterritorial jurisdiction were satisfied by proof that plaintiff was losing 10 millions of dollars in the United States, but rejecting as speculative a claim that infringement abroad 11 caused dilution of plaintiff's trademark in the United States); *Reebok*, 970 F.2d at 554-55 (noting, in 12 addition to the direct activities in the United States, evidence of decreased sales of a genuine product 13 in the United States).

14   Rather than provide any factual allegation of monetary harm, Airwair's Opposition advances 15 a purely speculative form of alleged harm, which Airwair describes as "loss of control" over its trade 16 dress, to try to justify the extraterritorial application of the Lanham Act.  Opp. 10:17-27, 11:15-20. 17 There are two fatal problems with this argument.

18   First, as a factual matter, it is not plausible for Airwair to claim that the sale of only 29,000 19 pairs of shoes throughout four countries in Asia, comprising a total population of over 1.5 billion 20 people, caused it to lose control over its alleged Dr. Martens trade dress in the United States.  It 21 makes absolutely no sense to claim that an inconsequential number of shoe sales on the other side of 22 the globe had any impact here in the United States.  And even assuming, for the sake of argument, 23 that all 29,000 pairs were purchased over the internet by United States residents (rather than just the 24 2 pairs purchased by Airwair's counsel), that would involve less than 0.01% of the U.S. population. 25 This would hardly result in "loss of control" over Airwair's alleged trade dress.  Courts in the Ninth 26 Circuit routinely reject these absurdly speculative types of claims.  *Love*, 611 F.3d at 613 ("Even if . 27 . . European purchasers would mistakenly [confuse the products], it is too great of a stretch to ask 28 [the court], or a jury, to believe that such confusion overseas resulted in . . . decreased . . . sales in

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 5 –
DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

the United States."); *Ocean Garden*, 953 F.2d at 503 (rejecting as speculative a claim that infringement abroad caused dilution of plaintiff's trademark in the United States).

The second fatal defect in Airwair's argument is a legal issue.  The cases cited by Airwair all stand for the uncontroversial, general proposition that equitable relief in the form of a preliminary injunction is an available remedy to prevent a threat of irreparable harm in a trademark case.  But all of these cases involved substantial actual or threatened infringing activity or economic harm in the U.S.  These cases, however, do not support the international expansion of U.S. trademark laws for purely overseas activity where there is no plausible claim of monetary injury in the U.S.  *See Stuhlbarg Int'l Sales Co. Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832 (9th Cir. 2001) (affirming a preliminary injunction based on possible irreparable harm in threatened loss of prospective customers or goodwill where there were allegations that the accused products would be distributed to retail stores in the United States); *Neighborhood Assistance Corp. of Am. V. First One Lending Corp.*, 2012 U.S. Dist. LEXIS 67950 (C.D. Cal. May 15, 2012) (granting a preliminary injunction based on likely irreparable harm in the loss of goodwill or ability to control reputation where the complaint contained allegations of defendant's actions in the United States with U.S. consumers); *Seed Servs., Inc. v. Winsor Grain, Inc.*, 868 F. Supp. 2d 998 (E.D. Cal. 2012) (granting a preliminary injunction under likely irreparable harm of loss of goodwill where defendant, from the United States, attempted to sell its own product to plaintiff's customers under plaintiff's trademark).

For example, Airwair cites heavily from *Mattel v. MCA Records, Inc.*, 28 F. Supp. 2d 1120 (C.D. Cal. 1998), but the facts in that case are easily distinguishable.  The court in *Mattel* applied the Lanham Act where some of the allegedly infringing activity occurred abroad, but only after finding a significant effect on American commerce.  The foreign defendants in *Mattel* had significant activity in and directed toward the United States, including over 1.4 million U.S. sales.  *Id.* at 1125.  Moreover, and pertinent to the third *Timberlane* factor, the plaintiff in *Mattel* sought only damages and injunctive relief "relating to activities within the U.S." and not sales abroad.  *Id.* at 1130.   This is in stark contrast to the sweeping, world-wide injunction Airwair seeks to impose on the wholly foreign actions and property of Vans' foreign licensee.

Since Airwair lacks any plausible allegations of harm suffered in the United States, Airwair

– 6 –

focuses on largely irrelevant facts, such as Vans' status as a U.S. entity that entered into a trademark license agreement with a foreign company, and that such agreement contained standard provisions requiring ABC to meet certain quality standards for the products that it would make and sell under the VANS trademark.[4]  Airwair's allegations are precisely the type of "minor factual threads connecting the complained of actions to U.S. commerce" that are insufficient to maintain an action in the United States.  Without sufficient allegations of monetary harm in the United States, Airwair cannot satisfy the *Timerblane* test.

