1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| AIRWAIR INTERNATIONAL LTD., | ) | Case No.: 5:12-CV-05060-EJD |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING VANS' MOTION** |
| | ) | **TO DISMISS** |
| v. | ) | |
| | ) | |
| VANS, INC. and DOES 1-100, inclusive, | ) | **[Re: Docket No. 21]** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

Presently before the court in this trademark infringement action is Defendant Vans, Inc.'s ("Vans") Motion to Dismiss. Dkt. No. 21. The court found this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b) and previously vacated the hearing. Having fully reviewed the parties' briefing, and for the following reasons, the court DENIES Vans' Motion.

## I.   Background

Plaintiff Airwair International Ltd. ("Airwair") is a United Kingdom corporation organized under the laws of England and Wales that sells shoes and boots under the Dr. Marten's label. Compl. ¶¶ 1-2, Dkt. No. 1.  Vans is a California corporation that produces well-known footwear under its namesake.  Compl. ¶¶ 1-2; Mot. to Dismiss at 1:3-6; Pl.'s Opp'n to Mot. to Dismiss at 3:12-13.  Airwair and Vans have directly competed in the United States since at least 1984 and share target demographics.  Compl. ¶¶ 6-16.  Both companies have worldwide reach and are popular among consumers.  Id.  In support of its international business, Vans licenses the right to design, manufacture, advertise, and sell footwear bearing Vans' trademarks.  Compl. ¶¶ 13-16; Mot. to Dismiss at 1:7-14.  One such licensee is ABC Mart, a Japan-based affiliation of companies located in Japan, Korea, and Taiwan.  Id.  This licensee distributes the shoes it produces under the Vans label primarily in brick-and-mortar stores in East Asia and on the Internet.  Id.

### A.   Airwair's Trade Dress

Airwair owns several U.S. trademarks in the footwear category.  These include the following trade dress registrations on the Principal Register: No. 2,437,751 consisting of "the combination of yellow stitching in the welt area and a two-tone grooved sole edge" No. 2,437,750 consisting of a welt stitch running around the perimeter of the footwear; No. 2,102,468 consisting of the design of an undersole; and No. 2,835,657 consisting of the word "Airwair" in stylized yellow lettering on a black loop affixed to the heel.  Compl. Exhs. 1-3, 6.  Airwair also has a registration, No. 2,104,349, on the Supplemental Register for trade dress consisting of the design of a sole edge including "longitudinal ribbing, and a dark color band over a light color" (Compl. Exh. 4), as well as No. 2,341,976 consisting of the same on the outer sole edge, but with the additional elements of welt stitching and a tab located at the top back heel (Compl. Exh. 5).  Each registration claims a first use in commerce of 1984.  Compl. Exhs. 1-6.  Airwair claims that three of its registrations (Compl. Exhs. 1-3) on the Principal Register have become incontestable and asserts that its trade dress is distinctive or has acquired distinctiveness and is non-functional.  Compl. ¶¶ 9, 10.  Indeed, Airwair claims that its trade dress is famous.  Id. ¶ 61.  Airwair does not allege what trademark rights, if any, it owns in any East Asian countries.

2

**B.  The Allegedly Infringing "Gibson" Footwear**

In 2011, Vans' licensee, ABC Mart ("licensee"), designed and manufactured 29,000 pairs of a line of shoes, which the licensee dubbed "Gibson."  Compl. ¶ 20; Mot. to Dismiss at 1:10-12. This line bore the Vans trade name on the back outer sole edge of the shoe and on the heel tab.  Id. The Gibson line features longitudinally grooved sole edges, yellow welt stitching running the perimeter of the shoe, and a looped tab located at the top back heel emblazoned with the Vans trade name in yellow.  Compl. Exh. 10-20. The licensee distributed the Gibson line to a variety of stores in East Asia.  Compl. ¶¶ 13-16.  One of the standard display window arrangements promoting the Gibson in such stores included pictures of a Gibson shoe set in front of an image of the British flag. Compl. Exhs. 13, 14.  Certain styles of the Gibson line were also featured on and sold through a website, www.vansjapan.com, which is a Japanese-language URL owned by Vans in the United States.  Compl. ¶¶ 22, 23.