**C.    Airwair's Complaint Fails To Make A Plausible Showing Of Likelihood Of Confusion In The United States.**

The test for trademark infringement is whether an appreciable number of consumers are likely to be confused as to the source of defendant's product.  *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1149 (9th Cir. 2011) ("the *sine qua non* of trademark infringement is consumer confusion."); *Software v. Madacy Entm't, Co.*, 421 F.3d 1073, 1085 (9th Cir. 2005) (confusion must be likely among an "appreciable number" of consumers to establish infringement).  Even assuming that Airwair's complaint satisfied the subject matter jurisdiction requirements for extraterritorial application of the Lanham Act, Airwair's Complaint fails to present a plausible claim of likelihood of confusion among U.S. customers.  Without a likelihood of consumer confusion, the Vans Gibson shoe is not infringing under the Lanham Act, regardless of its use of yellow stitching or other design elements registered by Airwair in the United States.  In other words, unlike in a patent case, the presence of the registered design elements in defendant's product does not alone establish infringement.  There must still be a showing of a likelihood of confusion by an appreciable number of consumers in the United States.  Airwair's complaint does not present sufficient facts to constitute a plausible claim under this test and therefore a 12(b)6 dismissal is warranted.  See e.g.*Hensley Mfg. v. Propride Inc.*, 579 F.3d 603, 613 (6th Cir. 2009) (dismissing a

---

[4] Airwair incorrectly tries to conflate "quality control" with the concept of possession and control.  The licensor does not possess (i.e. own) the products made under a trademark license agreement.  They are the property of the licensee.  The licensor merely conditions the use of its trademark on the licensee meeting certain quality standards for the goods produced.  *Compare Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 993 (9th Cir. 2006) (quality control is to "protect the public's expectation that all products sold under a particular mark . . . are of like quality."), *with New Name, Inc. v. Walt Disney Co.*, 2008 U.S. Dist. LEXIS 107204 (C.D. Cal. July 25, 2008) (in addition to quality control, license agreement provided for ownership of licensed products).

DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   complaint where the attached exhibits demonstrated there was no likelihood of confusion);

2   *Architectural Mailboxes, LLC v. Epoch Design, LLC*, 2011 WL 1630809 at *3-4 (S.D. Cal. Apr. 28,

3   2011) (dismissing complaint at the pleading stage where plaintiff failed to allege sufficient facts to

4   demonstrate a likelihood of confusion).

5         Airwair contends that "unwitting American consumers" were likely duped into purchasing

6   the Vans Gibson shoes believing they were Dr. Martens shoes.  Opp. 17:10-13.  The exhibits to

7   Airwair's Complaint, however, clearly show that this is neither a "reasonable inference" nor a

8   "plausible claim."  *Hensley*, 579 F.3d at 613 (citing *Iqbal* and *Twombly*) (emph. origin.) (contention

9   that "facts *may exist* that establish a level of consumer confusion" is mere speculation and

10  insufficient to state a claim for relief that is "plausible on its face.").  First, the shoes are clearly and

11  permanently labeled as Vans shoes.  Moreover, the advertisements on www.vansjapan.com and

12  ABC Mart's website clearly identified the Vans Gibson shoes as from Vans.  *L.A. Gear, Inc. v.*

13  *Thom McAn Shoe Co.*, 988 F.2d 1117, 1134 (Fed. Cir. 1993) ("We conclude that the conspicuous

14  and permanent placement of the trademarks . . . and the sophistication of purchasers of fashion

15  athletic shoes[] clearly outweigh the similarities in the shoe design, insofar as consumer confusion as

16  to source is avoided.").  The blog commentary also explicitly distinguished the Vans Gibson shoe

17  design from Dr. Martens shoes, thereby confirming that the authors were not confused.  For

18  example, Sneaker News opined that the Vans Gibson shoe was modeled after Dr. Martens, but

19  commended Vans for "applying their signature alt style . . . and adding in the trendy leopard print for

20  good measure."  Compl. ¶ 39, Ex. 22.  Kicks on Fire noted that the Vans Gibson shoe "almost looks

21  like an homage" to Airwair's boot, "but with a whole new twist."  Compl. ¶ 38, Ex. 21.  Meanwhile,

22  Off the Wall, "a blog dedicated to VANS," acknowledged that the Vans Gibson shoe could not be

23  purchased directly from the United States, and instead instructed its readers to find a friend in Japan

24  or pay for a proxy service.  Compl. ¶ 40, Ex. 23.