The Gibson line received press attention from "sneakerhead" websites such as www.kicksonfire.com ("KOF"), www.sneakernews.com ("Sneaker News") and www.offthewallsite.net ("OTWS").  Compl. ¶¶ 38-40.  KOF regards the Gibson line as almost "an homage" to Dr. Martens.  Compl. Exh. 21.  Sneaker News referred to Gibson as "obviously modeled after" Airwair's Dr. Martens footwear.  Compl. Exh. 22.  OTWS, a blog site specifically dedicated to news and information about Vans footwear, also described the Gibson line as Dr. Martens-inspired.  Compl. Exh. 23.  OTWS noted that the Gibson line was available only in Japan but encouraged readers to enlist friends or a service to purchase Gibson from the licensee on their behalf.  Id.; Compl. ¶ 40.  Indeed, Airwar itself succeeded in purchasing articles of the Gibson line through third-party websites, such as eBay and www.kicks-crew.com.  Compl. ¶ 42, Exh. 17, 18. One such purchase included the original sales receipt from the licensee.  Compl. Exh. 12.

**C.  Airwair's Cease and Desist Efforts**

In November of 2011, Airwair became aware of the Gibson line.  Compl. ¶ 28.  By the end of the month, it had sent a cease-and-desist letter to Vans demanding that it (1) cease selling the Gibson line, (2) disgorge profits deriving from the sale of Gibson, and (3) destroy any remaining inventory of Gibson.  Compl. ¶ 29.  Vans initially responded with a promise to investigate the

3

matter.  Compl. ¶ 30.  In January 2012, Airwair informed Vans that the Gibson line still appeared for sale on www.vansjapan.com.  Compl. ¶ 31.  On January 17, Vans responded that, as a courtesy, it had (1) directed its licensee to stop selling the Gibson line, and (2) directed the removal of Gibson from stores in Asia and from the www.vansjapan.com website.  Compl. ¶ 32; Mot. to Dismiss at 3:20-28.  Vans acknowledged that approximately 11,000 pairs of Gibson remained in outstanding inventory.  Compl. ¶ 30-33.  It declined to destroy them and said instead that the licensee would sell the remaining stock of Gibson to family members at a deep discount.  Compl. ¶ 32-33.  In February 2012, Airwair responded that it found this solution unacceptable and reiterated its demand that the remaining Gibson stock be destroyed.  Compl. ¶ 34.  Airwair does not allege that Vans is currently in possession of any of the Gibson inventory.

### D.  Procedural History

On September 28, 2012, Airwair filed this action against Vans, demanding a jury trial and alleging seven causes of action:  (1) trademark infringement under the Lanham Act, (2) false designation of origin under the Lanham Act, (3) common law trade dress infringement, (4) trademark dilution under the Lanham Act, (5) trademark dilution under California statutory law, (6) unfair competition under California statutory law, and (7) common law unfair competition.  Vans filed the present Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on December 17, 2012.  Dkt. No. 21.  The court now turns to the substance of Vans' motion.

### II.    Legal Standard

A complaint must contain a statement of the court's basis for jurisdiction, a short and plain statement that the complainant is entitled to relief, and a demand for the relief sought.  Fed. R. Civ. P. 8(a).  A claim may be attacked by a motion to dismiss if it fails to demonstrate the subject-matter jurisdiction of the court or fails to state a claim upon which relief may be granted.  See Fed. R. Civ. P. 12(b)(1), 12(b)(6).  At the motion to dismiss stage, the court must read and construe the complaint in the light most favorable to the non-moving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  However, in order to give a defendant "fair notice of what the … claim is and grounds upon which it rests," a plaintiff must plead each claim with sufficient

4

United States District Court
For the Northern District of California

specificity.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations

omitted).  Therefore, dismissal is appropriate when the claim lacks a legally cognizable theory or

fails to allege sufficient facts in support of a legally cognizable theory.  Mendiondo v. Centinela

Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).  While a court will generally accept as true

all well-pled factual allegations, it need not accept as true legal conclusions "couched as a factual

allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009) (citing Twombly, 550 U.S. at 555).

Factual allegations also must be plausible on their face and more than merely speculative.

Twombly, 550 U.S. at 556-57.  Determining the plausibility of a claim is a "context-specific task,"

which requires a court to draw on "judicial experience and common sense."  Iqbal, 556 U.S. at 679.

At the same time, a complaint need not contain detailed factual allegations to survive a motion to

dismiss.  Twombly, 550 U.S. at 555.