25        These blog posts indicated that the authors, and thus their audiences, clearly knew and

26  understood the difference between Vans and its Gibson shoe on the one hand, and Airwair and its

27  Dr. Martens shoes on the other.  *Architectural*, 2011 WL 1630809 at *3 (no likelihood of confusion

28  shown where attached exhibits clearly identified the manufacturers and "[drew] a clear distinction

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 8 –

between [defendant's] products and those of [p]laintiff"). Notably, the subscribers of these blogs are "sneaker aficionados" or "sneakerheads" (Compl. ¶ 38) and avid fans of the Vans brand (Compl. ¶ 40). *L.A. Gear*, 988 F.2 at 1134 (noting purchasers of fashion athletic shoes are sophisticated and likely to be well aware of the sources of shoes, and therefore unlikely to confuse similar shoe designs). Moreover, in order to consummate a purchase (if any), these consumers would have needed to find a Japanese friend or proxy to purchase the Vans shoes in Japan. It is highly unlikely (and thus not plausible) that such consumers, who would need to go out of their way to secure a purchase of Vans Gibson shoes, did so under the mistaken impression that they were buying Airwair shoes.

Even assuming a likelihood of confusion, Airwair's Complaint and Opposition do not support the conclusion that an *appreciable* amount of consumer confusion occurred. Airwair, a large corporation with substantial resources and experience conducting investigations to protect its brand, surely conducted diligent research on the availability of the Vans Gibson shoe in the United States in an attempt to support this Complaint. Yet, after more than one year of time passing since Airwair first discovered the Vans Gibson shoes in Japan, Airwair is only able to point to its counsel's two purchases in the United States. Airwair has no evidence of any other sales occurring over the Internet, such as on e-Bay or other publicly available websites. *See* Compl, Ex. 16 (indicating only **one** Vans Gibson was available for purchase on line: "one last pair in stock now"); *see* also Ex. 11 ("0 in stock" on ABC's website). In sum, Airwair has not put forth sufficient factual allegations that support a conclusion that an appreciable number of American consumers were confused into purchasing Vans Gibson shoes thinking they were buying Dr. Martens shoes. Airwair's Complaint therefore fails to state a valid cause of action for trademark infringement and should be dismissed.[5]

**D.    The U.S. Courts Do Not Have An Interest In Blocking Lawful Commerce in Asia.**

Trademark laws are territorial in nature. Under the territoriality doctrine, a trademark is

---

[5] Airwair's claim that it needs discovery from Vans to find evidence of other purchasers in the U.S. is disingenuous. As Airwair is well aware, Vans and ABC did not sell any Vans Gibson shoes to consumers in the U.S. If any pairs were purchased by consumers in the U.S., it could have only been from foreign resellers on the Internet, which is outside of Vans's knowledge or control. Therefore, seeking discovery from Vans to try to cure its deficient Complaint will be meaningless and futile.

DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1  recognized as having a separate existence in each sovereign territory. *Person's Co. v. Christman*,
2  900 F.2d 1565 (Fed. Cir. 1990) ("The concept of territoriality is basic to trademark law; trademark
3  rights exist in each country solely according to that country's statutory scheme."). The territoriality
4  doctrine provides that "[a] trademark has a separate legal existence under each country's laws and
5  trademark rights exist in each country solely according to that nation's laws." *Topps Co., Inc. v.
6  Cadbury Stani S.A.I.C.*, 526 F.3d 63, 70, 86 U.S.P.Q.2d 1821 (2d Cir. 2008). The principle of
7  territoriality is basic to American trademark law. *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 155 (2d
8  Cir. 2007), *certified question of state law answered*, 9 N.Y.3d 467, 850 N.Y.S.2d 366, 880 N.E.2d
9  852 (2007), *on remand* 518 F.3d 159, 86 U.S.P.Q.2d 1115 (2d Cir. 2008). A U.S. trademark
10 registration has no effect in other countries; and foreign county trademark registrations have no
11 effect in the U.S. For these reasons, only in the limited circumstance of foreign activity that causes
12 a substantial effect on U.S. commerce, monetary harm to the plaintiff, and no conflict with the
13 interests of other jurisdictions, will a U.S. court attempt to apply U.S. trademark laws to such foreign
14 activity.