**III.     Discussion**

**A. The Extraterritorial Application of the Lanham Act.**

        Vans argues that the conduct Airwair alleges in its Complaint—i.e. the manufacturing,

advertising, and selling of the Gibson line—all occurred beyond the United States' borders.  Thus,

in order to determine if subject-matter jurisdiction exists in this case, the court must determine

whether the Lanham Act and related law apply to the international activity alleged in Airwair's

Complaint.  The Ninth Circuit employs a three part test, first expressed in Timberlane Lumber Co.

v. Bank of Am., N.T. & S.A., 549 F.2d 597 (9th Cir. 1976), to determine the extraterritorial

application of U.S. trademark and unfair competition law.  Star-Kist Foods, Inc. v. P.J. Rhodes &

Co., 769 F.2d 1393, 1395 (9th Cir. 1985).  To properly state a claim arising under the Lanham Act

for which relief may be granted under this test, Airwair must allege facts sufficient to support a

conclusion that (1) Vans' alleged violations of Airwair's rights create some effect on U.S. foreign

commerce, (2) this effect is sufficiently great to present a cognizable injury to the plaintiff, and (3)

the interest of and links to U.S. foreign commerce are sufficiently strong in relation to those of

other nations as to justify an assertion of extraterritorial authority.  Id. (citing Timberlane, 549 F.2d

597).

Case No.: 5:12-CV-05060-EJD
ORDER DENYING VANS' MOTION TO DISMISS

### 1.  Effect on U.S. Foreign Commerce

The first prong of the <u>Timberlane</u> test asks whether the alleged conduct creates some effect on U.S. foreign commerce.  <u>Timberlane</u>, 549 F.2d 597.  Some effect on U.S. foreign commerce exists where infringing or counterfeit goods are produced abroad and sold in the United States or otherwise make their way into the United States and threaten a mark owner's goodwill.  <u>Steele v. Bulova Watch Co.</u>, 344 U.S. 280 (1952).  <u>See also</u> <u>Atlantic Richfield Co. v. ARCO Globus Int'l Co.</u>, 150 F.3d 189, 192-93 (2d Cir. 1998); <u>Reebok Int'l v. Marnatech Enters.</u>, 970 F.2d 552, 554 (9th Cir. 1992); <u>Ocean Garden, Inc. v. Marktrade Co.</u>, 953 F.2d 500, 503 (9th Cir. 1991).

Airwair alleges Vans' direct and contributory infringement arising out of Vans' U.S. license agreement with its licensee and the ratification of its licensee's infringing activities.  Compl. ¶¶ 35-37, 43.  Airwair further alleges that travelers make purchases of the allegedly infringing footwear that then make their way back to the United States causing confusion in the relevant market or otherwise damaging Airwair's goodwill.  Compl. ¶ 42.  Airwair also points to Vans' ownership of the website, www.vansjapan.com, on which the Gibson footwear was advertised and visible to consumers in the United States, leading to dilution by blurring.  Compl. ¶ 37, 63.  These allegations more than suffice to state an effect on U.S. commerce.  <u>See</u> <u>Star-Kist</u>, 769 F.3d at 1394-95 (questioning whether any importation of infringing goods to the United States is required at all); <u>Ocean Garden</u>, 953 F.2d at 503 (finding the first prong of <u>Timberlane</u> satisfied where defendant U.S. corporation's sales of infringing goods occurred entirely abroad).

Vans' reliance on <u>Love v. Associated Newspapers, Ltd.</u>, 611 F.3d 601 (9th Cir. 2010) is misplaced.  There, the sole infringing product that made its way to the United States consisted of a unit purchased by the plaintiff's counsel.  In fact, it was "undisputed that all relevant acts occurred abroad."  <u>Id.</u> at 613.  Here, however, Airwair alleges that some acts occurred within the United States.  Compl. ¶ 43 (alleging that Vans ratified and "orchestrated" its licensee's infringing activity by allowing it to continue to sell Gibson after becoming aware of Airwair's trademark rights).  Moreover, unlike in <u>Love</u>, Airwair alleges additional facts supporting its claim that consumers have purchased the Gibson footwear and caused its arrival in the United States to Airwair's detriment.  Compl. ¶¶ 38-42.  Namely, Airwair points to various online media dedicated to sneaker

Case No.: 5:12-CV-05060-EJD
ORDER DENYING VANS' MOTION TO DISMISS

**United States District Court**
For the Northern District of California

1    culture in the United States, which publicized the existence of the "Dr. Martens inspired" Gibson

2    footwear, and encouraged readers to enlist a friend or proxy service to obtain the shoes.  Compl.