15      Here, there is a conflict with the interests of other jurisdictions. Airwair does not own any
16 trademark registration in Japan, China, Taiwan or Korea for the shoe design elements it registered in
17 the United States. In fact, it has recently admitted to having sought registrations in some or all of
18 such countries without success. Phillips Decl., Ex. D at 5:25-27 ("[Airwair] filed applications for
19 trade dress marks in certain of the countries listed . . . in the 1990s."), Ex. C at 5:25-27 ("Neither
20 [Airwair] or its affiliates have any pending applications or trademark registrations that claim any
21 design element . . . of the DR. MARTENS marks in Japan, Korea, or China (including Taiwan and
22 Hong Kong)."). Thus, Airwair does not have the right to block the use of such design elements by
23 competitors in those countries. Contrary to the argument made by Airwar, there need not be an
24 ongoing legal proceeding in the Asia countries for the Court to find a conflict of interest with other
25 jurisdictions. Rather, as noted by the Ninth Circuit in *Reebok*, "it is a sufficiently cognizable interest
26 under the *Timberlane* test for there to exist the possibility of a conflict between the law or policy of
27 the United States and the law or policy of another nation." *Reebok*, 970 F.2d at 555 n.2. Therefore,
28 it is highly relevant and appropriate for the Court to consider whether the extraterritorial application

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 10 –

1 of the Lanham Act would grant Airwair rights that are in conflict with competitors' rights under the
2 laws of the subject foreign countries. That is clearly the case here because Airwair seeks to apply
3 U.S. trademark law to enjoin foreign competitive activity that is entirely lawful under the applicable
4 trademark principles in Japan, China, Taiwan and Korea.

5 Under Airwair's view of extraterritorial application of the Lanham Act, U.S. courts could
6 intervene every time a trademark owner feels that its trademark has been imitated in another country,
7 regardless of the lack of trademark rights in such foreign country, simply by virtue of a purchase by
8 the trademark owner's U.S. attorney from a foreign third-party reseller. Such a view of the law does
9 not comport with international comity or the territoriality doctrine. In short, allowing Airwair to
10 continue with this case would completely eviscerate the territorial nature of trademark laws and turn
11 United States District Court Judges into world-wide sheriffs of the Internet resale marketplace. This
12 is not the intent of the Lanham act, for its extraterritorial application is limited to only those
13 situations where there is a substantial effect on U.S. commerce, not self-serving Internet transactions
14 that have caused no monetary injury to the plaintiff.

15 **E.     Airwair's State Law Claims Likewise Fail.**

16 As shown above, Airwair has not established subject matter jurisdiction for its Lanham Act
17 claims. Without any basis to proceed on the federal claims, this Court no longer has a basis to
18 exercise supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a). *Scott v.*
19 *Pasadena Unified School Dist.*, 306 F.3d 646, 664 (9th Cir. 2002 (where federal claims are
20 dismissed for lack of subject matter jurisdiction, the court has no discretion to retain supplemental
21 jurisdiction over state law claims); *Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802,
22 806 (9th Cir. 2001) ("if the court dismisses for lack of subject matter jurisdiction, it has no discretion
23 and must dismiss all claims."). Accordingly, Airwair's Complaint should be dismissed in its
24 entirety, including its state law claims.

25 In addition, Airwair's state law claims independently fail as a matter of law. In its
26 Opposition, Airwair attempts to base its state law claims on the argument that the "conduct at issue
27 occurred, in part, in California." Opp. 20:22-27. Airwair, however, does not allege any wrongful
28 behavior in California. The only activity alleged to have occurred in California—the entering of a

DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  license agreement and receipt of royalties by a corporation headquartered in Califorrna —is not a
2  Lanham Act violation. Instead, the challenged activity is the design, manufacture, and sale of the
3  Vans Gibson shoe, all of which occurred abroad. This does not give rise to a 17200 claim because
4  California law has a presumption against its extraterritorial application. *Churchill Village, L.L.C. v.*
5  *GE*, 169 F. Supp. 2d 1119, 1126-27 (N.D. Cal. 2000).

6  Also, Airwair is a U.K. corporation, and has not alleged any facts showing that it or its U.S.
7  subsidiary actually suffered any harm or injury in California (let alone the United States). As it has
8  not pointed to any alleged *misconduct* in California or under U.S. law, Airwair cannot maintain its
9  unfair competition claim. Finally, Airwair's state law dilution claims are not supported by any
10 plausible factual allegations showing loss of distinctiveness of its alleged trade dress in California.