3    Exhs. 21-23.  These exhibits, coupled with Airwair's own facility in purchasing and importing two

4    pairs of the Gibson footwear (Compl. ¶ 24, Exhs. 15-18), plausibly support Airwair's allegation

5    that others in the relevant market may have successfully acquired an appreciable number of the

6    Gibson footwear and transported it to the United States.  Accordingly, the court finds that

7    Airwair's Complaint contains allegations of conduct having an effect on U.S. foreign commerce.

8                        **2.  Injury under the Lanham Act**

9          The second prong of the Timberlane test requires that the effect of the alleged conduct is

10   sufficiently great to present a cognizable injury to the plaintiff under the Lanham Act.  Star-Kist,

11   769 F.2d at 1395 (citing Timberlane, 549 F.2d 597).  Airwair alleges Vans' misappropriation of

12   Airwair's trade dress leading to a loss of control of Airwair's mark and business reputation.

13   Compl. ¶¶ 38-40.  Such threatened loss of goodwill or future purchases constitutes cognizable

14   injury under the Lanham Act.  Stuhlbarg Int'l Sales Co., v. John D. Brush & Co., 240 F.3d 832,

15   841 (9th Cir. 2001).  See also Seed Servs., Inc. v. Winsor Grain, Inc., 868 F. Supp. 2d 998, 1005

16   (E.D. Cal. 2012).  The Complaint contains allegations of both trademark infringement and dilution.

17   Compl. ¶¶ 26, 47-50, 53, 54.  See also Discussion Part III.B-G.  Both are cognizable injuries under

18   the Lanham Act.  15 U.S.C. §§ 1114, 1125.  Airwair's Complaint thus satisfies the second

19   Timberlane prong.

20                    **3.  Interests of and Links to U.S. Foreign Commerce**

21         Timberlane's third prong tests whether the interest of and links to U.S. foreign commerce

22   are sufficiently strong in relation to those of other nations to justify an assertion of extraterritorial

23   authority.  Timberlane, 549 F.2d 597.  Seven factors comprise this prong:  (1) the degree of conflict

24   with foreign law or policy, (2) the nationality or allegiance of the parties, (3) whether enforcement

25   by either state would achieve compliance, (4) the relative significance of effects on U.S. commerce

26   as opposed to those elsewhere, (5) explicit purpose to harm or affect U.S. commerce, (6) the

27   foreseeability of such effects, and (7) the relative importance of violations charged of conduct

28

7

within the U.S. as compared to those abroad.  <u>Reebok</u>, 970 F.2d at 555.  The court will examine each factor in turn.

### a.   Degree of Conflict with Foreign Law or Policy

Vans does not allege the existence of any Japanese trademark rights that either it or its licensee owns in the mark at issue here.  Nor does Vans argue the existence of a contrary intellectual property regime under Japanese law.  This lack of contrary trademark rights favors the application of U.S. trademark law.  <u>Star-Kist</u>, 769 F.2d at 1396; <u>see also</u> <u>Steele</u>, 344 U.S. at 285, 289.  Similarly, Vans alleges no pending proceedings involving the Airwair's trade dress in Japan, and therefore the application of U.S. trademark law here commits no affront to Japanese law.  <u>Ocean Garden</u>, 953 F.2d at 503.  This factor favors Airwair.

### b.   Nationality or Allegiance of the Parties

Airwair alleges that it is a United Kingdom corporation with wholly owned subsidiaries in the United States; it is the registered owner of the trade dress at issue here and has allegedly substantial sales in the United States.  Compl. ¶ 7, 8, Exhs. 1-6. Vans is alleged to be a Delaware corporation with its principal place of business in California.  Compl. ¶ 2.  Companies with such substantial ties to the United States are proper subjects for the application of the Lanham Act.  <u>Reebok</u>, 970 F.2d at 556-57.  This factor, therefore, favors Airwair.

### c.   Enforcement by Either State Would Achieve Compliance

Airwair alleges, and Vans admits, that Vans is able to control the activities of its licensee with respect to the Gibson footwear.  Compl. ¶30-33; Mot. to Dismiss at 3.  Therefore, a judgment in favor of Airwair could reliably be expected to achieve compliance.  <u>See Ocean Garden</u>, 953 F.2d at 504.  This factor favors Airwair.

### d.   Relative Significance of Effects on U.S. Commerce as Compared to those Elsewhere

The parties agree that approximately 29,000 pairs of the Gibson line were manufactured by Vans' licensee and offered for sale primarily in brick-and-mortar stores in Japan, Korea, Taiwan, and Hong Kong.  Compl. ¶ 20-22; Mot. to Dismiss at 3:9-11.  This fact tends to show that the licensee's activities were aimed primarily at East Asian commerce.  Airwair has submitted no

8

Case No.: 5:12-CV-05060-EJD
ORDER DENYING VANS' MOTION TO DISMISS

**United States District Court**
For the Northern District of California

1    evidence of any trademark rights it holds in its U.S.-registered trade dress in any of these East

2    Asian countries.  Such information would be valuable in determining whether Airwair suffers

3    greater commercial harm in the United States or abroad as a result of the sale of the Gibson

4    footwear.  Airwair points to no legal authority for the proposition that any infringement of its

5    trademark rights in the U.S. is more significant than the effects the Gibson line's sale has in the

6    named East Asian countries.  This factor favors Vans.

7                              **e.   Explicit Purpose to Harm or Affect U.S. Commerce**

8            While Vans underscores, and Airwair does not contest, that the sale of the Gibson line was

9    primarily aimed at Asian consumers in Japan, Korea, Taiwan, and Hong Kong, Airwair correctly

10   points out that this fact alone fails to defeat an inference that Vans intended to deceive U.S.

11   consumers or otherwise harm U.S. commerce.  Compl. ¶ 20-22; Mot. to Dismiss at 1:27-2:3; Opp'n

12   to Mot. to Dismiss at 14:22-27.  The two propositions are not mutually exclusive.  Airwair points

13   out, for instance, that Vans owns the website, which advertised the Gibson line and offered it for

14   sale.  Compl. ¶¶ 22-23.  It further claims that the production and sale of the Gibson line represents

15   a calculated and deliberate attempt to trade on Airwair's reputation.  Compl. ¶ 17.  On the whole,

16   this factor favors neither party.

17                              **f.   Foreseeability of Harm or Effect on U.S. Commerce**

18           Regardless of the explicit purpose Vans' licensee had in producing and selling the Gibson

19   line, in an age of frequent intercontinental travel and the ease of online shopping, Vans and the

20   licensee could have foreseen that Gibson shoes would travel to the U.S. to Airwair's detriment.

21   See Reebok, 970 F.2d at 557.  Airwair alleges precisely this sort of foreseeability.  Compl. ¶ 42.

22   This factor favors Airwair.

23                              **g.   Relative Importance of Violations Charged of Conduct within**

24                                    **the U.S. as Compared with Conduct Abroad**

25           Airwair alleges that Vans' conduct within the U.S. consists primarily of licensing the right

26   to produce and sell the Gibson line, the right and obligation of control over the quality of the goods

27   sold by the licensee, and the approval of the manufacture and sale of the Gibson line.  See Opp'n to

28   Mot. to Dismiss at 15:15-18.  Vans argues that it did not exercise control legally "sufficient" to be

**United States District Court**
For the Northern District of California

9

United States District Court
For the Northern District of California

1   held vicariously liable for the actions of its licensee.  Mot. to Dismiss at 13:18-25.  See L.A. Gear,

2   Inc. v. E.S. Originals, Inc., 859 F. Supp. 1294, 1299-1300 (C.D. Cal. 1994).  However, Airwair

3   asserts that allowing Vans' licensee to continue to sell the Gibson line after it became aware of

4   Airwair's rights is an effective ratification of the licensee's activities and is conduct occurring in

5   the United States.  Compl. ¶ 42-43.  In addition, Airwair alleges that Vans did exercise sufficient

6   control and points to Barcamerica Int'l U.S.A. Trust v. Tyfield Imps., Inc., 289 F.3d 589, 596 (9th

7   Cir. 2002) to supply the inference that Vans likely exercised sufficient control over its licensee in

8   order to prevent the loss of its own trademark rights through "naked licensing."  Opp'n to Mot. to

9   Dismiss at 23:24-29.  While Airwair may therefore defeat Vans reliance on L.A. Gear, this factor

10  nonetheless weighs slightly in favor of Vans because Airwair has failed to persuasively show that

11  the conduct in the United States was of relatively great importance compared to the conduct that

12  occurred abroad.

13          Because the factors, on balance, more heavily favor Airwair at this stage of the pleadings,

14  the court finds that Airwair's Complaint satisfies the comity considerations of the third prong of

15  Timberlane. Accordingly. Airwair's Complaint satisfies all three prongs of the Timberlane test,

16  justifying the application of U.S. trademark and unfair competition laws.

17      **B.  Airwair's First and Second Causes of Action:  Trademark Infringement under 15**

18          **U.S.C. § 1114 (Section 32 of the Lanham Act) and False Designation of Origin under**

19          **15 U.S.C. §1125(a) (Section 43(a) of the Lanham Act).**

20          The Lanham Act requires a plaintiff pursuing a trademark infringement claim to present

21  evidence of a valid mark, that the mark has been used in commerce, and that the defendant's use of

22  the mark is likely to cause confusion, or mistake, or to deceive as to sponsorship, affiliation, or the

23  origin of the goods or services in question.  15 U.S.C. §§ 1114, 1125(a).  As further discussed

24  below, Airwair has satisfied the pleading standard as to each of these elements.  The Lanham Act

25  protects unregistered as well as registered marks.  15 U.S.C. § 1125(a).  The same analysis probing

26  likelihood of confusion under section 32 applies to section 43(a).  New West Corp. v. NYM Co. of

27  California, Inc., 595 F.2d 1194, 1201 (9th Cir. 1979) ("Whether we call the violation infringement,

28

10

1   unfair competition or false designation of origin, the test is identical—is there a 'likelihood of

2   confusion?'").

3         First, Airwair presents prima facie evidence of ownership of a valid mark for its trade dress

4   in the form of its registration on the Principal Register for footwear.  15 U.S.C. § 1115.  Compl. ¶

5   8, Exhs. 1-3, 6.  Airwair further alleges continuous use of its mark over several decades as well as

6   its incontestability and non-functionality.  Compl. ¶¶ 9, 11, Exhs. 1-3. To the extent that Airwair

7   seeks protection for its trade dress registered on the Supplemental Register, the Lanham Act

8   requires a plaintiff seeking such protection to demonstrate that its trade dress is non-functional and

9   has acquired distinctiveness.  15 U.S.C. §1125(a)(3).  The Complaint contains allegations of both.

10   Compl. ¶ 11.  The similarity of the marks on the Supplemental Register to those Airwair already

11   owns on the Principal Register lends plausibility to these allegations.

12         Next, Airwair alleges that the mark has been used in commerce.  Particularly, Airwair

13   alleges that Vans' use of the mark consists of authorizing and ratifying its licensee's production

14   and sale of the Gibson line, which copies Airwair's distinctive trade dress, in several East Asian

15   countries as well as online, through a website whose URL it allegedly owns:  www.vansjapan.com.

16   Compl.  ¶¶ 13, 17-26, 36, 42-43.  It further claims that some appreciable number of U.S. consumers

17   tried to or did buy the Gibson line and caused the footwear to enter the United States.  Compl. ¶¶

18   13, 17-26, Exhs. 11, 12, 21, 23.  See Alderman v. Iditarod Props., 32 P.3d 373, 390 (Alaska 2001)

19   (noting that there is no fixed standard as to what constitutes an appreciable number of consumers).

20   In support of the plausibility of this allegation, Airwair states that it succeeded in purchasing two

21   pairs of Gibson footwear through third parties in California.  Compl. ¶ 24, Exhs. 16-18.

22         Finally, Airwair alleges that an appreciable number of consumers would be likely to suffer

23   confusion, mistake, or deception as to affiliation, sponsorship, or source of origin owing to media

24   coverage of the Gibson footwear.  Compl. ¶ 26.  It also asserts both actual confusion and a

25   likelihood thereof in the relevant market.  Id.  The Complaint contains claims that Airwair and

26   Vans are direct competitors, that the marks are substantially identical, and that the goods are sold in

27   the same channels of commerce (brick-and-mortar stores and online).  Compl. ¶ 12.  See also

28   AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341 (9th Cir. 1979) (listing factors to be considered in

United States District Court
For the Northern District of California

11

Case No.: 5:12-CV-05060-EJD
ORDER DENYING VANS' MOTION TO DISMISS

**United States District Court**
For the Northern District of California

1   determining the likelihood of confusion in actions arising under the Lanham Act).  While Vans

2   correctly points out that conspicuous and permanent placement of trade names, coupled with the

3   sophistication of purchasers of fashion athletic shoes may outweigh the similarities in shoe design,

4   "insofar as consumer confusion as to source is avoided"  (L.A. Gear, Inc. v. Thom McAn Shoe Co.,

5   988 F.2d 1117, 1134 (Fed. Cir. 1993)), this point does not resolve Airwair's allegation of

6   confusion, mistake, or deception as to connection, affiliation, or sponsorship concerning its

7   registered trade dress.  Fleischmann Distilling Corp. v. Maier Brewing Co., 314 F.2d 149, 155-56

8   (9th Cir. 1963) (holding that the unauthorized use of a mark tending to connote that the senior user

9   had somehow authorized that use infringes the senior user's trademark rights under section 32); see

10  also Acad. of Motion Picture Arts & Sciences v. Creative Hous. Promotions, Inc., 944 F.2d 1446,

11  1455-56 (9th Cir. 1991).

12      Taking the allegations contained in the Complaint as true, the court finds that Airwair has

13  plausibly alleged a likelihood of confusion between the Gibson line and Airwair's trade dress.

14  Airwair has pled facts with sufficiently plausible particularity as to put Vans on notice of the

15  claims alleged and the grounds on which they rest.  Twombly, 550 U.S. at 555.  Accordingly,

16  Defendant's Motion to Dismiss is DENIED as to the first and second causes of action.

17      **C.  Airwair's Third and Seventh Causes of Action:  Common Law Trade Dress**

18          **Infringement; Common Law Unfair Competition**

19      These causes of action are substantially the same and are protected under the same regime

20  for unregistered marks afforded protection under section 43(a) of the Lanham Act.  See Inwood

21  Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844 n.2 (1982) (citing the legislative history of the Lanham

22  Act).  There is, therefore, no substantive difference between these claims and the second cause of

23  action, except that the burden of proving the distinctiveness of Airwair's trade dress falls on

24  Airwair.  Restatement (Third) of Unfair Competition §§ 13, 16 (1995).  Airwair alleges the

25  distinctiveness of its trade dress several times in the Complaint.  See Compl. ¶¶ 9, 11.  Because

26  Airwair has successfully pled its section 43(a) claim, Defendant's Motion to Dismiss is DENIED

27  as to the third and seventh causes of action.

28

Case No.: 5:12-CV-05060-EJD
ORDER DENYING VANS' MOTION TO DISMISS

**D.  Airwair's Fourth Cause of Action:  Trademark Dilution under 15 U.S.C. § 1125(c)**

**(Section 43(c) of the Lanham Act)**

The Lanham Act protects mark owners from a likelihood of dilution caused by another who adopts an identical or similar mark.  15 U.S.C. § 1125(c).  The alleged mark consists of the welt stitching connecting the upper to the sole of the footwear.  Airwair has provided exhibits showing the two marks and claims they are identical.  Compl. ¶ 61, Exh. 19, 20.  The Lanham Act's protection extends only to famous marks that are famous.  15 U.S.C. § 1125(c).  Airwair alleges that its mark is famous and that it became so before Vans use of it.  Compl. ¶ 61.  Airwair supplies ample factual allegations in support of its fame.  Compl. ¶ 61.  For instance, Airwair contends that its Dr. Martens footwear bearing the allegedly famous trade dress is "widely recognized, extremely popular, and has become one of the world's most immediately recognizable brands."  Compl. ¶ 7.  Airwair also alleges that it currently sells its footwear featuring the trade dress at issue here in over sixty countries world-wide and that  it has sold millions of pairs of shoes featuring the trade dress in the past thirty years in the United States alone.  Id.

In addition to the requirement of fame, the Lanham Act protects only distinctive marks against dilution.  15 U.S.C. § 1125(c).  Airwair's allegation of the incontestability of its marks on the Principal Register establishes their distinctiveness.  15 U.S.C. § 1115(a).  Compl. ¶ 9.  Airwair further alleges that its marks on the Supplemental Register have acquired distinctiveness.  Compl. ¶ 11.  Airwair's Complaint accordingly contains allegations that its trade dress is distinctive.

Dilution by blurring arises from an association created between a famous mark and a similar mark that impairs the distinctiveness of the famous mark.  15 U.S.C. § 1125(c)(2)(B).[1]  Airwair alleges that Vans is using Airwair's famous mark by allowing its licensee to produce and sell footwear bearing the famous mark.  Compl. ¶ 61.  Airwair also asserts that Vans sold and promoted the allegedly dilutive footwear through a website that Vans owns.  Compl. ¶ 61.  Airwair claims that this activity would create an association between Vans' use of the mark and its own,

---

[1] The Trademark Dilution Revision Act's amendment to the Lanham Act section 43(c) provides a six-factor test for determining the likelihood of dilution.  This test is strikingly similar to the test for likelihood of confusion under traditional trademark infringement analysis.  <u>Compare</u> 15 U.S.C. § 1125(c)(2)(B) <u>with</u> Sleekcraft, 599 F.2d at 348-49.  <u>The court has already determined that Airwair has successfully pled a likelihood of confusion, and therefore</u> limits its discussion here to salient additional facts.

Case No.: 5:12-CV-05060-EJD
ORDER DENYING VANS' MOTION TO DISMISS

leading to dilution by blurring or by tarnishment.  Compl. ¶ 40, 63.  Finally, Airwair claims that Vans was aware of the fame of Airwair's mark and adopted it despite this knowledge.  Compl. ¶ 63.  Considering these allegations, the court finds that Airwair has sufficiently pled its fourth cause of action and therefore DENIES Defendant's Motion to Dismiss as to this claim.

### E.  Airwair's Fifth Cause of Action:  Trademark Dilution under California Business and Professions Code Sections 14202 and 14247.

As the Ninth Circuit clarified in <u>Jada Toys, Inc. v. Mattel, Inc.</u>, 518 F.3d 628, 632 (9th Cir. 2008), the analysis for California dilution claims is the same as the analysis under the federal Trademark Dilution Revision Act (15 U.S.C. § 1125(c), the Lanham Act § 43(c)).  Therefore, because Airwair has sufficiently pled its claim for trademark dilution under section 43(c), Airwair may maintain its cause of action for trademark dilution under sections 14202 and 14247.[2]  The court DENIES Defendant's Motion to Dismiss as to Airwair's fifth cause of action.

### F.  Airwair's Sixth Cause of Action:  Unfair Competition under California Business and Professions Code Section 17200.

As with the fifth cause of action, per <u>Jada Toys</u>, the analysis for California unfair competition claims under Business and Professions Code Section 17200 is the same as the analysis under the Lanham Act.  Therefore, because Airwair has successfully pled its claims under Sections 32 and 43(a) of the Lanham Act, Airwair may maintain this cause of action.

Vans contests Airwair's standing to bring suit under Section 17200, relying on <u>R&B Auto Ctr., Inc. v. Farmers Grp., Inc.</u>, 140 Cal. App. 4th 327, 360 (2006) and the language of Section 17204 for the proposition that monetary damages are required in order to maintain a claim under California unfair competition law.  <u>See</u> Cal. Bus. & Prof. Code § 17204 (requiring that a plaintiff plead "lost money or property as a result of unfair . . . competition.").  Airwair, however, alleges damages both in the form of lost goodwill as a result of dilution and as a loss of sales and Vans' profits attributable to infringement in addition to irreparable harm arising from acts occurring in

---

[2] Airwair filed the Complaint alleging violation of California's trademark dilution law, California Business and Professions Code sections 14330 <u>et seq</u>.  Compl. at 1.  Vans correctly asserts that this statute has been repealed.  Mot. to Dismiss at 12:8-17.  This statute has been replaced with the identically worded sections 14202 and 14247.  Because Airwair has successfully pled a cause of action under these identically worded statutes, the court will not dismiss the claim merely because Airwair has misnamed it.

Case No.: 5:12-CV-05060-EJD
ORDER DENYING VANS' MOTION TO DISMISS

California.  Compl. ¶¶ 70-75.  Because Airwair has successfully pled trademark infringement and dilution under the Lanham Act, the allegations of lost sales and Vans' unjust enrichment are plausible.  Defendant's Motion to Dismiss is therefore DENIED as to the sixth cause of action.

**IV.     Conclusion**

For the foregoing reasons, the court DENIES Vans' Motion to Dismiss. Vans is hereby ORDERED to file its Answer by no later than July 31, 2013.

**IT IS SO ORDERED**

Dated: July 17, 2013



_____
EDWARD J. DAVILA
United States District Judge

Case No.: 5:12-CV-05060-EJD
ORDER DENYING VANS' MOTION TO DISMISS

United States District Court
For the Northern District of California