11 **F.    Vans' Right to Control The Quality Of The Licensed Goods Is A Red Herring.**

12 Airwair's discussion of quality control provisions in license agreements, and the potential
13 consequences of "naked licensing," is a red herring for two simple reasons. Opp. 23-24. First, if
14 there is no substantial effect on U.S. commerce from the foreign activity, the Lanham Act does not
15 apply and the Court lacks subject matter jurisdiction, regardless of whether the foreign activity was
16 conducted by Vans or its licensee. Second, even if the foreign activity has caused a substantial
17 effect on U.S. commerce, and such activity was only committed by the licensee, the licensor cannot
18 be held vicariously liable unless there was joint ownership or control over the infringing product.
19 *New Name, Inc. v. The Walt Disney Co., et al.*, 2008 U.S. Dist. LEXIS 107204 (C.D. Cal. July 25,
20 2008). A licensee's contractual obligation to provide a certain level of quality for the manufactured
21 products does not equate to joint ownership or control over the products. *Id.* The products remain
22 the sole property of the licensee, and the licensor does not have control over their disposition. *Id.*
23 Airwair's allegations regarding the existence of standard quality control provisions in license
24 agreements are clearly insufficient to establish a basis for licensor-licensee vicarious liability.

25 **G.    Vans' Motion to Dismiss Should Be Granted Without Leave To Amend Because**
26 **Amendment Would Be Futile.**

27 The Court may grant a motion to dismiss without leave to amend when such amendment
28 would be futile. *Carrico v. City & Cnty. Of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011)

DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

(leave to amend may be denied if proposed amendment is futile). Despite requesting leave to amend, Airwair fails to proffer any additional facts that it could present in an Amended Complaint, and is unable to identify any proposed discovery that would cure the deficiencies in its Complaint. In fact, Airwair recently served discovery responses confirming that it has no additional facts supporting subject matter jurisdiction. Phillips Decl., Ex. B at 5:9-11 ("[Airwair] admits that it does not currently have facts relating to other actual purchases of the Vans Gibson line of sheos by American consumers"), Ex. B at 6:12-7:11 (Admitting that Airwair is "not aware of any actual consumer confusion as to source, origin, connection, affiliation, sponsorship, or association of the Vans Gibson line."). These discovery responses also concede that Airwair attempted but was unsuccessful in obtaining any trademark registrations covering the alleged trade dress design elements in Japan, China, Taiwan, or Korea. Phillips Decl., Ex. D at 5:25-27 ("[Airwair] filed applications for trade dress marks in certain of the countries listed . . . in the 1990s."), Ex. C at 5:25-27 ("Neither [Airwair] or its affiliates have any pending applications or trademark registrations that claim any design element . . . of the DR. MARTENS marks in Japan, Korea, or China (including Taiwan and Hong Kong)."). Therefore, Vans' and ABC's sale of the Vans Gibson shoes in those countries was lawful commerce.

Moreover, it is clear that Airwair would be unable to present in an amended complaint any additional facts showing any purchases of the Vans Gibson shoes by U.S. consumers, any likely consumer confusion, or any actual harm (monetary or otherwise) suffered in the United States or California.[6] Thus, any amendment would clearly be futile and would not support extraterritorial application of the Lanham Act on these facts. *Krainski v. State of Nev. Ex rel. Bd. Of Regents of Nev. Sys. of Higher Ed.*, 616 F.3d 963, 972 (9th Cir. 2010) (amendment futile where plaintiff has no new facts that could save the complaint by any amendment).

/ / /

/ / /

---

[6] Airwair contends that the Court should grant leave to amend because "it has additional facts, learned after the filing of the Complaint, that bolster its allegations." Opp. 24:9-13. However, Airwair has provided no such information in response to discovery requests seeking such information. For example, Airwair parroted the exact same factual allegations contained in its Complaint when asked to "[i]dentify all facts supporting [Airwair's] contention that the sale of the Vans Gibson shoes have a 'substantial effect' in the United States." Phillips Decl., Ex. C at 6-8.

### III. CONCLUSION

For all of the foregoing reasons, Vans' motion to dismiss should be granted without leave to amend.

DATED:  March 1, 2013

                                          REED SMITH LLP

                                          By: /s/ Robert N. Phillips
                                               Robert N. Phillips
                                               Tiffany M. Bui
                                               Attorneys for Defendant
                                               VANS, INC.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT